

**The New York Times Company**

Dana Green
Senior Counsel

T 212 556 5290
Dana.green@nytimes.com

620 8th Avenue
New York, NY 10018
nytimes.com

RECEIVED JAN 16 2024 CHAMBERS OF JUDGE SIDNEY H. STEIN U.S.D.J.

January 11, 2024

**BY FEDEX**

The Honorable Sidney H. Stein
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, NY 10007-1312

Re:   *United States v. Menendez*, No. 23-cr-490-SHS - Request to Unseal

Dear Judge Stein:

I write on behalf of The New York Times Company ("The Times") to seek an order unsealing certain records filed on January 10, 2024 by defendant Senator Robert Menendez in the above-referenced proceedings.[1] Specifically, The Times asks that the Court order to be unredacted or unsealed Sen. Menendez's Memorandum of Law in Support of His First Motion to Dismiss, the declaration filed in support of the motion, and exhibits thereto. *See* Dkts. 120-24.

If Your Honor prefers, we are prepared to move by formal motion to intervene and seek the unsealing. We make this request pursuant to the public's right of access to judicial records, grounded in both the federal common law and the First Amendment.[2]

### I.   Background

This case concerns the prosecution of a sitting United States Senator on charges that he accepted bribes in exchange for exerting influence on

---

[1] The Times notes that by a letter dated January 10, 2024, Inner City Press also has petitioned for unsealing of the records. Dkt. 125.

[2] The right of access is an affirmative, enforceable public right, and the standing of the press to enforce it is well settled. *See, e.g., Globe Newspaper Co. v. Super. Ct.*, 457 U.S. 596, 609 n.25 (1982); *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 91 (2d Cir. 2004).

behalf of two foreign powers. The Times and other news organizations have appropriately devoted significant resources to reporting on this important case and its broader implications.[3]

The specific records at issue here relate to Sen. Menendez's motion to dismiss the Second Superseding Indictment. Dkt. 115. In moving to dismiss, Sen. Menendez argues his actions were not "official acts" and therefore were not illegal, that his conduct was protected by the legislative independence embedded in the Constitution's "speech or debate" clause, and that permitting this prosecution to proceed would disrupt the separation of powers and open the door to politically motivated prosecutions of legislators. These issues obviously are of substantial public concern. *See* Dkt. 120

Sen. Menendez also has accused government prosecutors of hiding "key exculpatory evidence from the public's and the court's view." *Id.* at 3. These are significant accusations, also implicating the public's interest in exercising democratic oversight of the justice system and public officials.

In making these arguments, Sen. Menendez apparently relies on *Brady* materials produced to him by the Government. Although the contents of those materials are at the heart of his dispositive motion, any description of their contents is redacted and the records themselves are under seal. *See* Dkt. 120, pp. 5, 7, 8, 10, 11, 26, 31, 33; Dkt. 121, para. 3; Dkts. 122-24.

For example, page 5 of the Motion to Dismiss redacts a description of an "exculpatory fact" about the Senator's 2021 trip to Egypt, which he argues "exposes" why the charges violate the Constitution. On p. 8, Sen. Menendez appears to describe a statement by a "key State Department official" that shows he was acting "consistent with what the Biden Administration sought" and contrary to Egypt's interests. Sen. Menendez asserts that the government omitted this information to create a "false narrative" and mislead the court and the public. On pages 10 and 11, Sen. Menendez claims there is a "shocking omission" from the indictment that is fatal to one of the charges, but that omission is entirely redacted.

---

[3] *See, e.g.*, Benjamin Weiser, et al., *Menendez Accused of Brazen Bribery Plot, Taking Cash and Gold*, N.Y. Times (Sept. 22, 2023), http://tinyurl.com/unwr6sjc; Tracey Tully, *What We Know About the Menendez Bribery Case*, N.Y. Times (Jan. 4, 2024), http://tinyurl.com/y4e7ewry; Benjamin Weiser and Tracey Tully, *Menendez Lashed Out in the Senate. Now, He's Fighting Back in Court.*, N.Y. Times (Jan 10, 2024), http://tinyurl.com/2dup92xy.

## II. Argument

As part of our national commitment to democratic government, it is well-settled that there is a First Amendment and common law right of access to judicial records and proceedings. This is because "public monitoring of the judicial system fosters the important values of quality, honesty, and respect for our legal system." *Siedle v. Putnam Invs., Inc.*, 147 F.3d 7, 9-10 (1st Cir. 1998) (cleaned up). *See also Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 606 (1982).

