

*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

January 22, 2024

**BY ECF AND EMAIL**

The Honorable Sidney H. Stein
United States District Judge
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007

      Re:    *United States v. Robert Menendez, et al.*,
               S2 23 Cr. 490 (SHS)

Dear Judge Stein:

      The Government respectfully writes in response to the Court's January 17, 2024 Order (Dkt. 147) in the above-captioned matter, directing a response to the letters of Inner City Press (Dkt. 125) and the New York Times (Dkt. 145) seeking the unsealing of certain materials either filed in conjunction with Robert Menendez's pretrial motions or placed in the Court's vault under seal. For the reasons set forth below, the Government's position is that Menendez may and should file a less-redacted version of his memorandum of law in support of his first motions to dismiss (the "Memorandum," Dkt. 120) an unredacted version of the supporting declaration (the "Declaration," Dkt. 121), and a less-redacted version of the exhibits to the Declaration (the "Exhibits"). The Government also requests that the Court maintain the materials placed in the vault (the "Vault Materials") under seal.

      **I.**     **Applicable Law**

           A.     *The Common Law Right of Access*

      The Supreme Court has recognized a common law right of public access to judicial documents. *Nixon v. Warner Comm'ns, Inc.*, 435 U.S. 589, 597-98 (1978). However, "the mere filing of a paper or document with the court is insufficient to render that paper a judicial document subject to the right of public access." *United States v. Amodeo* ("*Amodeo I*"), 44 F.3d 141, 145

(2d Cir. 1995). "[T]he item filed must be relevant to the performance of the judicial function and useful in the judicial process in order for it to be designated a judicial document." *Id.*

The common law right of access attaches with different weight depending on two factors: (a) "the role of the material at issue in the exercise of Article III judicial power" and (b) "the resultant value of such information to those monitoring the federal courts." *United States v. Amodeo* ("*Amodeo II*"), 71 F.3d 1044, 1049 (2d Cir. 1995). "Generally, the information will fall somewhere on a continuum from matters that directly affect an adjudication to matters that come within a court's purview solely to insure their irrelevance." *Id.* "Where testimony or documents play only a negligible role in the performance of Article III duties, the weight of the presumption is low and amounts to little more than a prediction of public access absent a countervailing reason." *Id.* at 1050.

After determining the weight afforded to the presumptive right of access, the common-law right is balanced against countervailing interests favoring secrecy. "[T]he fact that a document is a judicial record does not mean that access to it cannot be restricted." *Amodeo I*, 44 F.3d at 146. Noting that it is difficult to "identify all the factors to be weighed in determining whether access is appropriate," the Supreme Court has further observed that "the decision as to access is one best left to the sound discretion of the trial court, a discretion to be exercised in light of the relevant facts and circumstances of the particular case." *Nixon*, 435 U.S. at 598-99.

The Second Circuit has recognized certain categories of countervailing factors to be balanced against the presumption of access, including: (i) the danger of impairing law enforcement or judicial efficiency and (ii) the need to protect privacy interests. *Amodeo I*, 44 F.3d at 147. The Second Circuit has identified the law enforcement privilege as an interest worthy of protection, noting that the privilege is designed:

> to prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witness and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise to prevent interference with an investigation.

*Id.* (citing *In re Dep't of Investigation*, 856 F.2d 481 (2d Cir. 1988)). In addition, the Second Circuit in *Amodeo II* found that the voluntary cooperation of persons who may want or need confidentiality "is also often essential to judicial efficiency." 71 F.3d at 1050. Thus, "[i]f release [of a judicial document] is likely to cause persons in the particular or future cases to resist involvement where cooperation is desirable, that effect should be weighed against the presumption of access." *Id.*

The Second Circuit has also held that "[t]he privacy interests of innocent third parties as well as those of defendants that may be harmed by disclosure . . . should weigh heavily in a court's balancing equation." *In re New York Times Co.*, 828 F.2d 110, 116 (2d Cir. 1987); *see also In re Newsday, Inc.*, 895 F.2d 74, 79-80 (2d Cir. 1990) (holding that the "common law right of access is qualified by recognition of the privacy rights of the persons whose intimate relations may

thereby be disclosed"). The Second Circuit has identified such interests as "a venerable common law exception to the presumption of access." *Amodeo II*, 71 F.3d at 1051. "In determining the weight to be accorded an assertion of a right of privacy, courts should first consider the degree to which the subject matter is traditionally considered private rather than public." *Id.* (listing "[f]inancial records of a wholly owned business, family affairs, illnesses, embarrassing conduct with no public ramifications, and similar matters" as weighing more heavily against access than conduct affecting a substantial portion of the public); *see also In re Newsday, Inc.*, 895 F.2d at 79 (holding that disclosure of "intimate relations" qualifies the common law right of access). "The nature and degree of injury must also be weighed." *Amodeo II*, 71 F.3d at 1051. Finally, in balancing the qualified right of public access against privacy interests, courts must consider "the sensitivity of the information and the subject," and whether "there is a fair opportunity for the subject to respond to any accusations contained therein." *Id.*

> B. *The First Amendment Right of Access*

The First Amendment's presumptive right of access applies to civil and criminal proceedings and "protects the public against the government's arbitrary interference with access to important information." *N.Y. Civil Liberties Union v. N.Y.C. Transit Auth.* ("*NYCTA*"), 684 F.3d 286, 298 (2d Cir. 2012) (internal quotation marks omitted).

