UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------

UNITED STATES OF AMERICA

v.

ROBERT MENENDEZ, NADINE
MENENDEZ, WAEL HANA, JOSE URIBE,
and FRED DAIBES,

                        Defendants.

---------------------------------------------------------------

S2 23-CR-490 (SHS)

OPINION & ORDER

SIDNEY H. STEIN, U.S. District Judge.

Defendants Robert Menendez ("Menendez") and Wael Hana have separately moved for (1) a *Franks* hearing to assess allegedly material misstatements and omissions in certain of the government's search warrant applications and (2) an order suppressing evidence from additional warrants seeking electronically stored information on the grounds that they are "general unconstitutional warrants." (ECF Nos. 139 (Hana), 157 (Menendez).) For the reasons set forth below, Menendez's Motion to Suppress Search Warrant Returns is denied and Hana's Omnibus Pretrial Motion is denied to the extent he seeks a *Franks* hearing and suppression of evidence.

## I. BACKGROUND

The years-long investigation that led to the indictment in this action involved the issuance of numerous search warrants for both physical locations and electronic devices or accounts. Menendez and Hana each challenge a subset of these warrants.

Menendez challenges the following three warrants on the grounds that they contain material misstatements and omissions:

1. **January 2022 Menendez ESI Warrant** (Weitzman Ex. A[1]): A January 24, 2022 warrant authorizing the search of an email account and associated iCloud account belonging to Menendez, supported by an affidavit of FBI Special Agent Mary Jo Corkery (the "**First Corkery Affidavit**" (Weitzman Ex. B)).

2. **June 15, 2022 Menendez Home Warrant** (Weitzman Ex. C): A June 15, 2022 warrant authorizing a search of Menendez's home in New Jersey and the seizure of certain electronics and "movable things of value," among other items,

---

[1] "Weitzman Ex." refers to an exhibit of the Declaration of Avi Weitzman in Support of Senator Robert Menendez's Motion to Suppress Search Warrant Returns dated January 22, 2024. (ECF No. 159.)

supported by the **Second Corkery Affidavit** (Weitzman Ex. D).

3. **June 16, 2022 Menendez Home Warrant** (Weitzman Ex. E): A June 16, 2022 warrant authorizing a second search of Menendez's home and seizure of certain documents, supported by the **Third Corkery Affidavit** (Weitzman Ex. F).

Menendez also challenges the following two warrants as being unconstitutionally overbroad:

1. **July 2022 Menendez ESI Warrant** (Weitzman Ex. G): A July 14, 2022 warrant authorizing the search of a second email account and associated iCloud account belonging to Menendez.

2. **September 2023 Supplemental Warrant** (Weitzman Ex. H): A September 20, 2023 warrant authorizing the search and review of electronically stored information kept on cellphones belonging to Menendez and others, supported by the affidavit of FBI Special Agent Ryan Larkin (Weitzman Ex. I). (Together, the July 2022 Menendez ESI Warrant and September 2023 Supplemental Warrant are referred to as the "Menendez ESI Warrants.")

Nadine Menendez has joined Robert Menendez's motion challenging the above warrants.[2] (ECF No. 179.)

Hana challenges the following four warrants on the grounds that they contain material misstatements and omissions:

1. **December 2022 Hana Email Warrant** (Lustberg Ex. E[3]): A December 20, 2022 warrant authorizing the search of an email account belonging to Hana, supported by an affidavit from Corkery.

2. **January 2023 Hana iCloud Warrant** (Lustberg Ex. D): A January 17, 2023 warrant authorizing the search of an iCloud account belonging to Hana, supported by an affidavit from Corkery.

3. **February 2023 Hana Location Warrant** (Lustberg Ex. F): A February 14, 2023 warrant authorizing the search of historical location information for a cellphone used by Hana, supported by an affidavit from Corkery.

4. **September 2023 Supplemental Warrant** (Lustberg Ex. G): The same September 20, 2023 warrant challenged by Menendez, authorizing the search of devices and

---

[2] The government disputes Nadine's standing to join Robert Menendez's motion. The Court does not need to reach that issue because Menendez's motion is denied.

[3] "Lustberg Ex." refers to an exhibit of the Certification of Lawrence S. Lustberg in Support of Mr. Hana's Omnibus Pretrial Motions to Dismiss dated January 15, 2024. (ECF Nos. 223, 224).

accounts seized pursuant to previous warrants, supported by an affidavit from Larkin.

Finally, Hana challenges the following three warrants as being unconstitutionally overbroad:

1.  **December 2020 Hana Email Warrant** (Lustberg Ex. A): A December 23, 2020 warrant authorizing a search of an email account belonging to Hana, supported by an affidavit from FBI Special Agent Daniel Lewis.

2.  **November 2021 Hana iCloud Warrant** (Lustberg Ex. B): A November 24, 2021 warrant authorizing a search of an iCloud account belonging to Hana, supported by an affidavit from Corkery.

3.  **January 2022 Hana Email Warrant** (Lustberg Ex. C): A January 10, 2022 warrant authorizing the search of an email account belonging to Hana, supported by an affidavit from Corkery. (Together, the December 2020 Hana Email Warrant, November 2021 Hana iCloud Warrant, and January 2022 Hana Email Warrant are referred to as the "Hana ESI Warrants.")

## II. DEFENDANTS HAVE NOT MADE A SUBSTANTIAL PRELIMINARY SHOWING THAT A *FRANKS* HEARING IS WARRANTED

Menendez claims that an evidentiary hearing pursuant to the U.S. Supreme Court decision in *Franks v. Delaware*, 438 U.S. 154 (1978) is warranted because the affidavits of the Special Agent of the FBI supporting the issuance of the January 2022 Menendez ESI Warrant, the June 15, 2022 Menendez Home Warrant, and the June 16, 2022 Menendez Home Warrant were "riddled with material misrepresentation and omissions that deceived the authorizing magistrate judge." (ECF No. 158 at 1.) Similarly, Hana claims that a *Franks* hearing is warranted because the affidavits supporting the issuance of the December 2022 Hana Email Warrant, January 2023 Hana iCloud Warrant, February 2023 Hana Location Warrant, and September 2023 Supplemental Warrant were "littered with intentional or recklessly false and misleading statements and material omissions." (ECF No. 223 at 119.) For the reasons set forth below, no such hearing is warranted.

