UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

    -against-

ROBERT MENENDEZ et al.,

    Defendants.

Case No. 23-cr-490 (SHS)

---

### SENATOR ROBERT MENENDEZ'S MEMORANDUM OF LAW IN SUPPORT OF HIS RENEWED MOTIONS TO DISMISS BASED ON LACK OF VENUE AND DUPLICITY, AND HIS SEVERANCE MOTION

**PAUL HASTINGS LLP**

Adam Fee
Avi Weitzman
Robert D. Luskin
200 Park Avenue
New York, N.Y. 10166
(212) 318-6000

**JONES DAY**

Yaakov M. Roth (*pro hac vice*)
51 Louisiana Avenue N.W.
Washington, D.C. 20001
(202) 879-3939

*Attorneys for Defendant Robert Menendez*

Senator Robert Menendez respectfully submits this memorandum of law in support of his motions to dismiss the fourth superseding indictment (the "S4 Indictment") based on lack of venue and duplicity, and in support of his severance motion. These motions had been previously briefed with respect to the S2 Indictment (ECF No. 137), but given the filing of the S4 Indictment on March 5, 2024 (ECF No. 238), Senator Menendez submits this memorandum to supplement the arguments previously advanced. Put simply, the expanded S4 Indictment exacerbates the fundamental flaws noted in the S2 Indictment that merit the relief sought by Senator Menendez.

I.   **THE S4 INDICTMENT FAILS TO ADEQUATELY ALLEGE VENUE**

Senator Menendez incorporates the arguments presented in his prior motion to dismiss regarding lack of venue. *See* ECF No. 137 at 6-17; ECF No. 188 at 4-16.

   A.   *The Indictment Fails to Sufficiently Allege Venue for Counts I, II, III, and XV.*

As previously briefed, venue is not sufficient as to *any* of the conspiracy counts previously charged in the S2 Indictment. While the S4 Indictment advances two new allegations in an effort to establish venue for those counts, both allegations fail to solve the problem.

*First*, the S4 Indictment alleges that "Jose Uribe requested that Associate-2, who was in the Bronx at the time, make a financing payment" on Nadine Menendez's car. S4 Indict. ¶ 78(b). Pause to consider just how far the government must stretch to find any link to this venue. This is not an allegation that anyone *did anything* in the SDNY.  It is merely an allegation that Uribe gave a direction to a third party (not even a co-conspirator) while that person happened to be in the SDNY.  That is nowhere close to sufficient. Certainly absent any facts tying Associate-2's alleged presence in the Bronx to the purposes of the conspiracy, or suggesting that Senator Menendez (or even any alleged co-conspirator) had any knowledge of Associate-2's location, there is no basis to conclude—even assuming the truth of these allegations—that venue in the SDNY was reasonably

foreseeable to the Senator. *See United States v. Bezmalinovic*, 962 F. Supp. 435, 441 (S.D.N.Y. 1997) (venue for bank-fraud charge was improper because "Defendant did not intend and could not have foreseen that any acts would occur in the Southern District, and no decisions were made by the target of the fraud in the Southern District.").

*Second*, the Indictment alleges that Daibes arranged a ride home from JFK Airport for the Senator and Nadine Menendez, and that they drove through the District to New Jersey. S4 Indict.¶ 78(f). But again, the Indictment includes no allegation connecting this car ride to the alleged scheme, let alone how this car ride may have conceivably furthered any such scheme. The fact that co-conspirators once happened to cross through a district is obviously insufficient on its own to establish venue.

    **B.**    *The Indictment Fails to Sufficiently Allege Venue for Count IV.*

Count IV alleges that the Senator conspired to obstruct the prosecution of Daibes pending in the District of New Jersey—*not* in this District. The S4 Indictment relies on two overt acts to attempt to establish venue: the ride home from JFK Airport, *see* supra I(A), and the sale of gold to a Manhattan jeweler, *see* ECF No. 137 at 15-16; ECF No. 188 at 13-15. Once again, the S4 Indictment makes no effort to connect these acts in any way to the furtherance of the obstruction (in *New Jersey*) of the prosecution of Daibes.

