UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------x
                                                 :

UNITED STATES OF AMERICA          :

                                                :

          -*v.*-                 :      S4 23 Cr. 490 (SHS)

                                                :

ROBERT MENENDEZ,             :
NADINE MENENDEZ,            :
        a/k/a "Nadine Arslanian,"    :
WAEL HANA,                  :
        a/k/a "Will Hana," and      :
FRED DAIBES,               :

                                    :

                     Defendants.     :

                                    :
----------------------------------------------------------------x

# OMNIBUS MEMORANDUM OF LAW OF THE UNITED STATES OF AMERICA IN OPPOSITION TO THE DEFENDANTS' PRETRIAL MOTIONS (1) TO DISMISS THE S4 SUPERSEDING INDICTMENT, (2) FOR SEVERANCE, AND (3) FOR A BILL OF PARTICULARS

 

DAMIAN WILLIAMS
United States Attorney

Eli J. Mark
Daniel C. Richenthal
Paul M. Monteleoni
Lara Pomerantz
Assistant United States Attorneys
- Of Counsel -

## **TABLE OF CONTENTS**

BACKGROUND......................................................................................................1

    A.    Procedural Background ......................................................................1

    B.    Attempts to Cover Up Bribe Payments...............................................2

DISCUSSION .......................................................................................................3

II.    THE DEFENDANTS ARE NOT ENTITLED TO DISMISSAL OF THE BRIBERY AND EXTORTION CHARGES........................................................................3

III.   THE DEFENDANTS ARE NOT ENTITLED TO DISMISSAL OF THE FOREIGN AGENT CONSPIRACY CHARGE...................................................................5

IV.   THE INDICTMENT IS NOT DUPLICITOUS .............................................5

V.    HANA'S MULTIPLICITY CHALLENGE IS PREMATURE AND MERITLESS........10

VI.   THE DEFENDANTS' MOTIONS FOR SEVERANCE ARE MERITLESS..................11

VII.  THE DEFENDANTS' MOTIONS TO DISMISS FOR ALLEGED LACK OF VENUE SHOULD BE DENIED...............................................................................12

VIII. MENENDEZ'S MOTION FOR A BILL OF PARTICULARS SHOULD BE DENIED .......................................................................................................…18

CONCLUSION..................................................................................................19

The Government respectfully submits this memorandum of law in opposition to (i) Robert Menendez's motion to dismiss Superseding Indictment S4 23 Cr. 490 (the "Indictment" or "S4 Indictment"), for a severance, and for a bill of particulars; (ii) Nadine Menendez's motion for a severance; (iii) Wael Hana's motion to dismiss the Indictment; and (iv) Fred Daibes's motion to dismiss the Indictment.[1]   For the reasons set forth below, these motions—which are in large part identical to the defendants' pending motions—should be denied.

## BACKGROUND

### A.    Procedural Background

On or about January 2, 2024, a grand jury in the Southern District of New York returned a four-count Superseding Indictment, No. S2 23 Cr. 490 (SHS) (the "S2 Indictment"), charging defendants Robert Menendez, Nadine Menendez, a/k/a "Nadine Arslanian," Wael Hana, a/k/a "Will Hana," Jose Uribe, and Fred Daibes.[2]   Count One charged all five defendants with participating in a conspiracy to bribe Menendez, the senior United States Senator from New Jersey, between approximately 2018 and 2023, in violation of 18 U.S.C. § 371.   Count Two charged all five defendants with honest services wire fraud conspiracy during the same timeframe, in violation of 18 U.S.C. § 1349.   Count Three charged Menendez and Nadine Menendez with conspiracy to

---

[1] Citations to "Dkt." refer to docket entries in this case; citations to the "Government's S2 memorandum" or "Gov't S2 Mem." refer to the Government's omnibus memorandum of law in opposition to the defendants' motions directed to the S2 Indictment (Dkt. 180); citations to "Menendez S4 Mot." refer to the memorandum of law in support of Menendez's motion (Dkt. 263); citations to "N. Menendez S4 Mot." refer to the letter in support of Nadine Menendez's motion (Dkt. 262); citations to "Hana S4 Mot." refer to the memorandum of law in support of Hana's motion (Dkt. 261); and citations to "Daibes S4 Mot." refer to the letter in support of Daibes's motion (Dkt. 259).

[2] For clarity, the S2 Indictment, the Government's prior omnibus memorandum of law, the S4 Indictment, and this memorandum of law refer to Robert Menendez as "Menendez" and to Nadine Menendez by her first and last name.

commit extortion under color of official right during the same timeframe, in violation of 18 U.S.C. § 1951. Count Four charged Menendez, Nadine Menendez, and Hana with conspiracy for a public official to act as a foreign agent, between approximately 2018 and 2022, in violation of 18 U.S.C. § 371.

