UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
:
UNITED STATES OF AMERICA          :
:
       -*v.*-                          :   S4 23 Cr. 490 (SHS)
:
ROBERT MENENDEZ,                  :
NADINE MENENDEZ,                  :
    a/k/a "Nadine Arslanian,"     :
WAEL HANA,                        :
    a/k/a "Will Hana," and        :
FRED DAIBES,                      :
:
              Defendants.   :
:
-------------------------------------------------------------x

# THE GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT ROBERT MENENDEZ'S REQUEST FOR A JUROR QUESTIONNAIRE

                        DAMIAN WILLIAMS
                        United States Attorney

Eli J. Mark
Daniel C. Richenthal
Paul M. Monteleoni
Lara Pomerantz
Catherine Ghosh
Assistant United States Attorneys
- Of Counsel -

Defendant Robert Menendez requests that the Court provide a juror questionnaire to prospective jurors in this case, claiming that "[i]n light of the intense pre-trial publicity surrounding this case," a questionnaire will help the Court and the parties "screen[] potential jurors as efficiently as possible" and "likely . . . elicit more accurate responses." (Dkt. 294 at 1.) Menendez also requests that the Court order the parties to submit a joint proposed questionnaire. (*Id.* at 3.) At the April 11, 2024 conference, the Court indicated that it is not inclined to use a juror questionnaire.[1] The Government agrees that a juror questionnaire should not be used in this case. The Court should exercise its sound discretion to deny Menendez's request. A juror questionnaire is neither warranted nor appropriate here and would only needlessly prolong and delay the jury selection process and lead to inefficiencies in pretrial preparation. The Court can and will take all appropriate measures to safeguard the defendants' right to a fair and impartial jury by, among other things, conducting a proper *voir dire* and providing appropriate jury instructions. No more is required.

A. **Applicable Law**

"[T]he obligation to impanel an impartial jury lies in the first instance with the trial judge." *Rosales-Lopez v. United States*, 451 U.S. 182, 189 (1981). It is well-established that because federal judges "must rely largely on [their] immediate perceptions" to impanel an impartial jury, district courts "have been accorded ample discretion in determining how best to conduct the *voir dire*." *Id.* (citing cases); *United States v. Harding*, 273 F. Supp. 2d 411, 429 (S.D.N.Y. 2003)

---

[1] At the same conference, the Court also inquired regarding the number of alternate jurors that should be empaneled. Based on the Government's recent experiences, including a trial that necessitated a multi-week, mid-trial continuance in light of juror illness and unexpected unavailability, *see United States v. Ellison and Nunez*, No. 21 Cr. 673 (ALC) (S.D.N.Y. 2023) (Dkts. 340, 367), the Government requests that the Court empanel no fewer than six alternate jurors.

(same); *see also United States v. Quinones*, 511 F.3d 289, 299 (2d Cir. 2007). Accordingly, "[w]hether to use a jury questionnaire is within the discretion of the Court." *United States v. Tomero*, 486 F. Supp. 2d 320, 324-25 (S.D.N.Y. 2007) (citing cases); *see also, e.g.*, *United States v. Treacy*, 639 F.3d 32, 47 (2d Cir. 2011) (court did not abuse discretion in denying request for juror questionnaire); *United States v. Salameh*, 152 F.3d 88, 120-21 (2d Cir. 1998) (same). The Second Circuit thus "will not interfere with the manner in which the district court has chosen to conduct voir dire unless an abuse of discretion is 'clear.'" *Treacy*, 639 F.3d at 46; *see also id.* ("Although we have approved the use of questionnaires as one of many tools available for voir dire, we have expressly declined to hold that district judges are ever obligated to make use of this procedure in selecting juries." (internal quotations and citation omitted)).

    B. Discussion

A juror questionnaire in this case is neither warranted nor necessary, would be cumbersome and inefficient, and would materially hinder jury selection. The defendants' right to a fair trial and to a fair jury "will be protected adequately even without use of a jury questionnaire" through a proper *voir dire* and jury instructions. *Tomero*, 486 F. Supp. 2d at 325. The Court accordingly should exercise its sound discretion to deny Menendez's request for a juror questionnaire.

*First*, a juror questionnaire would be cumbersome and inefficient. It would prolong jury selection and lead to an undue waste of judicial resources that is neither in the interest of the public nor of the prospective jurors. *See, e.g.*, *United States v. Parnas*, No. 19 Cr. 725 (JPO) (S.D.N.Y. Nov. 4, 2021) (Dkt. 275 at 13) (denying defense request for written questionnaire, stating: "I'm not planning to do a written questionnaire in this case. I find that questioning the potential jurors in person is more reliable and efficient. And I will ensure that a fair jury is selected."); *see also Treacy*, 639 F.3d at 36 ("I never give [juror questionnaires], ever. I did it once, and it was the

biggest mistake I ever made."; "The[re are] many problems with questionnaires, but the single biggest problem [ ] is that there is no one in the world who can draft a question that will not have ambiguities that will be, as I learned the one time [I] tried it, that will be picked up on by various prospective jurors.  And thus during the voir dire, a huge amount of time will be spent explaining to a juror why he or she misunderstood the question in the questionnaire or finding out that . . . the way he interpreted it was not the way the lawyers interpreted it." (internal quotations and citation omitted)).

If a juror questionnaire was administered in this case, the Government understands that the process would entail: summoning prospective jurors to the courthouse to read through and complete the juror questionnaire; review of the juror questionnaires by the Court, the defendants and their numerous counsel, and the Government to determine which jurors, if any, should be removed from the venire for cause; and oral *voir dire* (which would likely involve follow-up questions to clarify the answers provided on the questionnaires).  This three-step process would likely take at least several days, if not longer.  An oral *voir dire* would eliminate the first two steps. Jury selection would thus begin with the oral questioning of prospective jurors and the parties could propose juror strikes the same day.  Such a process would lead to the same outcome: the selection of a fair and impartial jury.