### 1. The Common Law Right of Access Requires Unsealing

Second Circuit law governing the public's common law right of access to judicial records is well established. Any "judicial document" is subject to a presumption of access. *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006). This includes prompt access to dispositive pretrial motion papers and their supporting exhibits. *Id.* at 121.

The weight of the presumption of access turns on the nature of the specific document at issue, taking into account "the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts." *Id.* at 119 (quoting *United States v. Amodeo*, 71 F.3d 1044, 1049 (2d Cir. 1995)) (internal marks omitted). Once the court has determined the weight of that presumption, it must then balance the value of public disclosure against "countervailing factors." *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 143 (2d Cir. 2016).

#### a. The presumption of access here is particularly weighty

The Second Circuit has "consistently held that documents filed in criminal cases used to determine a litigant's substantive legal rights are judicial documents." *United States v. Donato*, 714 F. App'x 75, 76 (2d Cir. 2018). *See also United States v. Wolfson*, 55 F.3d 58, 61 (2d Cir. 1995) ("[T]he public's common-law right . . . extend[s] to documents considered by the court in orders disposing of substantive pretrial motions."). And even where "discovery materials may be [otherwise] subject to a protective" order, the documents will become "presumptively accessible under the First Amendment and/or the common law if they later become judicial documents." *United States v. Smith*, 985 F. Supp. 2d 506, 525-26 (S.D.N.Y. 2013) (citations omitted). Under *Lugosch*, dispositive motion

papers and their supporting exhibits "should not remain under seal absent the most compelling reasons." 435 F.3d at 121 (citation omitted).

The public interest in openness is particularly high in this case. The records at issue relate to the prosecution of a United States Senator, in a case alleging that he accepted bribes from foreign powers. The public has a particularly strong interest in transparency and oversight of the prosecution of such crimes. The records also relate to allegations of prosecutorial misconduct and unconstitutional overreach. Again, the public has a legitimate interest in understanding the merits of such claims. Whatever the outcome of the motion to dismiss, it will have significant implications in our democratic system.

> b. *Countervailing factors do not overcome the presumption of access*

The records therefore must be released unless countervailing interests require withholding. *Lugosch*, 435 F.3d at 119. Typically, the "countervailing factors" that can overcome the presumption of access to a judicial document are "the danger of impairing law enforcement or judicial efficiency" and "the privacy interests of those resisting disclosure." *Bernstein*, 814 F.3d at 143. Neither factor appears to have significant weight here. First, any risk of impairing law enforcement interests is minimal because the Government already has disclosed the sealed materials to the defendant. Second, the legitimate privacy interests in the records appear negligible or nonexistent. The records apparently relate to Sen. Menendez's political activities and to government witnesses' statements about public affairs, not records of a personal or intimate nature. *See, e.g., Bernsten v. O'Reilly*, 307 F. Supp. 3d 161, 170 (S.D.N.Y. 2018) (assertion of "generalized 'privacy interests'" insufficient to overcome presumption of access).

2. The First Amendment Requires Unsealing

The sealed Records also are subject to a First Amendment right of access. The right attaches to a large array of judicial records and gives the public a constitutional right to inspect those records, absent a showing of an overriding public interest that justifies sealing. *See, e.g., Lugosch*, 435 F.3d at 124 (common law and constitutional right to judicial documents in civil case); *United States v. Suarez*, 880 F.2d 626, 630 (2d Cir. 1989) (First Amendment right to documents in a criminal case).

It is well settled that a strong presumption of access attaches under the First Amendment to dispositive motions filed in criminal proceedings. For

4

the same reasons set forth above in respect to the common law right, the First Amendment right of access to the records is not overcome by any countervailing interest. Where the First Amendment applies, it can be "overcome only by an overriding interest based on finding that [sealing] is essential to preserve higher values and is narrowly tailored to serve that interest." *Press-Enterprise Co. v. Superior Court of California*, 464 U.S. 501, 510 (1984). That is a heavier burden than the one imposed by the common law. *Lugosch*, 435 F.3d at 126.

For all of the foregoing reasons, The Times respectfully requests that the Materials be made public or, alternatively, that the Government and Sen. Menendez be required to demonstrate why the records should remain under seal. Should they seek to do so, The Times respectfully requests an opportunity to reply and otherwise be heard.

We thank the Court for its consideration of this matter.

Respectfully submitted,

*[signature]*

Dana Green