The Second Circuit has applied two different approaches when deciding whether the First Amendment right applies to particular material. The "experience-and-logic" approach asks "both whether the documents have historically been open to the press and general public and whether public access plays a significant positive role in the functioning of the particular process in question." *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 120 (2d Cir. 2006) (internal quotation marks omitted). The second approach—employed when analyzing judicial documents related to judicial proceedings covered by the First Amendment right—asks whether the documents at issue "are derived from or are a necessary corollary of the capacity to attend the relevant proceedings." *Id.* (internal quotation marks and alteration omitted).

Even when it applies, however, the First Amendment right creates only a presumptive right of access. "What offends the First Amendment is the attempt to [exclude the public] without sufficient justification," *NYCTA*, 684 F.3d at 296, not the simple act of exclusion itself. Thus, the presumptive right of access may be overcome by "specific, on-the-record findings that sealing is necessary to preserve higher values and only if the sealing order is narrowly tailored to achieve that aim." *Lugosch*, 435 F.3d at 124.

> C. *Redactions*

Once a document is subject to either the common-law or First Amendment right of access, it may still be subject to appropriate redactions. Indeed, "it is proper for a district court, after weighing competing interests, to edit and redact a judicial document in order to allow access to appropriate portions of the document." *Amodeo I*, 44 F.3d at 147; *see also, e.g.*, *In re Providence Journal*, 293 F.3d 1, 15 (1st Cir. 2002) ("Redaction constitutes a time-tested means of minimizing any intrusion on [First Amendment right of access]" (citing *Amodeo I*)).

## II. Discussion

For the reasons set forth below, (i) the proposed redactions to the Memorandum are fair and appropriate, (ii) the Declaration may be publicly docketed, (iii) the proposed redactions to the Exhibits are fair and appropriate, and (iv) the Vault Materials should be maintained under seal.

### A. *The Memorandum*

As the Memorandum is a judicial document, the Government does not oppose the public docketing of a less-redacted version to accommodate the public's legitimate interest in understanding its substance. A limited set of redactions, attached hereto as Attachment 1, is both sufficient and appropriate to protect the privacy of third parties and to preserve the integrity of this criminal proceeding and the Government's ongoing investigation.

The material proposed to remain redacted in Exhibit A exclusively concerns the identification (through name or through title) of individuals who have provided information to the Government, a subset of whom are also expected to be witnesses at trial. The precise identities of the individuals providing this information is of little relevance to the judicial function, in contrast to the substance of their statements (which is no longer redacted in the proposed less-redacted Memorandum). On the other side of the scale, the privacy interests of third parties, such as persons providing information to law enforcement, is well recognized as meriting judicial solicitude. *See In re New York Times Co.*, 828 F.2d at 116 ("The privacy interests of innocent third parties as well as those of defendants that may be harmed by disclosure . . . should weigh heavily in a court's balancing equation."); *Kleftogiannis v. Inline Plastics Corp.*, 411 F. Supp. 3d 216, 232 (D. Conn. 2019) (noting that court's supervisory power "is routinely used to redact or otherwise restrict access to sensitive personally identifying information contained in court documents"); *see also Amodeo II*, 71 F.3d 1051 n.1 (endorsing district court's redaction, in separate case, of identities of "peripheral characters"). Indeed, "unmasking those who are cooperating with the Government's investigation or who have otherwise provided information to the Government could deter further cooperation with the investigation," *United States v. Cohen*, 366 F. Supp. 3d 612, 623 (S.D.N.Y. 2019), and could prejudice the judicial proceedings by affecting potential witnesses, which is why it is common to redact such information from public filings.

Accordingly, the Government requests that Menendez be directed to publicly file a version of the Memorandum redacted as indicated in Attachment 1.

### B. *The Declaration*

The Government has no objection to the public docketing of the unredacted Declaration because none of the law enforcement and privacy interests identified in this letter is implicated by the contents of the Declaration.

Honorable Sidney H. Stein
January 22, 2024
Page 5

        C.    *The Exhibits*

The Exhibits to the Declaration contain supporting information, some of which is cited in the Memorandum and much of which is not. The Government has no objection to the public docketing of the portions that are specifically cited in the Memorandum or provide context for it, but believes that the other portions should be redacted to avoid prejudicing the ongoing investigation or trial.