### A. Legal Standard

The Fourth Amendment to the U.S. Constitution provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. Thus, "a warrant may not be issued unless probable cause is properly established and the scope of the authorized search is set out with particularity." *United States v. Galpin*, 720 F.3d 436, 445 (2d Cir. 2013) (citing *Kentucky v. King*, 563 U.S. 452, 459 (2011)).

"In evaluating probable cause in any given case, a judge must make a practical common-sense decision whether, given all the circumstances set forth in the affidavit before him, [] there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Raymonda*, 780 F.3d 105, 113 (2d Cir. 2015) (internal quotation marks omitted). Probable cause "does not require direct evidence and may be based on reasonable inference from the facts presented based on common sense and experience." *United States v. Singh*, 390 F.3d 168, 182 (2d Cir. 2004) (internal quotation marks omitted). "[T]he fact that an innocent explanation may be consistent with the facts alleged [] does not negate probable cause." *United States v. Fama*, 758 F.2d 834, 838 (2d Cir. 1985). "[T]he task of a reviewing court is simply to ensure that the 'totality of the circumstances' afforded the [issuing judge] 'a substantial basis' for making the requisite probable cause determination." *United States v. Clark*, 638 F.3d 89, 93 (2d Cir. 2011) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).

"[A] search or seizure pursuant to a warrant is presumed valid." *United States v. Awadallah*, 349 F.3d 42, 64 (2d Cir. 2003); *see also Franks*, 438 U.S. at 171. Still, a defendant may, "[i]n certain circumstances, . . . challenge the truthfulness of factual statements made in the affidavit, and thereby undermine the validity of the warrant and the resulting search or seizure." *Awadallah*, 349 F.3d at 64. (citing *Franks*, 438 U.S. at 164-72). Courts may conduct what is known as a *Franks* hearing to determine whether the defendant has overcome the presumption that a search pursuant to a warrant is valid. *See Awadallah*, 349 F.3d at 64. To obtain a *Franks* hearing on the basis of alleged misstatements or omissions in a warrant application, the defendant bears the burden of making a "substantial preliminary showing" that (1) "the claimed inaccuracies or omissions are the result of the affiant's deliberate falsehood or reckless disregard for the truth"; and (2) those misrepresentations or omissions were material, or "necessary to the [issuing judge's probable cause [or necessity] finding." *Franks*, 438 U.S. at 155-56; *United States v. Rajaratnam*, 719 F.3d 139, 146 (2d Cir. 2013) (alterations in original) (quoting *United States v. Canfield*, 212 F.3d 713, 717-18 (2d Cir. 2000)). The *Franks* standard is "a high one." *Rivera v. United States*, 928 F.2d 592, 604 (2d Cir. 1991). "An affiant cannot be expected to include in an affidavit every piece of information gathered in the course of an investigation." *Rajaratnam*, 719 F.3d at 154. "[M]isstatements or omissions caused by 'negligence or innocent mistake[s]' do not warrant suppression." *Id.* at 153 (quoting *Franks*, 438 U.S. at 171).

To repeat, any omissions or inaccuracies that are material must have been made either with deliberate intention to mislead or with reckless disregard for the truth in order to merit a *Franks* hearing. *See Franks*, 438 U.S. at 171; *United States v. Nejad*, 436 F. Supp. 3d 707, 719 (S.D.N.Y. 2020) ("[Defendant's] failure to make a substantial showing of 'credible and probative evidence' of deliberate falsehood or reckless disregard for the truth in the warrant affidavits is on its own fatal to his motion for a *Franks* hearing.").

To determine materiality, courts should "disregard the allegedly false statements," *Awadallah*, 349 F.3d at 65, "insert the omitted truths," *Rajaratnam*, 719 F.3d at 146, and

determine whether "there remains a residue of independent and lawful information sufficient to support probable cause." *Awadallah*, 349 F.3d at 65. "If, after setting aside the allegedly misleading statements or omissions, the affidavit, nonetheless, presents sufficient information to support a finding of probable cause, the district court need not conduct a *Franks* hearing." *United States v. Salameh*, 152 F.3d 88, 113 (2d Cir. 1998).

With respect to intentionality, "the reviewing court must be presented with credible and probative evidence" that a misstatement or omission "in a [warrant] application was 'designed to mislead' or was 'made in reckless disregard of whether [it] would mislead.'" *Rajaratnam*, 719 F.3d at 154 (second alternation in original) (quoting *Awadallah*, 349 F.3d at 68); *see also Nejad*, 436 F. Supp. 3d at 719. Reckless disregard for the truth may be established by demonstrating that an affiant made "statements which failed to take account of the facts as he knew them, or which he seriously doubted were true." *Rivera v. United States*, 728 F. Supp. 250, 258 (S.D.N.Y. 1990), *aff'd in relevant part*, 928 F.2d 592 (2d Cir. 1991). Where omissions are concerned, recklessness may be inferred "where the omitted information was clearly critical to the probable cause determination." *Rivera*, 928 F.2d at 604 (internal quotation marks omitted). However, such an inference is "not to be automatically drawn simply because a reasonable person would have included the omitted information, and the inference is particularly inappropriate where the government comes forward with evidence indicating that the omission resulted from nothing more than negligence, or that the omission was the result of a considered and reasonable judgment that the information was not necessary to the [warrant] application." *Rajaratnam*, 719 F.3d at 154-55 (citation omitted).