    **C.**    *The Indictment Fails to Sufficiently Allege Venue for Substantive Counts V, VII-XI, XIII-XIV, and XVI.*

Venue is more narrowly construed for substantive charges than for conspiracy charges. *See, e.g., United States v. Tzolov*, 642 F.3d 314, 318-20 (2d Cir. 2011) (finding venue improper on a substantive securities-fraud count despite being proper on the associated conspiracy counts). For substantive offenses, the act *constituting the substantive crime itself* must take place in the district

2

of prosecution  *See id.* That is, absent a statutory venue provision, one of the crime's "essential conduct elements" must have taken place in this District. *United States v. Rodriguez-Moreno*, 526 U.S. 275, 279 (1999) (quoting *United States v. Cabrales*, 524 U.S. 1, 7 (1998)). "In performing this inquiry, a court must initially identify the conduct constituting the offense (the nature of the crime) and then discern the location of the commission of the criminal acts." *Id.* This is often done by looking to the key verbs in the statute, which indicate the essential conduct that constitutes the offense. Under that test, "venue is not proper in a district in which the only acts performed by the defendant were preparatory to the offense and not part of the offense." *Tzolov*, 642 F.3d at 319 (quoting *United States v. Beech-Nut Nutrition Corp.*, 871 F.2d 1181, 1190 (2d Cir. 1989)). This is true regardless of whether the alleged crime is a continuing offense or whether the act would suffice for venue on a conspiracy charge. *Beech-Nut*, 871 F.2d at 1190-91.

Where, as here, the Indictment does not adequately allege that the essential conduct of charged offenses took place in the prosecuting district, "a court should ask whether the criminal acts in question bear 'substantial contacts' with any given venue." *United States v. Saavedra*, 223 F.3d 85, 93 (2d Cir. 2000) (quoting *United States v. Reed*, 773 F.2d 477, 481 (2d Cir. 1985)). This substantial-contacts test considers "(1) the site of the crime, (2) its elements and nature, (3) the place where the effect of the criminal conduct occurs, and (4) suitability of the venue chosen for accurate factfinding." *Id.* It is undisputed that this test applies to substantive counts when the venue of prosecution imposes hardship or unfairness on a defendant.

Finally, on *any* charge, when venue relies on acts committed by someone other than the defendant, "the acts' occurrence in the district of venue [must] have been reasonably foreseeable

3

to the defendant." *United States v. Davis*, 689 F.3d 179, 186 (2d Cir. 2012) (cleaned up) (quoting *United States v. Rommy*, 506 F.3d 108, 123 (2d Cir. 2007)).

**The Substantive Bribery Counts**: Counts Five and Eleven of the Indictment charge the Senator with bribery under 18 U.S.C. §§ 201(b)(2)(A) and (C). The essential conduct—the acts constituting a bribery offense under § 201(b)(2)—are "demand[ing], seek[ing], receiv[ing], accept[ing], or agree[ing] to receive or accept anything of value." *Id.* § 201(b)(2); *see also United States v. Stephenson*, 895 F.2d 867, 874 (2d Cir. 1990) (finding these acts to constitute the key elements for venue purposes). The Indictment nowhere alleges that the Senator demanded, sought, received, accepted, or agreed to receive or accept a bribe in this District. All of the relevant factual allegations, to the extent they are specific, center on New Jersey and, to a lesser degree, the District of Columbia.[1] Likewise, there is no allegation that the effect of any alleged bribe occurred in this district, or that any other "substantial contact" exists between SDNY and the bribery scheme. On a substantive charge, this is fatal to the government's assertion of venue.

**Substantive Wire Fraud Counts:** Counts Seven, Nine, and Thirteen charge the Senator with honest-services wire fraud under 18 U.S.C. § 1343. The essential conduct on a wire-fraud count is "transmit[ting] or caus[ing] to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds" for a fraudulent purpose. 18 U.S.C. § 1343; *see United States v. Ramirez*, 420 F.3d 134, 145 (2d

---

[1] With respect to the few dinners alleged to have occurred in this District, the Indictment makes no allegation that any conduct constituting any part of a bribery offense occurred at any such dinners. S4 Indict. ¶ 78(a), (e).

4

Cir. 2005) (finding that only the actions, and not the devising of a scheme, constitute the essential conduct elements of a fraud charge).

Again, the S4 Indictment fails to include any allegations showing that the Senator made or caused any fraudulent transmissions from or to this District. *See United States v. Rutigliano*, 790 F.3d 389, 397-98 (2d Cir. 2015). Nor does the Indictment identify any wires to or from this District that the Senator caused *others* to make and that were reasonably foreseeable to the Senator. In sum, the government has not alleged that *any* acts involving wire fraud took place here, let alone the *essential conduct* elements of that offense. And the same is true with respect to allegations of substantial contacts – there is no claim that the impact of unidentified wire activity was felt in this District nor any other claim of substantial contacts. Venue therefore fails under that test as well.