On or about March 1, 2024, Uribe pleaded guilty to a superseding information, No. S3 23 Cr. 490, charging him with the same counts in the S2 Indictment, as well as additional charges, pursuant to a cooperation agreement.

On or about March 5, 2024, a grand jury in the Southern District of New York returned an eighteen-count Superseding Indictment, No. S4 23 Cr. 490 (SHS) (referred to herein as the "S4 Indictment" or "Indictment"), charging Menendez, Nadine Menendez, Hana, and Daibes with multiple crimes relating to bribery, honest services wire fraud, extortion, and obstruction of justice, and conspiracies to commit one or more of the same offenses. The S4 Indictment contains only three new factual allegations that were not included in the S2 Indictment, which are related to obstruction of justice (*see* Indictment ¶¶ 69, 72, 73).

On or about March 14, 2024, the Court denied Menendez's motions to dismiss based on the Speech or Debate Clause or the separation of powers. *United States v. Menendez*, No. 23 Cr. 490 (SHS), 2024 WL 1120182 (S.D.N.Y. Mar. 14, 2024).

Trial is scheduled to commence on May 6, 2024.

### B.    Attempts to Cover Up Bribe Payments

The Government's S2 memorandum provides an overview of the charged scheme, including attempts by Menendez and Nadine Menendez to seek to cover up the bribery scheme by repaying Hana and Uribe certain of the bribe payments that they had received, and explains how, in so doing, Menendez and Nadine Menendez wrote checks falsely describing these bribe

2

payments as loans.  (*See* Gov't S2 Mem. 2-12.)  The Indictment includes these allegations, and also alleges that following service of subpoenas issued by a federal grand jury sitting in the Southern District of New York on Menendez, Nadine Menendez, Uribe, and IS EG Halal, Nadine Menendez met with Uribe.  (Indictment ¶ 69.)  At that meeting, in substance and in part, Nadine Menendez asked Uribe what he would say if law enforcement asked him about the payments he had made for the Mercedes-Benz Convertible, Uribe responded that he would say those payments had been a loan, and Nadine Menendez said that sounded good.  (*Id.*)  The Indictment also details how both Menendez and Nadine Menendez caused their counsel to meet with the United States Attorney's Office for the Southern District of New York in Manhattan and to state falsely that the mortgage company payment and the car payments were loans.  (*Id.* ¶¶ 72-73.)

## DISCUSSION

### I.   THE DEFENDANTS ARE NOT ENTITLED TO DISMISSAL OF THE BRIBERY AND EXTORTION CHARGES

Apart from asserting without elaboration that the "S4 Indictment exacerbates the fundamental flaws noted in the S2 Indictment that merit the relief [previously] sought" by him (Menendez S4 Mot. 1), Menendez offers no new argument in support of a conclusion that the charges against him are not properly pled or fail to state offenses.  Nadine Menendez and Daibes similarly offer no new argument.  (*See* N. Menendez S4 Mot. 1 (stating she joins new motions, including those of Menendez, which were not yet filed, to the extent that they "may be applicable"); Daibes S4 Mot. 1 (same, and also "renew[ing]" prior motions to dismiss, without elaboration).)

Only Hana argues why the bribery and extortion charges against him allegedly should be dismissed.  (Hana S4 Mot. 3-12.)  However, his contentions are the same as those he raised

previously—and they accordingly fail for the same reasons set forth in the Government's S2 memorandum, which the Government briefly summarizes herein.

*First*, there can be no serious dispute that the Indictment comports with settled law concerning what an indictment must allege, *i.e.*, it "need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." *United States v. Alfonso*, 143 F.3d 772, 776 (2d Cir. 1998); (*see* Gov't S2 Mem. 17-19, 55-56, 63, 72-73); *see also, e.g.*, *United States v. Benjamin*, 95 F.4th 60, 66-67, 73-74 (2d Cir. 2024). Like the S2 Indictment, the S4 Indictment amply satisfies that legal standard.

*Second*, whether charged in conspiracy counts or substantive counts, provided the elements are otherwise met, a defendant is guilty of participating in a bribery or extortion under color of official right scheme irrespective of whether the public official took any action in exchange for the bribe or even intended contemporaneously to do so. *See, e.g.*, *Evans v. United States*, 504 U.S. 255, 268 (1992); *United States v. Brewster*, 408 U.S. 501, 526 (1972); (*see* Gov't S2 Mem. 53-54).

*Third*, *McDonnell* was a decision about jury instructions, not the facial sufficiency of an indictment. *See, e.g.*, *United States v. Lee*, 919 F.3d 340, 353 (6th Cir. 2019); (*see* Gov't S2 Mem. 33-34).

*Fourth*, although not legally required, the Indictment's detailed allegations describe multiple "official acts" within the meaning described in *McDonnell*. (*See* Gov't S2 Mem. 55-73.)