Moreover, Menendez requests that the Court order the parties to submit a joint proposed questionnaire.  (Dkt. 294 at 3.)  This proposal is particularly inefficient because the Government anticipates that the parties would not readily agree on most or all of the content of the questionnaire (as evidenced by the nature of the questions included in the defendants' proposed *voir dire* (*see* Dkt. 287)), leading to additional and unnecessary pretrial litigation, where efficient oral *voir dire* by the Court will more than suffice.

*Second,* the defendants' right to a fair and impartial jury can be adequately—indeed, best—protected through the Court's *voir dire* and jury instructions. Menendez argues that the "concern for accuracy and forthrightness is heightened when potential jurors perceive that their responses may be scrutinized by the press." (Dkt. 294 at 3.) But that concern is not obviated by using a questionnaire. Menendez "has failed to demonstrate that use of a *written* questionnaire is necessary or preferable to a proper *voir dire* conducted by the Court." *United States v. Harding*, 273 F. Supp. 2d 411, 429 (S.D.N.Y. 2003) (emphasis in original). Indeed, there is no basis to conclude that jurors will be more comfortable committing their personal experiences and views to paper, as opposed to sharing them with the Court, including at sidebar. Just the opposite. Instead, it would be preferable for the Court in the first instance and in person to pose questions to potential jurors, at sidebar where warranted. In-person questioning would allow the Court and the parties to directly assess the jurors and their responses—and to ask follow-up questions on the spot. *See Rosales-Lopez*, 451 U.S. at 189. A careful and thoughtful approach to jury selection can certainly be achieved through the Court's proper *voir dire*.

*Third*, the Government does not believe that the circumstances of this case necessitate a juror questionnaire. The customary practice in this district is oral *voir dire* and that process is a time-tested method for selecting a fair and impartial jury. The process works, and it has been used time and again, even in cases that have garnered significant media attention. Written questionnaires have been administered only in rare cases, sometimes with the consent of both parties (as in *United States v. Maxwell*, No. 20 Cr. 330 (AJN)), and in circumstances that are not present here. For example, courts in this district have used written questionnaires as a result of the decision to empanel an anonymous jury, *see, e.g.*, *United States v. Thai*, 29 F.3d 785, 800-01 (2d Cir. 1994) (discussing the use of a written jury questionnaire in selecting an anonymous jury as a

result of, among other things, two defendants having threatened and killed a civilian witness), and in capital cases, *see, e.g.*, *United States v. Quinones*, 511 F.3d 289, 299-300 (2d Cir. 2007) (discussing the use of a written jury questionnaire in a case in which jurors were asked to deliberate, following a penalty phase, as to whether or not to impose the death penalty).

Menendez contends that a juror questionnaire is appropriate because "extensive pretrial publicity may have disqualified a significant portion of the jury pool." (Dkt. 294 at 2.) While this case has garnered significant media attention, there is no basis to conclude that a customary *voir dire* process will fail to properly screen for pretrial bias, as it has in other high-profile cases. *See, e.g.*, *United States v. Hadden*, No. 20 Cr. 468 (RMB) (S.D.N.Y. Jan. 20, 2022) (Dkt. 151 at 1) (denying defense request for juror questionnaire as "not necessary to select a fair and impartial juror in this case" and noting the Court's practice of conducting trials, "including those trials involving pretrial publicity," without using a juror questionnaire); *United States v. Doud*, No. 19 Cr. 285 (GBD) (S.D.N.Y. Jan. 10, 2022) (Dkt. 134 at 86) (a juror questionnaire was inefficient and not "necessary" because the court could "adequately address the issues" and questions for the potential jurors, and concluding that the case was not "so unique[] that it would warrant a jury questionnaire" and that the "nature of the questions in the jury questionnaire are pretty much the questions that I can ask as a group of the jurors and have them indicate whether they have some response and follow-up questions with those jurors."); *United States v. Ray*, No. 20 Cr. 110 (LJL) (S.D.N.Y. Jan. 6, 2022) (Dkt. 290 at 4) (a juror questionnaire would not be "appropriate" and that "the way to ensure a fair and impartial jury for every party is to conduct oral voir dire and not to use a jury questionnaire."); *United States v. Parnas*, No. 19 Cr. 725 (JPO) (S.D.N.Y. Oct. 5, 2021) (Dkt. 275 at 13) (denying defense request for written questionnaire, finding that "questioning the potential jurors in person is more reliable and efficient"); *United States v. Smith*, No. 13 Cr. 297

(KMK) (S.D.N.Y. Dec. 18, 2014) (minute entry denying motion for questionnaire in criminal trial of former State Senate Leader Malcolm Smith). This case is no different.

Accordingly, the Court should exercise its sound discretion to deny Menendez's request for a juror questionnaire. Any speculative benefits to a juror questionnaire would be substantially outweighed by the undeniable and unnecessary costs, including material inefficiencies in pretrial preparation and a prolonged jury selection process.

## **CONCLUSION**

For the foregoing reasons, Menendez's request for a juror questionnaire should be denied.

Dated: New York, New York
April 12, 2024

                                        Respectfully submitted,

                                        DAMIAN WILLIAMS
                                        United States Attorney

By:    s/ Lara Pomerantz
        Eli J. Mark
        Daniel C. Richenthal
        Paul M. Monteleoni
        Lara Pomerantz
        Catherine Ghosh
        Assistant United States Attorneys
        (212) 637-2431/2109/2219/2343/1114