The portions of the Exhibits not specifically relied on in the parties' papers should not be publicly docketed. The proposed redactions to Exhibit A to the Declaration (attached hereto as Attachment 2) principally concern summaries of witness statements not being cited with specificity in the Memorandum. Statements not actually relied on by the parties in their papers are at least arguably not even judicial documents *at all*, and almost certainly would not constitute judicial documents even under the common-law test were they set forth in physically separate documents from those containing the statements the parties were citing. *See Amodeo I*, 44 F.3d at 145 ("[T]he mere filing of a paper or document with the court is insufficient to render that paper a judicial document subject to the right of public access."). And the portions not used in the proceedings are, by definition, not "a necessary corollary of the capacity to attend the relevant proceedings" implicating the First Amendment right of access. *Lugosch*, 435 F.3d at 120; *see also In re Motion for Civil Contempt by John Doe*, No. 12 Misc. 557 (BMC), 2016 WL 3460368, at *3 (E.D.N.Y. June 22, 2016) (in civil contempt proceeding, noting that under the *Lugosch* test, "[o]nly the documents necessary to understand the merits" of the proceeding are covered under the First Amendment). Even if the documents were considered within the First Amendment's protection, redaction from them of information *not* intended to be relied on in the proceedings would not in any way impair First Amendment interests because it would not diminish public access to the proceedings. Thus even accepting for the purposes of this submission that these statements are analyzed as judicial documents, they occupy the lowest end of the continuum of relevance to Article III duties and are subject to the weakest presumption of public access. *See Amodeo II*, 71 F.3d at 1050.

Against this minimal interest in public access, the interests in redaction are substantial. With an ongoing investigation, and in the shadow of an upcoming trial, any potential witness statement concerning matters under investigation or that may be the subject of trial—whether or not that particular witness is likely to be called—may influence or affect the testimony of other witnesses to those facts, affect the jury pool, or otherwise prejudice the course of the investigation or trial. *See, e.g.*, *Cohen*, 366 F. Supp. 3d at 623 (noting that information related to "the full volume and nature of the evidence gathered thus far, and the sources of information provided to the Government," could if disclosed in an ongoing investigation "enable uncharged individuals to coordinate or tailor their testimony" (citing *In re Sealed Search Warrants Issued June 4 and 5, 2008*, No. 08 Misc. 208 (DRH), 2008 WL 5667021, at *4 (N.D.N.Y. July 14, 2008))). And as noted above, "unmasking those who are cooperating with the Government's investigation or who have otherwise provided information to the Government could deter further cooperation with the investigation," whether the unmasking relates to the identity of who has spoken to the Government or the substance of what or how much they have communicated. *Cohen*, 366 F. Supp. 3d at 623. And as with the Memorandum, the individuals who made

statements covered by the redactions in the Exhibits have privacy interests that should be protected by redaction.

Similarly, the proposed redactions to Exhibit B to the Declaration (attached hereto as Attachment 3) are appropriate to protect the privacy of third parties. These redactions concern the names and contact information of third parties, other than Members of Congress, who are listed on an agenda of planned meetings involving certain Egyptian government officials. As with the redactions to Exhibit A, these portions—which are not referenced with any specificity in the Memorandum—arguably do not even amount to "judicial documents," and even to the extent they do, play a *de minimis* if any role in the judicial function. The only potentially relevant aspect of these other meetings appears to the institutional affiliation of the individuals participating in the meetings, rather than the precise identities of those persons. Against this at best minimal relevance of the redacted information, the privacy interests implicated by the redactions are substantial. Such individuals have a clear privacy interest in not having their identities and contact information disclosed unnecessarily. *See, e.g.*, *In re New York Times Co.*, 828 F.2d at 116; *see also Amodeo II*, 71 F.3d 1051 n.1 (endorsing district court's redaction of identities of "peripheral characters").

Accordingly, the Government requests that Menendez be directed to publicly file versions of Exhibits A and B to the Declaration redacted as indicated in Attachments 2 and 3, respectively.[1]

### D. *The Vault Materials*

Finally, the Government opposes the unsealing of the Vault Materials at this time. The Government understands that the Vault Materials consist of sealed envelopes containing materials related to search warrants, grand jury matters, and/or other sensitive investigative orders or materials, and materials authorizing such filings under seal.[2] These should all remain sealed, for the reasons set forth in the materials, particularly given that the Government's investigation is ongoing.