### B.   Menendez's Motion for a *Franks* Hearing is Denied

#### 1.   *January 2022 Menendez ESI Warrant*

Menendez leans heavily on his contention that the First Corkery Affidavit supporting the January 2022 Menendez ESI Warrant contained material misstatements in summarizing a conversation between a confidential source ("CS") and an associate of defendant Wael Hana ("Hana Associate") and failed to disclose other material exculpatory information.

Menendez first takes issue with a statement in the First Corkery Affidavit summarizing part of a conversation between the CS and Hana Associate about an alleged scheme whereby a ring and a car were given by Hana to co-defendant Nadine Menendez in exchange for Robert Menendez's assistance in resolving criminal charges pending against a defendant in New Jersey state court (the "New Jersey Defendant"). Specifically, the affiant writes, "[The Hana Associate] told the CS, in sum and substance, that Hana arranged for [Nadine] Arslanian to receive a ring and a car in exchange for Menendez's assistance in resolving criminal charges for insurance fraud pending against [the New Jersey Defendant]." (Weitzman Ex. B at SDNY_R_00004207.) Menendez claims that this statement in the affidavit misrepresents the underlying conversation on which it was based, which is translated from Arabic in the transcript contained in Weitzman Ex. J.

However, the summary in Corkery's affidavit is entirely consistent with the underlying transcript. In the recorded conversation with the CS, the Hana Associate states, "This is about a person who had a story here and Bob resolved it for him. … The girl is supposed to receive items, okay a car and a ring, and these items are for $100,000." (Weitzman Ex. J at 6-7.) This statement describes a man who had an issue "resolved" by "Bob" Menendez, and "the girl"—identified as Menendez's fiancé[4] (*id*. at 7)—receiving a car and ring. The transcript later clarifies that "the one who had his issue resolved" was the New Jersey Defendant who had a case relating to "fraudulent car insurance" that Menendez gave a "push" to help resolve favorably. (Weitzman Ex. J at 8-9.) Accordingly, the CS transcript directly supports the affiant's statement that Nadine received a ring and a car in exchange for Menendez helping resolve a New Jersey criminal case for insurance fraud.

According to Menendez, Corkery's summary is false or misleading because the CS transcript actually shows that (a) Menendez was the victim of a swindling scheme by Hana, who gave Nadine a ring of lower value than he claimed; (b) Menendez was not bribed by Egypt but instead was being "persuade[d]" by them; and (c) Menendez lacked any knowledge of the bribes. (ECF No. 158 at 11-12.) But none of these points contradict the central assertion in the Corkery affidavit, as supported by the CS transcript, that "Hana arranged for [Nadine] Arslanian to receive a ring and a car in exchange for Menendez's assistance in resolving criminal charges for insurance fraud pending against" the New Jersey Defendant. (Weitzman Ex. B at SDNY_R_00004207.) Therefore, Corkery's summary is not a misstatement, and is, indeed, by far the more logical interpretation of the conversation.

Moreover, any omission related to the CS transcript is not material. As the government asserts—and Menendez does not contest—the affidavit need only establish probable cause that the evidence, fruits, or instrumentalities of a crime would be found in the search, even if the crime was only perpetrated among Nadine, Hana, and the New Jersey Defendant. This threshold is amply satisfied by the documentary evidence described in the affidavit, including numerous messages among Nadine, Hana, and the New Jersey Defendant discussing the details of his case and the provision of various services and payments to Nadine. (*See, e.g.*, Weitzman Ex. B at SDNY_R_00004211; SDNY_R_00004220-27; SDNY_R_00004234-37.) For example, on the same day that the New Jersey Defendant pled guilty pursuant to a favorable plea agreement recommending a non-incarceratory sentence, Hana sent a text message containing Nadine's address to a jeweler. (*Id*. at SDNY_R_00004227.) In addition, the affidavit supports probable cause that Hana requested Menendez's assistance with a USDA investigation of his Halal certification company and a lawsuit by a plaintiff seeking to access Egyptian assets. (*Id*. at SDNY_R_00004230-33.)

---

[4] According to the Second Superseding Indictment, Robert Menendez and Nadine Arslanian became engaged in or about October 2019 and married in or about October 2020. (ECF No. 115 ¶ 6.)

The evidence also supports probable cause as to Menendez's involvement. Contrary to Menendez's claim that the quoted portion of Corkery's affidavit is the "*only* evidence, in the *entire* First Corkery Affidavit, linking Senator Menendez to any allegation of bribery, exchange of an improper *quid pro quo*, or any other criminal wrongdoing" (ECF No. 158 at 9 (emphasis in original)), the affidavit *does* include other specific evidence connecting the allegations to Menendez, including meetings between Menendez, Nadine, and Hana close in time to electronic communications about the New Jersey Defendant's case (Weitzman Ex. B at SDNY_R_00004218-21), and a phone call from Menendez's office to the personal cellphone of the official supervising the New Jersey Defendant's prosecution on the same day that Hana sent Nadine information about the relevant charges in that case (*id*. at SDNY_R_00004222-23). Within two hours of the call from Menendez's office to the official, Hana texted Nadine asking for her address. (*Id*. at SDNY_R_00004224.) Only a few days later, Nadine also texted Hana, "I'm so excited to get a car next week. !!" (*Id*. at SDNY_R_00004225.) In addition, the affidavit cites a message from Nadine to Hana indicating that Nadine had forwarded the materials related to Egypt to Menendez. (*Id*. at SDNY_R_00004232-33.) In summary, the warrant application amply satisfied probable cause and adding any omitted information contained in the CS transcript would not alter that determination.