**Substantive Hobbs Act Extortion.** Counts Eight, Ten, and Fourteen charge the Senator with extortion under color of official right, which requires the government to prove, as an element, that his alleged actions affected interstate commerce. 18 U.S.C. § 1951(a) (prohibiting "obstruct[ing], delay[ing], or affect[ing] commerce or the movement of any article or commodity in commerce, by robbery or extortion"). The government must show that he either committed one of these prohibited acts in this District or that he reasonably foresaw an effect on commerce here. *See United States v. Davis*, 689 F.3d 179, 186 (2d Cir. 2012).[2] But the Indictment alleges no facts to establish either that the Senator's alleged actions took place in this District or that any effect on commerce here was reasonably foreseeable to him. For instance, to the extent the government relies on the alleged sale or purchase of gold in the District, it has failed to allege that any such transactions, or their effects on commerce in the District, were reasonably foreseeable *to the*

---

[2] The Senator maintains that neither the Hobbs Act, the venue statutes, nor the Constitution permits venue based solely on where the effects on commerce are felt, and that the Second Circuit's contrary holding, *see Davis*, 689 F.3d at 186, was erroneous.

5

*Senator*.[3] All of these transactions are alleged to have been carried out by others; all of the relevant factual allegations involving the Senator center on other districts. And, again, there is no allegation of substantial contact between this District and an extortion offense either. Consequently, the Indictment fails to allege facts sufficient to establish proper venue on these counts as well.

*__Substantive FARA Count__*. Count Sixteen alleges that the Senator violated FARA by acting "as an agent of the government of Egypt and Egyptian officials . . . through political activities, acting as a political consultant, and representing the interests of the Government of Egypt and Egyptian officials before agencies and officials of the Government of the United States." S4 Indict. ¶ 112. But it does not allege that he carried out any such acts in this District. To the contrary, the essential conduct that is alleged—political activities, political consulting, and representation before federal agencies and officials—all are alleged to have occurred in Washington, D.C., and to some extent in New Jersey, without any substantial contact with this District. The Indictment thus insufficiently alleges venue on this count as well.

For these reasons, these substantive counts must be dismissed or, in the alternative, transferred to the District of New Jersey pursuant to Rule 21 of the Federal Rules of Criminal Procedure. *See* ECF No. 137 at 16-17.

### D.     *Bill of Particulars*

At a minimum, a bill of particulars is warranted to provide the Senator fair notice as to the basis for the government's alleged venue as to each count. Neither the government's representations to counsel, nor the amendments to the Indictment, have alleviated the need for this

---

[3] Indeed, the Indictment does not even allege that *any* Defendant sold gold in this District. Rather, it alleges that, eventually, gold was *resold* by an unnamed individual in this District. ¶ 78(g). The government asserts no basis (because there is none) for concluding that such resale in this District was foreseeable to Senator Menendez.

6

information. For instance, the Indictment fails to provide notice of which wire communications are at issue, let alone how they furthered a scheme to defraud. On this point, and others, the Court should at minimum order the government to provide such notice in a bill of particulars. *See United States v. Reale*, 1997 WL 580778, at *14 (S.D.N.Y. Sept. 17, 1997) (granting motion for a bill of particulars "identifying the specific mailings and wire transfers and the approximate dates alleged" on substantive mail and wire fraud counts); *United States v. Dorfman*, 335 F. Supp. 675, 680 (S.D.N.Y. 1971) (granting motion for a bill of particulars to identify specific wire transmissions alleged and ruling that "[i]f the defendant can successfully move against these counts for jurisdictional deficiency, he should be given the means to do so").

Without notice of the government's basis for venue—which, from the S4 Indictment and the government's representations, appear to be entirely lacking—the Senator will be deprived of a fair opportunity to investigate and rebut them at trial. This is no less true for the S4 Indictment's new challenged counts.

## II.     The S4 Indictment Confirms the Duplicity Inherent in Counts I-III

Senator Menendez incorporates the arguments presented in his prior motion to dismiss regarding the Indictment's duplicity. *See* ECF No. 137 at 17-26; ECF No. 188 at 16-27.

The S4 Indictment makes the duplicitous nature of the conspiracy charges in Counts I, II, and III even more prominent. Specifically, the S4 Indictment carefully divides the new substantive counts such that each addresses only one distinct "scheme" even as the conspiracy counts continue to embrace multiple distinct schemes. For example, while the S4 Indictment charges *one* conspiracy to commit honest services wire fraud count (Count II), the Indictment charges *three* substantive honest services wire fraud counts regarding (1) "Actions to Benefit HANA and Egypt" (Count VII), (2) "Actions to Benefit Uribe and Uribe's Associates" (Count IX), and (3) "Actions

7

to Benefit DAIBES and Qatar" (Count XIII).[4] The government's inclusion of decoupled substantive counts only exposes that the government could have and should have decoupled each conspiracy count to align with the various alleged schemes. Thus, in including these substantive counts, the government did not cure the Indictment's defects (because the conspiracy counts are *still* impermissibly duplicitous), but only proved their existence.