*Fifth*, a bribery scheme can involve "this for these or these for these, not just this for that." *United States v. Silver*, 948 F.3d 538, 554 (2d Cir. 2020); (*see* Gov't S2 Mem. 73-75).

In sum, the defendants' motions to dismiss the bribery and extortion charges contained in Counts One through Three and Five through Fourteen of the Indictment fail for multiple reasons.

4

## II.   THE DEFENDANTS ARE NOT ENTITLED TO DISMISSAL OF THE FOREIGN AGENT CONSPIRACY CHARGE

Hana (joined by Nadine Menendez) repeats his prior claim that Count Fifteen, formerly Count Four, charging Menendez, Nadine Menendez, and Hana with conspiring for Menendez to act as a foreign agent, must be dismissed.  (Hana S4 Mot. 12-15; N. Menendez Mot. 1.)  To the extent that this claim rests on the same arguments Hana raised previously, it fails for reasons the Government previously set forth.  (*See* Gov't S2 Mem. 83-88.)  Hana appears to raise only a single partially new argument, namely, that because the Indictment does not specifically identify the "foreign principal," it must be dismissed.  (Hana S4 Mot. 14-15.)  This argument is meritless.

Hana offers no legal basis for a conclusion that a charge, tracking the statute, should be dismissed because it does not name one or more uncharged individuals who played a role in the offense, and the Government is aware of none.  Moreover, Hana's argument is especially forceless in the context of Count Fifteen, because the charged offense is a conspiracy and thus the agreement alone is the crime.  At bottom, Hana's argument is not really directed to the facial sufficiency of the Indictment, but rather, as he appears to acknowledge (*see* Hana S4 Mot. 15), is intended to bolster his prior request for a bill of particulars.  He is not entitled to a bill of particulars—and the identities of the pertinent foreign principals are apparent on both the face of the Indictment and in discovery, including Hana's own communications.  (*See* Gov't S2 Mem. 169.)  But even if Hana were so entitled, dismissal of the Indictment would not follow.

## III.   THE INDICTMENT IS NOT DUPLICITOUS

To the extent that Menendez, Hana, and Daibes, joined by Nadine Menendez, renew their claims that the conspiracy counts in the Indictment are duplicitous (*see* Menendez S4 Mot. 7; N. Menendez S4 Mot. 1; Hana S4 Mot. 15-16, 18 n.7; Daibes S4 Mot. 1), those claims should be

denied for the reasons the Government previously set forth.  (*See* Gov't S2 Mem. 88-101.)  Menendez, Hana, and Daibes also collectively offer four additional arguments.  Each is meritless.

*First*, Menendez and Hana argue that because the Indictment's conspiracy counts encompass multiple goals or aspects, but its substantive counts are comparatively more narrow or targeted, the conspiracy counts must be duplicitous.  (*See* Menendez S4 Mot. 7-8; Hana S4 Mot. 16.)  Neither cites a case or other authority in support of that proposition.  And the law has long—and squarely—been to the contrary.  *See, e.g.*, *Braverman v. United States*, 317 U.S. 49, 54 (1942) ("The allegation in a single count of a conspiracy to commit several crimes is not duplicitous, for 'The conspiracy is the crime, and that is one, however diverse its objects.'" (quoting *Frohwerk v. United States*, 249 U.S. 204, 210 (1919))); *United States v. Broce*, 488 U.S. 563, 570-71 (1989) ("A single agreement to commit several crimes constitutes one conspiracy."); *United States v. Pressley*, 469 F.3d 63, 65 (2d Cir. 2006) ("Simply put, a conspiracy is a single violation.  It is an illegal agreement that may, and often does, encompass an array of substantive illegal acts carried out in furtherance of the overall scheme." (emphasis omitted)); (*see also* Gov't S2 Mem. 88-90).

For this fundamental reason, the Indictment's substantive counts do not somehow "prove[]" that the conspiracy counts are duplicitous (Menendez Mot. 8).  Indeed, the substantive counts have no bearing on the analysis of whether the conspiracy counts are duplicitous.  *See, e.g.*, *United States v. Percoco*, No. 16 Cr. 776 (VEC), 2017 WL 6314146, at *12 (S.D.N.Y. Dec. 11, 2017) (denying duplicity challenge in corruption case; "The fact that this conspiracy led to multiple separate wire fraud charges is irrelevant to assessing whether the conspiracy count is duplicitous."); *see also id.* at *11 (rejecting claim "that the conspiracy charge must be duplicitous because the Indictment otherwise charges separate substantive counts for [two different sets of] allegations"); *United States v. Rigas*, 281 F. Supp. 2d 660, 665 (S.D.N.Y. 2003) (rejecting duplicity

challenge in case with one conspiracy count and 22 counts of securities fraud, wire fraud, and bank fraud; "Although not all Defendants are individually implicated in every fraudulent act, the identification of various overt acts and different substantive crimes involving only some Defendants does not automatically transform a single overarching scheme into a series of separate conspiracies.").