Materials such as investigative orders, search warrants, and documents related to the grand jury, particularly in the context of an ongoing investigation, present the strongest case for sealing. The Second Circuit has held that the common law right of access attaches to Rule 41 search warrant applications and orders in the case of a *closed* criminal investigation, *In re Newsday, Inc.*, 895 F.2d at 79, but sharply distinguished that context from that of an *ongoing* criminal investigation, *id.* at 78-79 (distinguishing *Times Mirror Co. v. United States*, 873 F.2d 1210 (9th Cir. 1989)). Courts in this circuit have therefore recognized that a common law right of public access does not apply

---

[1] For the same reasons supporting the proposed redactions, the Government requests that Attachments 1, 2, and 3 be filed under seal.

[2] As the Government did not place these envelopes in the vault, the Government bases this understanding on information provided by the Court's Deputy regarding the markings on the exterior of the sealed envelopes.

to search warrant applications in ongoing criminal investigations. *See, e.g.*, *In re Search Warrant Executed Feb. 1, 1995*, No. 18 Misc. 65 (RJW), 1995 WL 406276, at *3 (S.D.N.Y. July 7, 1995) (concluding that "there is a continuing need to maintain the warrant applications under seal at this pre-indictment juncture" and "[t]he nature of the allegations and the pending grand jury investigation all favor this result"); *Matter of Searches of Semtex Indus. Corp.*, 876 F. Supp. 426, 429 (E.D.N.Y. 1995) ( "[I]t is reasonable to believe that the need for secrecy continues in a complex, multi-state investigation prior to indictment."). Although the grand jury has returned indictments in this case, its investigation remains ongoing, and these cases thus apply with equal force here.

Indeed, "there is no traditional right of public access to search warrant materials nor is there a traditional right for the public to attend search warrant proceedings, which are conducted *ex parte*. To the contrary, pre-trial proceedings in general are historically not proceedings which are made open to the public." *In re San Francisco Chron.*, No. 07 Misc. 256 (TCP), 2007 WL 2782753, at *2 (E.D.N.Y. Sept. 24, 2007). Further, "there is no tradition of public access to the names of unindicted third-parties and to specific personal identifying information where disclosure of this information is sought by the public." *Id.* Similarly, district courts in this circuit routinely find no First Amendment right of access in such materials. *See, e.g.*, *In re Search Warrant*, No. 16 Misc. 464 (PKC), 2016 WL 7339113, at *3 (S.D.N.Y. Dec. 19, 2016); *United States v. All Funds on Deposit at Wells Fargo Bank*, 643 F. Supp. 2d 577, 581-83 (S.D.N.Y. 2009); *United States v. Paloscio*, No. 99 Cr. 1199 (LMM), 2002 WL 1585835, at *3 (S.D.N.Y. Jul. 17, 2002); *In re San Francisco Chron.*, 2007 WL 2782753, at *2-3. For similar reasons, the issuance of ancillary investigative orders also are "historically not proceedings which are made open to the public," *id.*, and present similar issues to warrant applications, particularly in the context of an ongoing investigation.

Similarly, "[t]he traditional presumption in favor of public access to judicial proceedings does not extend to grand jury proceedings." *In re Grand Jury Subpoenas Dated March 2, 2015*, No. 15 Misc. 71 (VEC), 2016 WL 6126392, at *3 (S.D.N.Y. Oct. 19, 2016) (refusing to unseal records related to motion to quash grand jury subpoena); *see also, e.g.*, *Douglas Oil Co.* v. *Petrol Stops Northwest*, 441 U.S. 211, 218 n.9 (1979) ("Since the 17th century, grand jury proceedings have been closed to the public; and records of such proceedings have been kept from the public eye. The rule of grand jury secrecy . . . is an integral part of our criminal justice system."). Indeed, Federal Rule of Criminal Procedure 6(e) restricts the disclosure of matters before the grand jury. As a result, disclosure of such materials under either the common law right of access or the First Amendment has been rejected. *See, e.g.*, *In re Grand Jury Subpoenas Dated March 2, 2015*, 2016 WL 6126392 at *2-3 (rejecting First Amendment right of access); *id.* at *3-5 (rejecting common-law right of access); *see also In re Application of the United States for Material Witness Warrant*, 436 F. Supp. 3d 768, 770 (S.D.N.Y. 2020) (holding that Rule 6(e) protects grand jury records "even after the grand jury has been discharged" (citing *id.*)).

Honorable Sidney H. Stein
January 22, 2024
Page 8

      There is no basis to deviate from these holdings here, in the case of non-public sealed investigative records, particularly given the ongoing nature of the grand jury investigation. Accordingly, the Vault Materials should not be unsealed at this time.

      Respectfully submitted,

      DAMIAN WILLIAMS
      United States Attorney

By:   <u>s/ Paul M. Monteleoni</u>
      Eli J. Mark
      Paul M. Monteleoni
      Lara Pomerantz
      Daniel C. Richenthal
      Assistant United States Attorneys
      (212) 637-2431/2219/2343/2109

Enclosures

cc:     Counsel of Record (by ECF)