Menendez also claims that the First Corkery Affidavit failed to disclose the following exculpatory information, which was available to the FBI: (1) according to Associate-1, "Hana has greatly exaggerated his relationship with Senator Robert Menendez" (Weitzman Ex. L at SDNY_00103551); (2) according to Associate-1, Hana took money intended for bribery and used it instead for renting office space and an apartment (Weitzman Ex. M at SDNY_00103626); and (3) according to the CS, the Egyptian intelligence leadership believed Hana had "messed up" (Weitzman Ex. N at SDNY_00103632), believed Hana was "likely working for the FBI" (Weitzman Ex. O at SDNY_00103634), was "looking to seize Hana's assets" (*id*.), instructed an intelligence "asset to cease all contact" with Hana (Weitzman Ex. P at SDNY_00103600), "was no longer working with [Hana]" and was instead "looking for another individual to manage IS EG Halal's international operations" (Weitzman Ex. Q at SDNY_00103606). According to Menendez, Corkery was obligated to disclose this material information and the failure to do so was intentionally or recklessly misleading.

However, these purported omissions do not satisfy the materiality standard. First, Hana exaggerating his relationship with Menendez, even if true, does not undermine the significant evidence connecting Hana—directly and through Nadine—to Menendez. Second, Hana allegedly taking a portion of the bribery funds for his own use rather than using the full amount of the bribe to purchase a ring and car for Nadine does not undermine probable cause to believe that a bribe of some amount was indeed agreed upon. In addition, the CS's comments about the Egyptian intelligence leadership's views on Hana—to the extent they are not *inculpatory*—do not undermine the probable cause in any manner whatsoever.

In sum, a hypothetical "corrected" affidavit, "after setting aside the allegedly misleading statements or omissions, … support[s] a finding of probable cause." *Salameh*, 152 F.3d at 113. Accordingly, the omissions are not material and the Court need not conduct a *Franks* hearing.

In addition, neither the purported misstatement nor the alleged omissions satisfy the intentionality standard. Menendez has not provided any "credible and probative evidence" that the omissions were designed to mislead or made in reckless disregard of whether they would mislead. *Rajaratnam*, 719 F.3d at 154. Indeed, Menendez has provided no evidence whatsoever of Corkery's intent to mislead or that she "entertained serious doubts as to the truth of [her] allegations." *Id*. Menendez also criticizes the government for not offering a "declaration from Agent Corkery explaining the rationale for the omissions" (ECF No. 191 at 16), but it is the defendant's burden to make a substantial preliminary showing that a *Franks* hearing is warranted. Similarly, there is no basis to *infer* recklessness or intent to mislead from these omissions, which are not "clearly critical." *Rivera*, 928 F.2d at 604. In the context of a lengthy affidavit citing to extensive documentary evidence, the omissions are neither material nor critical. Finally, the omission of inculpatory information, such as certain of the alleged omissions discussed above, cannot be evidence of intent to mislead. *See United States v. Thomas*, 788 F.3d 345, 351 (2d Cir. 2015) ("[W]e cannot conclude that any omission here was made deliberately or with reckless disregard for the truth when it is clear that full disclosure of the relevant information would only have strengthened the search warrant application." (internal quotation marks and emphasis omitted)).

Accordingly, Menendez's request for the Court to hold a *Franks* hearing on the January 2022 Menendez ESI Warrant is denied.

### 2. *June 15, 2022 Menendez Home Warrant*

Menendez asserts that the Second Corkery Affidavit supporting the June 15, 2022 Menendez Home Warrant contained the same flaws present in the First Corkery Affidavit: it included the same mischaracterization of the CS transcript (Weitzman Ex. J) and omitted the same exculpatory information. Menendez also claims that the Second Corkery Affidavit does not add any new evidence supporting probable cause because any newly alleged conduct represents only the provision of legitimate constituent services.

As Menendez concedes, the Second Corkery Affidavit "largely restated the same theories and evidence asserted in the First Corkery Affidavit." (ECF No. 158 at 14-15.) Accordingly, because the omissions from the First Corkery Affidavit did not satisfy the materiality or intentionality standards, those same omissions from the Second Corkery Affidavit do not warrant a *Franks* hearing here. Moreover, contrary to Menendez's assertion, the Second Corkery Affidavit *does* include additional evidence supporting probable cause, including messages from Uribe asking Hana for help disrupting a New Jersey investigation. (*See, e.g.*, Weitzman Ex. D at SDNY_R_00005113.)

Therefore, as with the January 2022 Menendez ESI Warrant, the Court denies Menendez's request for the Court to hold a *Franks* hearing on the June 15, 2022 Menendez Home Warrant.

### 3.   June 16, 2022 Menendez Home Warrant

Menendez asserts that the Third Corkery Affidavit supporting the June 16, 2022 Menendez Home Warrant contained the same flaws as the first two affidavits and omitted additional exculpatory information that the FBI learned before applying for this warrant. Specifically, Menendez claims that the affidavit omitted the following information:

1. The New Jersey Defendant denied giving money to Hana or Uribe to assist with his pending case. (Weitzman Ex. R at SDNY_00103838.)

2. The Hana Associate told the government that he was unaware of Hana attempting to assist the New Jersey Defendant with his criminal case. (Weitzman Ex. S at SDNY_00103817.)

3. The jeweler who allegedly sold Hana the ring to be used as a bribery payment stated that he did not recall Menendez, Nadine, or Hana purchasing a ring from him. (Weitzman Ex. T at SDNY_00103713.)

4. The owner of a COVID testing company who is also alleged to benefit from Menendez's influence told law enforcement that Menendez never made calls on his behalf, and the relevant municipal authority director stated that he "felt no pressure" to use the testing company. (Weitzman Ex. U at SDNY_00103679; Weitzman Ex. V at SDNY_00103722.)

According to Menendez, the omissions are material because if the affidavits were "rewritten to include the exculpatory information that was omitted or mischaracterized, it is hard to conceive of any reasonable Magistrate Judge finding probable cause to conclude that Senator Menendez was involved in criminal activity." (ECF No. 158 at 23.)  The Court disagrees.