Failure to decouple the conspiracy counts not only threatens to prejudice Senator Menendez's constitutional rights, it also jeopardizes the entire trial given the risk of a non-unanimous guilty verdict. *See* ECF No. 137 at 25; ECF No. 188 at 18, 23, 26. The simplest way to mitigate this risk is to require non-duplicitous counts (which the government could have included in this Indictment). For the reasons stated herein as well as in his Second Motion to Dismiss and Reply briefings, Senator Menendez requests that this Court require the government to file a new indictment decoupling the conspiracy counts (Counts I, II, and III) or, in the alternative, require the use of a special jury verdict form. *See* ECF No. 137 at 17-26; ECF No. 188 at 16-27.

II.     **The S4 Indictment Only Magnifies the Prejudice that Necessitates Severance of the Senator's and Nadine Menendez's Trials**

Senator Menendez incorporates the arguments presented in his prior motion to dismiss supporting severance of his trial from his co-defendants'. *See* ECF No. 137 at 26-39; ECF No. 188 at 27-42.

The two new obstruction of justice counts (Counts Seventeen and Eighteen) in the S4

---

[4] While the government charges only three schemes in its various counts, Senator Menendez maintains the Indictment actually alleges five schemes because the government has combined two schemes relating to Daibes (the Federal Prosecution Scheme and the Qatar Investment Scheme) into a single substantive count, and similarly combined the Egyptian Aid Scheme and the IS EG Halal Scheme into a single count. *See* ECF 137 at 21-22. At minimum, however, and regardless of how one divides the schemes, the S4 indictment demonstrates that there are multiple distinct ones within each overbroad conspiracy count.

Indictment underscore the need for severance. Those counts introduce new privilege issues that dramatically increase the risk of prejudice that would accrue to Senator Menendez in a joint trial. Specifically, the two counts rely upon the allegation that *Nadine* Menendez (but not Senator Menendez) and Jose Uribe conspired to falsely convey to law enforcement that car payments that Uribe made on Nadine's behalf were *loans* for which Uribe expected repayment.[5] S4 Indict. ¶ 69. The S4 Indictment also alleges that *Nadine* Menendez wrote checks to Jose Uribe and Wael Hana, which, in the memo lines, falsely indicated that such checks were delivered in order to repay loans. *Id.* ¶ 116 (b), (d).

If Senator Menendez has a constitutional right to testify in his own defense at trial, but *exercising* that right may require him to disclose confidential communications with his wife Nadine regarding the loans provided by Wael Hana and Jose Uribe. These statements would tend to exculpate the Senator by demonstrating his lack of knowledge of anything unlawful vis-à-vis these payments. Because the government may claim that these same communications *inculpate* Nadine, however, Nadine may assert the spousal-communications privilege to prevent the Senator from so testifying. *See* ECF No. 137 at 29-30. This is yet another way in which a joint trial will serve to compromise one of the Senator's "specific trial rights" – *i.e.*, the right to testify in his own defense as to private statements between himself and his wife. *See id.* at 31. That risk would be

---

[5] In his March 1 plea allocution, Jose Uribe did not reference any agreement with Senator Menendez regarding this alleged obstruction conspiracy. *See* Weitzman Decl. Ex. A (Plea Tr.) at 32:16-24. Indeed, the FBI 302s of Uribe's proffers produced by the government confirm that Uribe never discussed the loan or car payments with the Senator, and never had an agreement with the Senator regarding any alleged obstructive conduct or statements.

completely eliminated in separate trials, where the Senator could testify freely without the chance that Nadine may assert the privilege.

***

Simply put, the S4 Indictment did not resolve the legal deficiencies in the S2 Indictment and it introduces many new ones. As such, Senator Menendez's renewed motion to dismiss should be granted.

/s/ *Adam Fee*

**PAUL HASTINGS LLP**

Adam Fee
Avi Weitzman
Robert D. Luskin
200 Park Avenue
New York, N.Y. 10166
(212) 318-6000

**JONES DAY**

Yaakov M. Roth (*pro hac vice*)
51 Louisiana Avenue N.W.
Washington, D.C. 20001
(202) 879-3939

*Attorneys for Defendant Robert Menendez*

10