For the reasons previously set forth, with highly interrelated and overlapping participants, goals, and conduct, the conspiracy counts are not duplicitous. (*See* Gov't S2 Mem. 90-96.) In any event, there is no justification for dismissal or any other pretrial relief, because the defendants will suffer no unfair prejudice from any even arguable duplicity, and the need for a unanimous verdict (*see* Menendez S4 Mot. 8; Hana S4 Mot. 17-18) can and should be addressed through jury instructions, not dismissal. *See, e.g.*, *United States v. Rajaratnam*, No. 13 Cr. 211 (NRB), 2014 WL 1554078, at *5 (S.D.N.Y. Apr. 17, 2014) (denying duplicity challenge to conspiracy charge in case with six substantive charges; explaining that the defendant's argument "assumes that no single conspiracy existed," contrary to the indictment, and that if a risk of prejudice from the single conspiracy charge "does arise, it can be addressed through a jury charge on multiple conspiracies and, if warranted, by other charges and instructions as well"); (*see also* Gov't S2 Mem. 96).

*Second*, Hana suggests that because this Court used headings and otherwise organized its analysis into separate sections in its Opinion and Order denying Menendez's Speech or Debate and separation of powers claims, the conspiracy counts are duplicitous. (Hana S4 Mot. 19-20.) This argument is frivolous. This Court's use of headings and organizational structure to focus on different aspects of the Indictment's allegations to issue an Opinion and Order that was more readily understandable for both the litigants and public cannot serve as a substantive basis for the drastic relief sought. Moreover, Hana ignores the highly relevant fact that the Court was analyzing

those allegations for an entirely different purpose. (*See* Gov't S2 Mem. 97-98 ("[T]he Government should not be penalized—let alone with *dismissal*—for attempting to impose organizational clarity on a necessarily complex and interrelated set of facts." (emphasis in original)) (responding to similar argument about the S2 Indictment's headings).)

*Third*, Hana argues that separate from any alleged duplicity of the conspiracy counts, two of the substantive counts—Counts Six and Seven—are themselves duplicitous. (Hana S4 Mot. 21-23.) According to Hana, this is so because these counts allegedly each "lump together, in one single charge, two distinct sets of facts involving two different bribes," namely, those involving IS EG Halal's monopoly and those involving other matters connected to Egypt. (*Id.* at 22.) But as Hana acknowledges on the same page of his brief, the Indictment alleges that the so-called "different set of facts" and so-called "different bribes" were part of one scheme to bribe Menendez in exchange for actions that, among other things, "'benefitted the Government of Egypt.'" (*Id.* (quoting Indictment ¶¶ 91, 93).) Indeed, the Indictment alleges that payments through IS EG Halal were promised in exchange for Menendez's promises of actions on foreign military sales and financing. (*See* Indictment ¶ 19 ("In exchange for MENENDEZ and NADINE MENENDEZ's promise that MENENDEZ would, among other things, use his power and authority to facilitate such sales and financing to Egypt, HANA promised, among other things, to put NADINE MENENDEZ on the payroll of his company in a low-or-no-show job."); *id.* ¶ 22 ("WAEL HANA, a/k/a 'Will Hana,' the defendant, repeatedly promised NADINE MENENDEZ, a/k/a 'Nadine Arslanian,' the defendant, payments, including through a low-or-no-show job, from IS EG Halal Certified, Inc.").) Menendez's actions to protect IS EG Halal's lucrative monopoly, therefore, served to facilitate his and Nadine Menendez's receipt of the promised bribe payments from that company. In other words, Menendez's conduct towards the USDA helped to ensure that Hana had

a lucrative company that could pay bribes to Menendez and Nadine Menendez that had been promised in exchange for other actions that benefited the Government of Egypt, including with respect to military aid. There could hardly be a clearer example of interdependence and intertwining than when one set of official acts is used as a means of allowing a bribe to be paid for another.

Similarly, the Indictment outlines the relationship between the monopoly to Hana, *which was granted by the Government of Egypt* following Menendez's promises of assistance on military aid and sought to be protected through bribery, and other corrupt actions, of which Hana was an integral part, also connected to or benefiting the Government of Egypt. (*See* Indictment ¶¶ 2-3, 24-29; Gov't S2 Mem. 93-94 (describing interrelatedness of these allegations).) Hana is not entitled to dismissal on the ground that he disagrees with these allegations or that he would prefer to conceptualize them as falling into two sets of conduct. *Cf. United States v. Daugerdas*, 837 F.3d 212, 226 (2d Cir. 2016) ("The fact that the various methods of committing a single offense can be divided into two separate categories—those that relate to Daugerdas's work on behalf of his clients and those that relate to Daugerdas's personal use of the shelters—does not create duplicity."). In any event, there is again no justification for dismissal or any other pretrial relief, because Hana will suffer no unfair prejudice from any even arguable duplicity, and the need for a unanimous verdict (*see* Hana S4 Mot. 23) can and should be addressed through jury instructions, not dismissal. (*See* Gov't S2 Mem. 96.)