The omissions are not material: the inclusion of this additional information would not change the probable cause determination. The New Jersey Defendant, the jeweler, and the testing company owner are all alleged beneficiaries of the bribery scheme. The fact that beneficiaries of an alleged scheme denied their involvement or knowledge after the fact when questioned by a government agent is not sufficient to overcome the significant contemporaneous evidence supporting probable cause that is otherwise present in the Third Corkery Affidavit. *See, e.g., United States v. Calk,* No. 19-CR-366, 2020 U.S. Dist. LEXIS 116013, at *21-22 (S.D.N.Y. July 1, 2020) ("Even if the hypothetical corrected affidavit paints a more complicated picture of Defendant's actions, statements made months after the events by employees who may have had concerns about their own culpability do not

undermine probable cause supported by contemporaneous emails.") (internal quotation marks omitted). The Hana Associate's statement is contradicted by his own statements recorded in the CS transcript (*see, e.g.,* Weitzman Ex. J at 8-9), and it is reasonable to weigh the probative value of those contemporaneous recorded statements more heavily than the weight ascribed to after-the-fact statements made to law enforcement. Even when the Hana Associate's statements *were* disclosed in affidavits for later warrants, those warrants were appropriately authorized. (*See* ECF No. 190, Ex. A at SDNY_R_00005645 n.7; Weitzman Ex. I at SDNY_R03_00000024 n.10.) Finally, the municipal authority director's statement that he "felt no pressure" is not sufficiently material to overcome the significant evidence supporting probable cause. Taken individually or cumulatively, these omissions do not change the probable cause determination.

As with the January 2022 Menendez ESI Warrant and June 15, 2022 Menendez Home Warrant, Menendez has not provided any evidence—and there is no basis to infer—that the omissions were intentionally or recklessly misleading. Indeed, the government only learned the relevant information on the same day that the warrant was sought, which casts significant doubt on the claim that its omission was designed to mislead.

Accordingly, these omissions do not meet the materiality or intentionality threshold and the Court denies Menendez's request for a *Franks* hearing on the June 16, 2022 Menendez Home Warrant.

### C.   Hana's Motion for a *Franks* Hearing is Denied

Several of the misstatements and omissions raised by Hana overlap with those raised by Menendez. These include Hana's claims related to the CS transcript, denials of knowledge or involvement by the Hana Associate and the New Jersey Defendant, and the COVID testing operator's denial of seeking Menendez's assistance. As set forth above, these omissions do not warrant a *Franks* hearing.

Hana also alleges that seven additional misstatements and omissions warrant a *Franks* hearing. However, as explained below, they are not material, either individually or cumulatively. Probable cause is amply supported by the warrant affidavits, which contain substantially similar detailed and contemporaneous evidence supporting probable cause for the bribery scheme as was included in the affidavits challenged by Menendez, including numerous messages among Nadine, Hana, and Uribe discussing the New Jersey Defendant and New Jersey Investigative Subject cases and the provision of various services and payments to Nadine.[5] The warrant affidavits challenged by Hana also describe communications among Hana, Nadine, and others regarding COVID-19 testing contracts,

---

[5] *See* Lustberg Ex. D at SDNY_R_00006252, -6257, -6259-61, -6264, -6272-74, -6275-76, -6282-83, -6291; Lustberg Ex. E at SDNY_R_00005982-83, -5987, -5989-91, -5994, -6002-04, -6006, 6012-13, -6021; Lustberg Ex. F at SDNY_R_00006491, -6496-6500, -6503, -6511, -6521-22, -6529; and Lustberg Ex. G at SDNY_R03_00000036, -0043-47, -0050, -0058-60, -0069-70, -0077.

Hana's Halal certification company, the personal injury lawsuit by a plaintiff seeking Egyptian assets, and the exchange of cash and other services contemporaneous with those communications.[6] Because of this substantial evidence supporting probable cause, even if the purported omissions were added to the affidavits, probable cause would still be satisfied.

First, Hana contends that the warrants omitted statements which allegedly cast doubt on the claims that Menendez was bribed to assist Egypt. Specifically, Hana claims the affidavits omitted statements by various U.S. officials that (a) Menendez's position on aid to Egypt has not evolved since 2018, (b) Menendez held up foreign military aid to Egypt, (c) the money on hold would have been released regardless of any action by Menendez, and (d) Menendez was not prohibited from sharing non-public Senate Foreign Relations Committee information with third-parties. However, these statements do not undermine the existence of probable cause supporting the challenged warrants. Only a promise or agreement is needed to underlie a substantive bribery offense, *see United States v. Silver*, 948 F.3d 538, 551-52 (2d Cir. 2020), and the statements regarding military aid, at best, concern what Menendez actually did, as opposed to what he agreed to do. The statement regarding sharing non-public information is also immaterial: the fact that sharing certain information may have been permitted does not undermine probable cause that sharing it was in furtherance of a bribery scheme. *See, e.g.*, *City of Columbia v. Omni Outdoor Advert., Inc.*, 499 U.S. 365, 378 (1999) (An official "is guilty of accepting a bribe even if he would and should have taken, in the public interest, the same action for which the bribe was paid."). Accordingly, even if these omitted statements had been included in the warrant application, probable cause would still be satisfied.

Second, Hana claims that the warrants misrepresented Uribe's role at a trucking industry insurance company by portraying him as in control of the company and omitting evidence that the New Jersey Investigative Subject was actually the company's owner. But Uribe's role at the company is not determinative of probable cause. What is relevant is the relationship between Uribe and the New Jersey Investigative Subject, and the corresponding motive of Uribe to pay bribes to stop the investigation to protect her. (*See, e.g.*, Lustberg Ex. G at SDNY_R03_00000074 n.71). Regardless of who officially owned the company, the affidavit adequately supports probable cause for Uribe's involvement in the alleged bribery scheme for Menendez to intervene in the New Jersey Investigative Subject's case. For example, the affidavit cites (a) a phone call from Menendez to the official in charge of the investigation on September 4, 2019, (b) a calendar entry for a meeting between Menendez and the official at noon on September 6, 2019, (c) records of phone calls among Menendez, Nadine, and Uribe around 2 PM on that same day, (d) text messages from Uribe