*Fourth*, Daibes makes a similar claim about Counts Twelve and Thirteen, asserting that these two substantive counts are duplicitous because they rest on allegations about both his federal criminal case in the District of New Jersey and Qatar. (Daibes S4 Mot. 1-2.) This claim is devoid of any analysis, failing even to cite the Indictment, much less to engage with the various ways in

9

which the Indictment demonstrates interrelatedness in time, persons, and conduct. (*See* Indictment ¶¶ 45-53, 55-66; Gov't S2 Mem. 94-95 (explaining that with respect to Menendez's agreement and efforts to disrupt the federal prosecution of Daibes and Daibes's expectation that Menendez take actions for the benefit of Qatar, those requests for acts were, among other things, intertwined, including because same things of value were provided in exchange for both requested acts).) This interrelatedness is more than sufficient to survive a motion to dismiss. *See, e.g.*, *United States v. Olmeda*, 461 F.3d 271, 281 (2d Cir. 2006) ("this court has long held that acts that could be charged as separate counts of an indictment may instead be charged in a single count if those acts could be characterized as part of a single continuing scheme" (internal quotation marks omitted)). In any event, there is again no justification for dismissal or any other pretrial relief, because Daibes will suffer no unfair prejudice from any even arguable duplicity, and the need for a unanimous verdict (*see* Daibes S4 Mot. 2) can and should be addressed through jury instructions, not dismissal. (*See* Gov't S2 Mem. 96.)

## IV.    HANA'S MULTIPLICITY CHALLENGE IS PREMATURE AND MERITLESS

Hana repeats his claim that—if they are not duplicitous—the conspiracies charging him are multiplicitous.[3] (Hana S4 Mot. 20.) He offers no new arguments, and his claim is both premature and meritless, as explained previously. (*See* Gov't S2 Mem. 101-06.)

---

[3] Nadine Menendez and Daibes join in this claim (N. Menendez S4 Mot. 1; Daibes S4 Mot. 1), although Daibes is not charged in Count Fifteen, and therefore lacks standing to challenge it.

V.   **THE DEFENDANTS' MOTIONS FOR SEVERANCE ARE MERITLESS**

To the extent that Menendez and Nadine Menendez renew their claims that severance is appropriate (Menendez S4 Mot. 8-10; N. Menendez S4 Mot. 1), those claims should be denied for the reasons the Government previously set forth.  (*See* Gov't S2 Mem. 106-28.)[4]

Menendez alone raises one additional argument.  He contends that the new obstruction of justice charges in Counts Seventeen and Eighteen support severance, because they allegedly "introduce new privilege issues" and purportedly "rely upon the allegation that *Nadine* Menendez (but not Senator Menendez) and Jose Uribe conspired to falsely convey to law enforcement that car payments that Uribe made on Nadine's behalf were *loans* for which Uribe expected repayment."  (Menendez S4 Mot. 9 (emphases in original).)  Neither contention has merit.

*First*, to the extent any "new privilege issues" may exist, all of the reasons typically favoring joint trials support the efficient resolution of them in a single trial.  (*See* Gov't S2 Mem. 114-15.)  Indeed, the additional obstruction charges against both Menendez and Nadine Menendez, and any attendant legal issues that may be applicable to both defendants, only underscore the interests in a joint trial over this additional joint conduct.  (*Id.*)  Moreover, any privilege issues applicable to the obstruction charges are expected to be straightforward, since the crime-fraud exception applies to otherwise privileged communications that furthered the obstruction scheme. (*See id.* at 120.)  Thus, even if Nadine Menendez "may" try to assert the spousal-communications privilege over any potential testimony Menendez might give "if" he were testify, as Menendez

---

[4] Daibes originally moved for severance, but does not assert that he is re-raising that argument in light of the S4 Indictment.  Even if he did, his argument should be denied for the reasons the Government previously explained.  (Gov't S2 Mem. 128-30.)

hypothesizes (Menendez S4 Mot. 9), such communications would not be privileged, as the Government previously explained.  (*See* Gov't S2 Mem. 120.)