---

[6] *See* Lustberg Ex. D at SDNY_R_00006282-6283, -6299-6301, -6304, -6311, -6316-19; Lustberg Ex. E at SDNY_R_00006012, -6029-31, -6034, -6041, -6046-49; Lustberg Ex. F at SDNY_R_00006521, -6537-39, -6542, -6549, -6553-57; and Lustberg Ex. G at SDNY_R03_00000069, -0086, -0090-91, -0098, -0104-06.

to Nadine asking for updates over the next two months, and (e) texts between Uribe and Nadine on October 29, 2019 which reflect "that Uribe received favorable news concerning the [New Jersey Investigative Subject's] investigation and that Uribe attributed this good news to [Nadine] and Menendez." (*Id*. at SDNY_R03_00000075-77.) The following week, Uribe texted Nadine about setting up automatic payments by Uribe for the Mercedes-Benz. (*Id*.) Whether or not Uribe was in control of the company does not undermine the substantial probable cause established by these contemporaneous communications and payments.

Third, Hana claims that the warrants omitted an allegedly exculpatory statement by the official in charge of the cases involving the New Jersey Defendant and the New Jersey Investigative Subject. Specifically, this official only remembered a single conversation with Menendez about the New Jersey Defendant, which occurred *after* the resolution of the New Jersey Defendant's case. However, this omission does not undermine probable cause. First, even if the official does not recall discussing the New Jersey Defendant's case while it was still pending, phone records still show a call from Menendez's office to the official's personal cellphone on the same day that Hana sent Nadine various details about the New Jersey Defendant's case and Nadine allegedly forwarded that information to Menendez, following several days of text messages between Hana and Nadine about that same defendant. (*See, e.g.*, Lustberg Ex. E at SDNY_R_00005991-93.) Second, even absent a phone call preceding the resolution of the New Jersey Defendant's case, there is sufficient probable cause supporting an agreement for Menendez to intervene in that action, such as (a) Hana sending Nadine Menendez a picture of the grand jury transcript from the New Jersey Defendant's case and receiving back a picture from her of a diamond ring several days later, (b) a series of text messages—the night of an apparent dinner meeting between Hana, Nadine, and Menendez, and over the next few days—in which Hana provided information about the New Jersey Defendant's case to Nadine and Nadine allegedly forwarded that information to Menendez, (c) text messages reflecting the provision of home contracting services at the Menendezes' residence after Menendez received the information, and (d) Nadine's text to Hana a few days later stating, "I'm so excited to get a car next week. !!" (*See id*. at SDNY_R_00005982-83, -5989-98.) Third, even aside from the New Jersey Defendant's case, the warrant application supports probable cause for an agreement to intervene in the New Jersey Investigative Subject's case. (*See, e.g., id*. at SDNY_R_00006016-21.)

Fourth, Hana claims the warrants omitted the contention that Nadine twice attempted to pay the home contractor for the services that allegedly constituted a portion of the bribe. However, the challenged affidavits do disclose that Menendez told Nadine to pay the contractor in at least one instance. (Lustberg Ex. D at SDNY_R_00006302; Lustberg Ex. E at SDNY_R_00006032; Lustberg Ex. F at SDNY_R_00006540; Lustberg Ex. G at SDNY_R03_00000089.) This disclosure conveys substantially the same information that Hana claims was wrongfully omitted here. In any event, because of the other evidence

reflecting the receipt of a ring, car payments, and cash, probable cause exists entirely independently of the home contractor's provision of services to Nadine and Menendez.

Fifth, Hana claims that the warrants omitted Associate-2's statement to the FBI agent that he never provided Uribe with his email address for Uribe to purchase a vehicle, which is contrary to the affidavits' assertions that Uribe initially used Associate-2's email address. But the challenged affidavits do disclose this denial. (*See* Lustberg Ex. D at SDNY_R_00006293 ("[Associate-2] denied providing Uribe with his email address to use to purchase or make payments on any vehicle."); Lustberg Ex. E at SDNY_R_00006023; Lustberg Ex. F SDNY_R_00006531; Lustberg Ex. G at SDNY_R03_00000079.)

Sixth, Hana claims that the warrants from December 2022, January 2023, and February 2023 misstate that payments on the car "apparently have continued up through in or about the present" when the payments actually ceased in 2022 (as acknowledged in the September 2023 warrant). The government specifically acknowledges this mistake, but it is not material. This misstatement is only found in the paragraph that introduces and summarizes the section regarding the New Jersey Investigative Subject. (*See, e.g.*, Ex E at SDNY_R_00006016.) In the more detailed paragraphs that follow, the affidavits do correctly state that payments had been made through "early June 2022," until the service of subpoenas and execution of search warrants, after which Nadine called Mercedes-Benz Financial Services to change the contact email from Uribe's to hers and for her to make a payment on the car. (*See* Lustberg Ex. D at SDNY_R_00006293-94; Lustberg Ex. E at SDNY_R_00006023-24; Lustberg Ex. F at SDNY_R_00006531-32.) Accordingly, this mistake in the summary paragraph is not material and probable cause would have been satisfied even if the summary paragraph correctly stated that the payments continued "until 2022," instead of continuing to "the present."

Seventh, Hana claims that the September 2023 warrant omitted the following statements about the source or the purpose of gold bars that allegedly constituted bribe payments: (a) Menendez's statement that certain gold bars came from Nadine's deceased mother and (b) additional statements that Nadine received the one-ounce gold bars from Daibes only for the purpose of showing them to a friend. But these omissions are not material; even without any mention of the gold bars, probable cause would be satisfied. In addition, the affidavit already disclosed substantially the same information: Nadine's statement that she inherited the gold from her deceased mother (Lustberg Ex. G at SDNY_R03_00000122), and the representation of Nadine's counsel that Nadine received the bars to show a mutual acquaintance (*id*. at SDNY_R03_00000125). Disclosure of an additional source for each theory would not change the probable cause determination.