*Second*, Menendez's reframing of the obstruction scheme—as a conspiracy between Nadine Menendez and Uribe (Menendez S4 Mot. 9)—is irreconcilable with the Indictment.  The Indictment specifically alleges that Menendez was a member of the conspiracy, and that he took actions in furtherance of that conspiracy.  (*See* Indictment ¶¶ 70-73.)  Separate trials for Menendez and Nadine Menendez, where they are charged with multiple forms of joint conduct spanning years, would lead to vast inefficiencies and unfairness that should be avoided.  *See, e.g.*, *Zafiro v. United States*, 506 U.S. 534, 537 (1993); *Richardson v. Marsh*, 481 U.S. 200, 210 (1987).  Indeed, the presumption in favor of joint trials "is particularly strong where, as here, the defendants are alleged to have participated in a common plan or scheme."  *United States v. Salameh*, 152 F.3d 88, 115 (2d Cir. 1998); *see also United States v. Cardascia*, 951 F.2d 474, 482-83 (2d Cir. 1991).

## VI.  THE DEFENDANTS' MOTIONS TO DISMISS FOR ALLEGED LACK OF VENUE SHOULD BE DENIED

Menendez and Hana, joined by Nadine Menendez and Daibes, ask the Court to disregard the Indictment's unequivocal allegation that the offenses were committed in this district and dismiss the Indictment for purported lack of venue.[5]  Rather than granting the defendants, in effect, a form of summary judgment by entertaining their speculation that the Government will not be able to prove even by a preponderance that the offenses were committed in or otherwise are properly venued in this district, the Court should deny this motion.

Menendez and Hana argue that venue is not sufficient as to any of the conspiracy counts previously contained in the S2 Indictment (*i.e.*, Counts One, Two, Three, and Fifteen in the S4

---

[5] Menendez does not move to dismiss Counts Seventeen and Eighteen of the Indictment on venue-related grounds.

Indictment) and claim that alleged insufficiency is not remedied by the new overt acts described in the Indictment.  (Menendez S4 Mot. 1-2 (citing Indictment ¶¶ 78(b), (f)); Hana S4 Mot. 24-27.) As an initial—but dispositive—matter, Menendez and Hana ignore the fact that the Indictment expressly alleges that each of the crimes (*i.e.*, the conspiracy counts previously contained in the S2 Indictment as well as the new counts in the S4 Indictment) occurred in the Southern District of New York.  That allegation alone defeats their motion.  (*See* Gov't S2 Mem. 130-32, 135.)

Even if the Court were to look beyond these allegations, which it need not, the alleged overt acts that occurred in this district are more than sufficient to establish venue, as discussed in the Government's S2 memorandum.  (*See id.* at 136-44.)  It is well-settled that venue is proper in any district in which an overt act in furtherance of a conspiracy was committed and, as previously described in the Government's S2 memorandum, the overt acts set forth in the Indictment show that venue is entirely appropriate in this district, where, among other things, Menendez and Nadine Menendez met with Hana to schedule a time to hear a request for official acts (Indictment ¶ 78(a)); Nadine Menendez used a cell tower to schedule a meeting between Uribe, Menendez, and Nadine Menendez as part of an effort to advise and pressure a New Jersey official to disrupt a criminal investigation (*id.* ¶ 78(d)); Menendez, Hana, and Daibes met with one of the Egyptian officials who was involved in requesting official acts during the bribe scheme (*id.* ¶ 78(e)); Daibes provided Menendez and Nadine Menendez transportation from John F. Kennedy International Airport following their trip to Egypt and Qatar (*id.* ¶ 78(f)); and Nadine Menendez converted gold bars that had been surreptitiously provided by Daibes to cash so that she could enjoy their economic benefit (*id.* ¶ 78(g)).  These bases for venue further show the insufficiency of the defendants' motions.  (*See* Gov't S2 Mem. 136-44.)

13

While the defendants' motions to dismiss the S2 Indictment for lack of venue were already fatally deficient, the additional allegations in the S4 Indictment further compel the denial of their motions. The S4 Indictment adds the allegation that a key bribe payment—a payment on the Mercedes-Benz Convertible for the benefit of Menendez and Nadine Menendez—was made from this district by one of Uribe's associates. (*See* Indictment ¶¶ 78 (b), (c).) The allegation of this classic and obvious basis for venue is, to Menendez, "nowhere close to sufficient" for venue because, in his view, this does not allege that "anyone *did anything* in the SDNY." (Menendez S4 Mot. 1 (emphasis in original)). This conclusory contention is incorrect, as the Indictment alleges that Uribe caused someone (*i.e.*, Associate-2) to do something in the district (*i.e.*, to make a bribe payment), which was an essential part of the bribery offenses.