Accordingly, each of the omissions does not meet the materiality threshold. Moreover, the combined, cumulative effect of the omissions raised by Hana—including those that were also raised by Menendez—does not rise to the level of the substantial preliminary showing required for a *Franks* hearing.

In addition to failing to meet the materiality standard, the alleged omissions also do not satisfy the intentionality standard. Like Menendez, Hana has not provided any "credible and probative evidence" that the omissions were designed to mislead or made in reckless disregard of whether they would mislead. *Rajaratnam*, 719 F.3d at 154. Hana has provided no evidence whatsoever of either Agent Corkery or Agent Larkin's intent to mislead or that they "entertained serious doubts as to the truth of [their] allegations." *Id*. Similarly, there is no basis to infer recklessness or intent to mislead from these omissions, which are not "clearly critical." *Rivera*, 928 F.2d at 604. In the context of lengthy affidavits of over 250 pages each that cite to extensive documentary evidence, the omissions are certainly not critical.

Accordingly, these omissions do not meet the materiality or intentionality threshold and the Court denies Hana's request for a *Franks* hearing on the challenged warrants.

## III. THE ESI WARRANTS ARE NOT UNCONSTITUTIONALLY OVERBROAD

Menendez and Hana additionally contend that certain warrants violate the requirement of the Fourth Amendment that warrants "particularly describ[e] the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. Menendez claims that the Menendez ESI Warrants—the July 2022 Menendez ESI Warrant and the September 2023 Supplemental Warrant—violate that requirement. Hana claims that the same is true for the Hana ESI Warrants: the December 2020 Hana Email Warrant, November 2021 Hana iCloud Warrant, and January 2022 Hana Email Warrant. The Court rejects both claims and finds both sets of ESI Warrants comply with the Fourth Amendment's particularity requirement.

### A.   Legal Standard

To prevent law enforcement from engaging in "'general, exploratory rummaging in a person's belongings' and the attendant privacy violations, the Fourth Amendment provides that 'a warrant may not be issued unless probable cause is properly established and the scope of the authorized search is set out with particularity.'" *United States v. Galpin*, 720 F.3d 436, 445 (2d Cir. 2013) (quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971) and *Kentucky*, 563 U.S. at 459). The particularity requirement has three components: (1) identifying the specific offense for which probable cause has been established; (2) describing the place to be searched; and (3) specifying the items to be seized by their relation to designated crimes. *See Galpin*, 720 F.3d at 445-446. "The Fourth Amendment does not require a perfect description of the data to be searched and seized" and "a search warrant does not necessarily lack particularity simply because it is broad." *United States v. Ulbricht*, 858 F.3d 71, 100 (2d Cir. 2017), *abrogated on other grounds by Carpenter v. United States*, 138 S. Ct. 2206 (2018). Instead, a warrant is overbroad if its "description of the objects to be seized . . . is broader than can be justified by the probable cause upon which the warrant is based." *Galpin*, 720 F.3d at 446.

There is "a heightened sensitivity to the particularity requirement in the context of digital searches." *Galpin*, 720 F.3d at 447. Even so, due to the high volume of relevant electronic documents normally generated, it is highly impractical, if not impossible, for law enforcement to conduct a search for electronic documents on-site and limit its seizure to only relevant documents. Accordingly, in the suppression context, courts have routinely "upheld the Government's ability to obtain the entire contents of the email account to determine which particular emails come within the search warrant." *In re A Warrant for All Content & Other Info. Associated with the Email Account xxxxxxx@gmail.com Maintained at Premises Controlled By Google, Inc.*, 33 F. Supp. 3d 386, 394 (S.D.N.Y. 2014) (collecting cases); *see also United States v. Ray*, 541 F. Supp. 3d 355, 399 (S.D.N.Y. 2021) ("Courts in this Circuit, however, have uniformly held that law enforcement . . . may obtain a warrant to request all emails from an account."). It is "well-established that a search warrant can properly permit the Government to obtain access to electronic information for purposes of a search even where the probable cause showing does not apply to the entirety of the electronic information that is disclosed to the Government." *In re A Warrant for All Content*, 33 F. Supp. 3d at 393.

### B.   The Menendez ESI Warrants Are Sufficiently Particular and Not Overbroad

The Menendez ESI Warrants satisfy the requirements of particularity. First, the warrants identify the relevant statutes for which probable cause has been established. (*See* Weitzman Ex. G at SDNY_R_00005891; Weitzman Ex. H at SDNY_R03_00000317-18.) Second, the warrants describe the places to be searched: the subject accounts (Weitzman Ex. G at SDNY_R_00005890) and devices (Weitzman Ex. H at SDNY_R03_00000313-17.) Third, the warrants specify the relationship between the items to be seized and their relation to the crimes. (*See* Weitzman Ex. G at SDNY_R_00005891-93; Weitzman Ex. H at SDNY_R03_00000317-21.)

Menendez does not contest that the basic elements of particularity are met. Instead, he claims that the Menendez ESI Warrants violate the Fourth Amendment for three reasons. First, he urges that the warrants lack the required particularity because they are "laden with 'unduly broad, ambiguous, or catch-all categories.'" (ECF No. 158 at 28 (quoting *United States v. Zemlyansky*, 945 F. Supp. 2d 438, 472 (S.D.N.Y. 2013).) In particular, Menendez takes issue with the collection of all communications between himself and other individuals, including his wife, "without regard to subject matter or privacy interests." (ECF No. 158 at 28.) However, the relevant provision of the warrant is indeed limited by subject matter. The warrant provides for the search of "communications between or involving" one set of individuals "*reflecting or concerning interactions* between" Menendez and another set of individuals. (Weitzman Ex. H at SDNY_ R03_00000318 (emphasis added).) Namely, the communications sought are limited to those that reflect or concern interactions between Menendez and a limited set of relevant individuals, and Menendez does not identify any particular individuals whose inclusion is unsupported by probable cause. The fact that the search may have captured a large quantity of communications reflects the breadth of the

alleged conduct supported by probable cause; not that the warrant is unconstitutionally overbroad. Unlike the case cited by Menendez—where the warrant at issue did not even identify the criminal statutes at issue, *Zemlyansky*, 945 F. Supp. 2d at 454—the warrants here clearly list the relevant criminal statutes and include a detailed list of the individuals, entities, and conduct under investigation. (*See* Weitzman Ex. G at SDNY_R_00005891-93; Weitzman Ex. H at SDNY_R03_00000317-21.) Menendez also takes issue with the breadth of iCloud account collections, but, as set forth above, it is well settled that the government may seize the entire contents of electronic accounts in order to search for relevant evidence. Accordingly, the subject matter to be investigated is commensurate with the scope of the government's investigation and appropriately tailored to the specific individuals and crimes under investigation, which are supported by probable cause.