The defendants' claims that this payment was unforeseeable to them (Menendez S4 Mot. 1-2; Hana S4 Mot. 27), fare no better. As the Government previously explained, it expects to prove at trial that acts of this sort were reasonably foreseeable to all of the defendants based on, among other things, the nature of the scheme and the proximity of the districts. (*See* Gov't S2 Mem. 142-43.) But, in any event, it is for the jury in the first instance—not for the Court before a single piece of evidence has been offered—to determine if the payment of a bribe from this district, along with other actions in this district, were reasonably foreseeable to the defendants. (*See id.*)

Menendez and Daibes also move to dismiss Count Four of the Indictment—which charges Menendez, Nadine Menendez, and Daibes with conspiring to obstruct justice based on their conduct attempting to disrupt a prosecution of Daibes by the U.S. Attorney's Office for the District of New Jersey—on venue grounds. Menendez argues that the Indictment makes no effort to connect the overt acts listed in Count Four—namely, the ride home from John F. Kennedy International Airport through this district that Daibes arranged for Menendez and Nadine

Menendez and the sale in this district of gold bars that had been provided by Daibes to Nadine Menendez—to the furtherance of the obstruction of the prosecution of Daibes. (Menendez S4 Mot. 2.) Not so. The Indictment alleges that the series of things of value that Menendez and Nadine Menendez received—including those that were provided in this district such as transportation, or provided surreptitiously and liquidated in this district to allow the Menendezes to enjoy their economic benefits—were intended to motivate Menendez to undertake the obstructive acts, and thus were at a minimum acts in furtherance of the obstruction scheme.[6]

Daibes's argument that Count Four is "more properly prosecuted in the District of New Jersey" (Daibes S4 Mot. 2) is baseless. Daibes's citation to *United States v. Reed*, 773 F.2d 477 (2d Cir. 1985), is entirely backwards. In *Reed*, the Second Circuit held that "venue under § 1503 is proper in the district in which the proceeding sought to be obstructed is pending even though the would-be obstructive acts took place elsewhere." *Id.* at 486. In relying on *Reed*, Daibes confuses sufficient with necessary. The Second Circuit did not hold that venue was limited to the district in which the proceeding sought to be obstructed is pending. Instead, it held that venue could be equally proper where the proceeding was pending. *See id.* at 481 (stating that "often . . . sites other than where the acts occurred [have] *equal standing* so far as venue is concerned" (emphasis added)); *see also id.* (determining alternative venues by taking into account factors other than the *locus delicti*: "the elements and nature of the crime, the locus of the effect of the criminal conduct, and the suitability of each district for accurate factfinding"). This is entirely consistent with Section 1512(i) of Title 18, which provides that a "prosecution under . . . section 1503 may

_____

[6] The Indictment does not allege a substantive charge based on the endeavor to obstruct the prosecution of Daibes in the District of New Jersey. As a result, only the flexible standard applicable to venue for a conspiracy charge is relevant to the venue analysis.

be brought in the district in which the official proceeding (whether or not pending or about to be instituted) was intended to be affected or in the district in which the conduct constituting the alleged offense occurred." Daibes does not cite this statute, much less explain on what basis this Court should ignore its plain language.

Menendez and Hana also argue that the Indictment fails to sufficiently allege venue for certain substantive counts of the Indictment (*i.e.*, Counts Five, Seven through Eleven, Thirteen, Fourteen, and Sixteen as to Menendez and Counts Six, Seven, and Nine as to Hana). (Menendez S4 Mot. 2-6; Hana S4 Mot. 28-31.) The defendants' challenge to venue is fatally premature. Just as with the conspiracy charges, the Indictment alleges that each offense occurred in the Southern District of New York, compelling the denial of the motions to dismiss. (*See* Gov't S2 Mem. 130-32, 135.) "[W]hether there is sufficient evidence to support venue in this District is appropriately left for trial." *United States v. Chalmers*, 474 F. Supp. 2d 555, 575 (S.D.N.Y. 2007).

"When a federal statute defining an offense does not specify how to determine where the crime was committed, '[t]he *locus delicti* must be determined from the nature of the crime alleged and the location of the act or acts constituting it.'" *United States v. Tzolov*, 642 F.3d 314, 318 (2d Cir. 2011) (internal quotation marks and citations omitted). "Venue is proper only where the acts constituting the offense—the crime's 'essential conduct elements'—took place." *Id.* (citation omitted). "[V]enue is not proper in a district in which the only acts performed by the defendant were preparatory to the offense and not part of the offense." *Id.* at 319 (citation omitted).