Second, Menendez contends that the September 2023 Supplemental Warrant is overbroad because it lacks any date limitation on the materials to be seized. Menendez urges that this defect "on its own" can render a search warrant unconstitutionally overbroad. (ECF No. 158 at 30.) However, where alleged conduct is complex and long-running, as here, courts in this Circuit have not found the absence of a time limitation to invalidate the warrant. *See United States v. Elkorany*, No. 20-CR-437, 2021 U.S. Dist. LEXIS 154923, at \*12 (S.D.N.Y. Aug. 17, 2021) ("Courts in this Circuit have reasoned that the absence of a time frame does not render warrants unconstitutionally general where the crimes under investigation were complex and concerned a long period of time, and not simply one or two dates of criminal activity.") (collecting cases) (internal quotation marks and brackets omitted).

The only case cited by Menendez where the lack of a date limitation alone rendered a warrant defective concerned a relatively short, three-month-long fraud and was from a different circuit. *See United States v. Abboud*, 438 F.3d 554, 576 (6th Cir. 2006). The remaining cases show only that the lack of a date limitation is simply a relevant factor in the overbreadth analysis—not that this failure alone is sufficient to render a warrant unconstitutional. *See United States v. Wey*, 256 F. Supp. 3d 355, 384 (S.D.N.Y. 2017) (finding warrants insufficient "for several reasons," including the failure to "cite criminal statutes" and "describe any suspected criminal conduct"); *Zemlyansky*, 945 F. Supp. 2d at 454 (listing lack of time frame as one of several "relevant" factors to consider); *United States v. Kow*, 58 F.3d 423, 427 (9th Cir. 1995) (finding a warrant insufficiently particular where it did not specify the suspected criminal conduct or include a time limitation); *United States v. Abrams*, 615 F.2d 541, 543 (1st Cir. 1980) (finding a warrant insufficiently particular where "officers' discretion was unfettered, there is no limitation as to time and there is no description as to what specific records are to be seized").

Menendez's third objection is that "the ESI Warrants failed to limit the scope of the officers' search to evidence of specified crimes." (ECF No. 158 at 31.) Although Menendez concedes that the warrants *do* include an explicit list of the crimes under investigation (*see* Weitzman Ex. G at SDNY_R_00005891; Weitzman Ex. H at SDNY_R03_00000317-18), he

claims that "the government should have, at a minimum, been required to seize only those communications between these individuals that fall within categories conceivably related to evidence of a crime." (ECF No. 158 at 31-32.) This is essentially an argument that the warrants are not appropriately limited in scope to the relevant crimes under investigation, and has been dealt with above; namely that the breadth of the information sought is commensurate with the extent of the government's investigation and is limited to specific crimes and individuals as supported by probable cause.

In sum, the Menendez ESI Warrants are not violative of the requirements of the Fourth Amendment.

### C.   The Hana ESI Warrants Are Sufficiently Particular and Not Overbroad

Hana similarly alleges that the December 2020 Hana Email Warrant, November 2021 Hana iCloud Warrant and the January 2022 Hana Email Warrant violated the Fourth Amendment's particularity requirement. Specifically, Hana claims that the warrants have improperly authorized seizure of two types of materials allegedly unrelated to the specified offenses: (1) documents concerning a prior search warrant executed on or about November 25, 2019, and (2) documents concerning the use of alternative methods of communications believed to be less easily accessed by law enforcement.

These two categories of evidence concern attempts to thwart the government's investigation or evade detection and are relevant to Hana's consciousness of guilt. It is well-established that evidence supporting a defendant's consciousness of guilt is relevant and admissible at trial. *See United States v. Norris*, 513 F. App'x 57, 60 (2d Cir. 2013) (evidence that defendant covered up the fraud was relevant and admissible at trial to show, *inter alia*, consciousness of guilt); *United States v. Baldeo*, No. 13-CR-125, 2014 WL 351638, at *1 (S.D.N.Y. Jan. 31, 2014) ("Evidence of a party's consciousness of guilt is relevant and admissible."). Accordingly, if probable cause supports searching for evidence of a crime, and conduct suggesting consciousness of guilt is indeed relevant, then it logically follows that a warrant properly authorizing seizure of evidence of a crime encompasses evidence of consciousness of guilt. Put another way, conduct that suggests consciousness of guilt is itself relevant. Hana cites no case supporting his position that where a warrant authorizes searching for evidence of certain crimes, that warrant is overbroad if it permits searching for evidence showing consciousness of guilt for those crimes. Therefore, the Hana ESI Warrants are not overbroad or insufficiently particular in violation in the Fourth Amendment.

## IV. Conclusion

For the reasons set forth above, Menendez's Motion to Suppress Search Warrant Returns is denied and Hana's Omnibus Pretrial Motion is denied to the extent it seeks a *Franks* hearing and suppression of evidence. Menendez and Hana have failed to make a substantial preliminary showing of material misrepresentations or omissions that, based on

credible evidence, are deliberately or recklessly misleading. Additionally, the challenged Menendez and Hana ESI Warrants do not violate the Fourth Amendment's particularity requirement.


Dated:  New York, New York
       March 4, 2024

SO ORDERED:

Sidney H. Stein, U.S.D.J.