Here, the acts that took place in this district that are described in the Indictment involved, among other things, the provision of things of value in or from the district and an exchange of promises and official acts in the district. For example, the June 30, 2018 dinner described in the Indictment (*see* Indictment ¶¶ 78(a), 110(a)) and described in the Government's S2 memorandum

(*see* Gov't S2 Mem. 137-38) included an agreement between the bribe recipient and the bribe payor on a date when the bribe recipient would hear a request for official acts. Direct contact between a bribe payor and bribe recipient for the purpose of requesting an official act is "essential" conduct that satisfies the applicable standard, *Tzolov*, 642 F.3d at 318, and the provision of the meal itself—though hardly the most valuable of the things of value exchanged in the course of the scheme—is another essential act in a bribery scheme. *See, e.g.*, *United States v. Calk*, 87 F.4th 164, 182 (2d Cir. 2023) (noting that the phrase "anything of value" in bribery and related statutes includes intangibles as well as tangibles, citing cases); (*see also* Indictment ¶¶ 89, 91, 93, 95, 97, 99 (alleging meals as things of value in Counts Five through Eight).) Similarly, with respect to the substantive charges regarding the provision of the Mercedes-Benz Convertible, the bribe payment towards that car being made from this district was obviously an essential act in those bribery counts. (*See id.* ¶¶ 78(c), (d); *see also, e.g.*, *id.* ¶¶ 97, 99 (alleging "payments toward the Mercedes-Benz Convertible" as things of value in Counts Nine and Ten).) By the same token, for example, Daibes's provision of gold as a concealable—but illiquid—asset that Menendez and Nadine Menendez could realize by selling it in this district was also essential to the relevant bribery offenses, along with the value represented by Daibes's provision of transportation through this district. (*See id.* ¶¶ 78(f), (g)); *Calk*, 87 F.4th at 182.

The in-person meetings in this district are similarly fatal to Menendez's motion to dismiss Count Sixteen, the substantive foreign agent charge. Such in-person meetings, whether a meeting between Menendez, as a domestic public official, and a representative of the Egyptian government, as a foreign principal (*see, e.g.*, Indictment ¶ 110(b)), or a meeting to schedule and confirm Menendez's willingness to hold such a meeting (*see, e.g.*, *id.* ¶ 110(a)), are similarly essential to the substantive foreign agent charge. (*See id.* ¶ 112 (describing Menendez's agreement to act as

17

agent of the Government of Egypt and Egyptian officials).)  This direct and in-person contact between the two sides of a principal-agent relationship bears no resemblance to merely preparatory acts such as, in *Tzolov*, boarding a plane without more.

## VII.    MENENDEZ'S MOTION FOR A BILL OF PARTICULARS SHOULD BE DENIED

Finally, Menendez again argues that he is entitled to a bill of particulars as to the basis for venue for each count of the Indictment.  (Menendez S4 Mot. 6-7.)  The instant motion seeks essentially the same type of details as to venue that Menendez sought with regard to the S2 Indictment.  For the same reasons the Government previously set forth, Menendez is not entitled to a bill of particulars on venue under well-established law.  (*See* Gov't S2 Mem. 157-73.)[7]  As an initial matter, and as is entirely proper, the Government "may present additional evidence at trial to establish venue in this District."  *United States v. Griffith*, No. 20 Cr. 15 (PKC), 2020 WL 4369650, at *3 (S.D.N.Y. July 29, 2020).  Moreover, the details contained in the 66-page Indictment, the extensive electronically-searchable discovery productions accompanied by a detailed index, and various pretrial filings, including the Government's S2 memorandum, more than adequately inform Menendez of the bases for venue in this district and "render a bill of particulars unnecessary for [him] to prepare for trial."  *United States v. Murgio*, 209 F. Supp. 3d 698, 721 (S.D.N.Y. 2016) (denying request for a bill of particulars with respect to venue where defendant's arguments went to the sufficiency of the Government's evidence—which are "questions reserved for trial"—and finding that a bill of particulars would be unnecessary for the defendant to prepare for trial); *Griffith*, 2020 WL 4369650, at *3 (denying defendant's request for

---

[7] Neither of the cases cited by Menendez in support of his request involved a bill of particulars on the venue.  (*See* Menendez S4 Mot. 7 (citing *United States v. Reale*, No. S4 96 Cr. 1069 (DAB), 1997 WL 580778, at *14 (S.D.N.Y. Sept. 17, 1997); *United States v. Dorfman*, 335 F. Supp. 675, 680 (S.D.N.Y. 1971).)

a bill of particulars as it "will not alter the facial sufficiency of the indictment's allegation of venue, which is enough to survive the defendant's motion.").[8]

## <u>CONCLUSION</u>

For the reasons previously set forth and set forth above, the defendants' pretrial motions should be denied.

Dated: New York, New York
April 1, 2024

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By:   <u>s/ Daniel C. Richenthal</u>
Eli J. Mark
Daniel C. Richenthal
Paul M. Monteleoni
Lara Pomerantz
Assistant United States Attorneys
(212) 637-2431/2109/2219/2343

---

[8] Hana also repeats his assertion that a bill of particulars remains necessary in connection with Counts One, Two, Six, Seven, and Nine for the reasons set forth in his prior briefing. (Hana S4 Mot. 2-3.) For the reasons previously set forth (*see* Gov't S2 Mem. 157-73), the Court should deny Hana's motion.