**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

UNITED STATES OF AMERICA,

    -against-

ROBERT MENENDEZ et al.,

        Defendants.

Case No. S4 23 Cr. 490 (SHS)

---

**SENATOR ROBERT MENENDEZ'S MEMORANDUM OF LAW**
**IN OPPOSITION TO THE GOVERNMENT'S MOTIONS *IN LIMINE***
**TO PRECLUDE CERTAIN PROFFERED EXPERT TESTIMONY**


**PAUL HASTINGS LLP**

Adam Fee
Avi Weitzman
Robert D. Luskin
200 Park Avenue
New York, N.Y. 10166
(212) 318-6000


**JONES DAY**

Yaakov M. Roth (*pro hac vice*)
51 Louisiana Avenue N.W.
Washington, D.C. 20001
(202) 879-3939

*Attorneys for Defendant Robert Menendez*

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

ARGUMENT ..................................................................................................................... 2

I.     DR. ROSENBAUM'S TESTIMONY SHOULD BE ADMITTED. ................................ 2

     A.     SENATOR MENENDEZ'S NOTICE WAS PROCEDURALLY SUFFICIENT AND DOES NOT WARRANT EXCLUSION IN ANY EVENT. ............................................................................................ 3

     B.     DR. ROSENBAUM'S TESTIMONY IS ADMISSIBLE UNDER THE FEDERAL RULES OF EVIDENCE. ..................................................... 9

          1.     TESTIMONY BY A FORENSIC PSYCHIATRIST LIKE DR. ROSENBAUM IS ROUTINELY ADMITTED UNDER RULE 702. ...... 9

          2.     DR. ROSENBAUM'S TESTIMONY CANNOT BE EXCLUDED ON HEARSAY GROUNDS ................................................... 13

          3.     DR. ROSENBAUM'S TESTIMONY IS ADMISSIBLE UNDER RULE 403. ............................................................................. 15

II.     MR. RICHARDSON'S TESTIMONY SHOULD BE ADMITTED. ........................... 17

CONCLUSION ................................................................................................................. 22

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Amorgianos v. Nat'l R.R. Passenger Corp.*,
303 F.3d 256 (2d Cir. 2002)...............................................................................11, 12

*Brush v. Old Navy LLC*,
No. 21-cv-155 (CR), 2023 WL 5311434 (D. Vt. Aug. 17, 2023).............................11

*Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*,
310 F.R.D. 69 (S.D.N.Y. 2015) .................................................................................1

*Chevron Corp. v. Donziger*,
974 F. Supp. 2d 362 (S.D.N.Y. 2014)......................................................................21

*Crane v. Kentucky*,
476 U.S. 683 (1986)...................................................................................................1

*Daubert v. Merrell Dow Pharms., Inc.*,
509 U.S. 579 (1993)........................................................................................1, 11, 13

*FHFA v. Nomura Holding Am., Inc.*,
No. 11-cv-6201 (DLC), 2015 WL 353929 (S.D.N.Y. Jan. 28, 2015) .....................11

*Kaiser v. Jayco, Inc.*,
No. 1:20-cv-12903, 2022 WL 856155 (E.D. Mich. Mar. 22, 2022)........................11

*Lingo v. Burle*,
No. 4:06-cv-1392, 2008 WL 1914148 (E.D. Mo. Apr. 25, 2008) ...........................11

*Old Chief v. United States*,
519 U.S. 172 (1997)..................................................................................................17

*Qube Films Ltd. v. Padell*,
No. 13-cv-8405, 2016 WL 888791 (S.D.N.Y. Mar. 1, 2016)..................................12

*Riegel v. Medtronic, Inc.*,
451 F.3d 104 (2d Cir. 2006)........................................................................................7

*Schoenauer v. United States*,
759 F. Supp. 2d 1090 (S.D. Iowa 2010) ..................................................................19

*Schoolcraft v. City of N.Y.*,
No. 10-cv-6005 (RWS), 2015 WL 6444620 (S.D.N.Y. Oct. 22, 2015) ..................10

*Tchatat v. City of New York*,
    315 F.R.D. 441 (S.D.N.Y. 2016) ...........................................................................9

*Trombetta v. Novocin*,
    No. 18-cv-993 (LTS) (SLC), 2023 WL 4118103 (S.D.N.Y. June 22, 2023) ...........8

*United States v. $84,367 in U.S. Currency*,
    No. 15-cv-2600 (JRA), 2018 WL 2928061 (N.D. Ohio June 12, 2018) .................19

*United States v. Becker*,
    502 F.3d 122 (2d Cir. 2007)................................................................................15

*United States v. Belloisi*,
    No. 20-cr-219 (DLI), 2023 WL 2716551 (E.D.N.Y. Mar. 30, 2023), ................6, 7

*United States v. Bhula*,
    645 F. Supp. 3d 1228 (D.N.M. 2022) .............................................................18, 19

*United States v. Brown*,
    No. 3:22-cr-33 (BJL) (CHL), 2023 WL 5002872 (W.D. Ky. Aug. 4, 2023) ...........6

*United States v. Castro*,
    411 F. App'x 415 (2d Cir. 2011) ..........................................................................13

*United States v. Delligatti*,
    No. 15-cr-491 (KBF), 2018 WL 1033242 (S.D.N.Y. Feb. 23, 2018)....................13

*United States v. Dennison*,
    937 F.2d 559 (10th Cir. 1991) ...............................................................................8

*United States v. Diakhoumpa*,
    No. 15-cr-629 (S.D.N.Y. Mar. 9, 2016).................................................................6

*United States v. DiDomenico*,
    985 F.2d 1159 (2d Cir. 1993)..........................................................................14, 15

*United States v. Dingwall*,
    6 F.4th (7th Cir. 2021) .........................................................................................16

*United States v. Dukagjini*,
    326 F.3d 45 (2d Cir. 2003)..........................................................................13, 14, 15

*United States v. Dupre*,
    339 F. Supp. 2d 534 (S.D.N.Y. 2004)...................................................................17

*United States v. Gonzales*,
    21 F.3d 1045 (11th Cir. 1994) .............................................................................19

*United States v. Hillard*,
    542 F. Supp. 487 (S.D.N.Y. 1982) ........................................................................19

*United States v. Kwok*,
    No. 23-cr-118 (AT), 2024 WL 1773143 (S.D.N.Y. Apr. 24, 2024)..........................9

*United States v. Lewis*,
    818 F. App'x 74 (2d Cir. 2020) .............................................................................4

*United States v. Locascio*,
    6 F.3d 924 (2d Cir. 1993)......................................................................................13

*United States v. Lopez*,
    913 F.3d 807 (9th Cir. 2019) ..........................................................................14, 16

*United States v. Marenghi*,
    893 F. Supp. 85 (D. Me. 1995) ..............................................................................8

*United States v. Maxwell*,
    No. 20-cr-330 (AJN), 2021 WL 5283951 (S.D.N.Y. Nov. 11, 2021) ...................12

*United States v. Mejia*,
    545 F.3d 179 (2d Cir. 2008).....................................................................13, 14, 21

*United States v. Menees*,
    No. 21-cr-151 (TDD), 2023 WL 127032 (E.D. Okla. Jan. 6, 2023).......................6

*United States v. Miller*,
    295 F. Supp. 3d 690 (E.D. Va. 2018) ...................................................................18

*United States v. Napout*,
    963 F.3d 163 (2d Cir. 2020).............................................................................10, 12

*United States v. One Gulfstream G-V Jet Aircraft*,
    941 F. Supp. 2d 1 (D.D.C. 2013) .........................................................................21

*United States v. Patel*,
    No. 3:21-cr-220 (VAB), 2023 WL 2643815 (D. Conn. Mar. 27, 2023)..................6

*United States v. Poole*,
    640 F.3d 114 (4th Cir. 2011) ................................................................................19

*United States v. Raniere*,
    384 F. Supp. 3d 282 (E.D.N.Y. 2019) ...................................................................8

*United States v. Raniere*,
    No. 18-cr-204-1 (NGG) (VMS), 2019 WL 2212639 (E.D.N.Y. May 22, 2019)..................6, 7

*United States v. Roberts,*
    86 F.4th 1183 (8th Cir. 2023) ............................................................16

*United States v. Rosario,*
    No. 09-cr-415 (VEC), 2014 WL 6076364 (S.D.N.Y. Nov. 16, 2014)..................................3, 4

*United States v. Smith,*
    987 F.2d 888 (2d Cir. 1993)...........................................................16

*United States v. Taylor,*
    820 F. Supp. 124 (S.D.N.Y. 1993) ....................................................4

*United States v. Torres,*
    No. 20-cr-608 (DLC), 2021 WL 1947503 (S.D.N.Y. May 13, 2021) ....................................13

*Waers v. Embassy Healthcare, Inc. - Embassy Cambridge, LLC,*
    No. 2:20-cv-3713 (MHW), 2022 WL 3704000 (S.D. Ohio Aug. 26, 2022) ..........................10

*White v. Keane,*
    51 F. Supp. 2d 495 (S.D.N.Y. 1999)...................................................16

**Rules**

Fed. R. Crim. P. 12.2 .......................................................................4

Fed. R. Crim. P. 12.2(a) ...................................................................4

Fed. R. Crim. P. 12.2(b)...................................................................4, 5

Fed. R. Crim. P. 16 ................................................................... *passim*

Fed. R. Crim. P. 16(a)(1)(G)(ii)...........................................................3

Fed. R. Crim. P. 16(b)(1)(B)..............................................................8

Fed. R. Crim. P. 16(b)(1)(C)..............................................................5

Fed. R. Crim. P. 16(b)(1)(C)(iv)..........................................................9

Fed. R. Crim. P. 16(b)....................................................................1

Fed. R. Evid. 403 ..................................................................... *passim*

Fed. R. Evid. 702 .........................................................................9

Fed. R. Evid. 703 ......................................................................13, 17

Fed. R. Evid. 803(6).....................................................................21

v

**Other Authorities**

24 Moore's Federal Practice – Criminal Procedure § 612.2.05 (3d ed. 2023) ...............................4

Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders*
   (5th ed. 2013), https://ncbi.nlm.nih.gov/books/
   NBK207191/box/part1_ch3.box16 .......................................................................11

██████████████████████████████
███████████████████...............................................................9

██████████████████████████████
███████████████...............................................................9

████████████████████████████████████.............9

*Diagnostic and Statistical Manual of Mental Disorders*: DSM-5 (5th ed. 2013) ........................10

██████████████████████████████
███████████████...............................................................9

██████████████████████████████
████████...............................................................9

██████████████████████████
█████/...............................................................12

## INTRODUCTION

This Court has repeatedly recognized that expert testimony is presumptively admissible, subject only to "'liberal admissibility standards.'" *Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*, 310 F.R.D. 69, 76 (S.D.N.Y. 2015). If expert testimony satisfies those standards, the proper way to challenge it is through "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 596 (1993). This liberality is especially important in the criminal context, as the exclusion of expert evidence can violate a defendant's "fundamental right to a fair opportunity to present a defense." *Crane v. Kentucky*, 476 U.S. 683, 687 (1986). Yet rather than allow the jury to fully weigh the parties' theories, the government seeks to short-circuit this adversarial process by moving to substantially preclude Senator Menendez's proffered expert testimony. But the Senator provided more-than-sufficient pre-trial notice as to both Dr. Karen B. Rosenbaum and Mr. Russell Richardson; their testimony is plainly admissible under the Federal Rules of Evidence and *Daubert*; and preclusion would not be the proper remedy for any defects regardless. This Court should readily deny the government's motion *in limine* as to both witnesses.

*First*, the Court should reject the government's attempt to fully exclude Dr. Rosenbaum. Senator Menendez more than satisfied his notice obligations under Federal Rule 16(b), in terms of both timing (on the court-ordered date) and level of detail (through disclosures comparable to those routinely accepted in other cases). And Dr. Rosenbaum's proffered testimony is entirely consistent with the Federal Rules of Evidence; it is classic psychiatric testimony that is standard fare at trial. The government's contrary arguments both improperly elevate Senator Menendez's burden and misrepresent the contours of Dr. Rosenbaum's intended testimony. Moreover, any deficiencies in notice or substance can and should be remedied through means short of exclusion.

*Second*, the Court should also reject the government's request to exclude Mr. Richardson's proposed testimony as to how Senator Menendez's spending habits have been consistent with his lawful income and compensation.  Senator Menendez's notice of Mr. Richardson was likewise adequately detailed, and the government identifies no defect as to Mr. Richardson's qualifications, his methodology, or the content of his testimony under the Federal Rules of Evidence.  And any deficiencies on these counts could similarly be remedied without resorting to exclusion.

## ARGUMENT

### I.   DR. ROSENBAUM'S TESTIMONY SHOULD BE ADMITTED.

Senator Menendez intends to call Dr. Rosenbaum, an expert forensic psychiatrist, to testify as to the ██████████████████████████ he suffered as a result of intergenerational family trauma, and how this disorder caused the Senator to develop a fear of scarcity and a coping mechanism of routinely withdrawing and storing cash in his home.  As Senator Menendez explained in his Rule 16 notice, Dr. Rosenbaum's conclusions are based on her psychiatric evaluations of him, as well as a review of the discovery produced in the case and of the relevant scientific literature.  Her conclusions are also based on her professional experience and research, which demonstrate that such coping mechanisms are a common response to scarcity by trauma victims, and particularly those who suffer from intergenerational trauma.  This evidence is important because the jury may not otherwise understand that there can be a benign explanation for keeping cash in one's home, and instead wrongly assume it to be an indicator of guilt.

The government seeks to preclude Dr. Rosenbaum's testimony in full, but its challenges fail.  Senator Menendez's notice was neither "materially belated" nor "materially deficient," and preclusion would not be the proper remedy for such procedural defects anyway.  Dr. Rosenbaum's proposed testimony is also entirely consistent with the evidentiary rules.

### A.  Senator Menendez's Notice Was Procedurally Sufficient And Does Not Warrant Exclusion In Any Event.

The government first argues that the Senator's notice was "both materially belated and materially deficient," but neither is true.  Mot. at 16 (capitalization omitted).

**1.**  As an initial matter, the Senator's April 19, 2024, notice of Dr. Rosenbaum's testimony clearly was not late.  Although the government tries to hold Senator Menendez to the parties' *initial* April 16 deadline for noticing defense expert witnesses, this Court *extended* that deadline to April 19, due to ongoing uncertainty over the trial date that had caused *both* sides to suspend deadlines. *See* Tr. of Apr. 19, 2024 Conference, at 13.  Indeed, the government's disclosure of its witness list, exhibit list, and 3500 material were similarly suspended until this uncertainty was resolved, so it can hardly fault Senator Menendez for doing the same.

Even if the original deadline had held, any delay should be overlooked because Senator Menendez submitted his notice more than three weeks before the trial's May 13 start date.  Because the government expects its case-in-chief to last five to seven weeks, this notice gives the government 8 to 10 weeks to prepare before Dr. Rosenbaum's anticipated testimony is offered. This extended period is "sufficiently before trial to provide a fair opportunity for the defendant to meet the government's evidence," Fed. R. Crim. P. 16(a)(1)(G)(ii), and the government does not assert any specific prejudice to the contrary. *Cf. United States v. Rosario*, No. 09-cr-415 (VEC), 2014 WL 6076364, at *4 (S.D.N.Y. Nov. 16, 2014) (refusing to preclude witnesses noticed "less than two weeks before trial").  Conversely, Senator Menendez's case would be heavily prejudiced by preclusion, as Dr. Rosenbaum's testimony is important to ensure the jury can understand the psychiatric explanations for the Senator's storing of cash in his home, which bear on his credibility and the plausibility of inferences the government asks the jury to draw from the money or that the jury may naturally draw.  Given all this, Senator Menendez's notice "was not so untimely … as to

3

warrant exclusion." *Id.*; *see also United States v. Lewis*, 818 F. App'x 74, 79 (2d Cir. 2020) (listing "party's explanation" for the delay, "importance of the testimony," and "prejudice suffered by the opposing party" as key factors in assessing whether to preclude untimely noticed witnesses).

Nor is the government correct that Senator Menendez was required to provide disclosures relating to Dr. Rosenbaum by the April 1 deadline for noticing affirmative defenses. For one thing, the April 1 deadline required only notice of affirmative defenses. As relevant to Rule 12.2, an insanity defense is an affirmative defense, but "expert evidence of a mental condition" is not an affirmative defense. Indeed, unlike Rule 12.2(a), which lists "defense" three times in its provision, Rule 12.2(b) is only identified as "expert evidence" without reference to a defense. *Compare* Fed. R. Crim. P. 12.2(a) ("Notice of an Insanity Defense"), *with id.* R. 12.2(b) ("Notice of Expert Evidence of a Mental Condition"). For another, Dr. Rosenbaum is not even a Rule 12.2(b) witness. That provision, which concerns "expert evidence relating to a … mental condition of the defendant bearing on … the issue of guilt," applies only to testimony going to the defendant's *mens rea*. *See* 24 Moore's Federal Practice – Criminal Procedure § 612.2.05 (3d ed. 2023) ("Rule 12.2(b) … requires the defendant to serve a notice of intent when he or she intends to introduce expert testimony on the existence of a specific mental element of an offense"). The rule does not apply, however, to testimony regarding whether a defendant engaged in the conduct, *i.e.*, the *actus reus*. *United States v. Taylor*, 820 F. Supp. 124, 127-29 (S.D.N.Y. 1993) (admitting as non-Rule 12.2(b) evidence rebuttal evidence on battered woman's syndrome). The relevant deadline was thus not April 1, but April 19 (the deadline for noticing defense experts). And the Senator satisfied it.

Regardless, Senator Menendez "in an abundance of caution" advised the government on April 3 about Dr. Rosenbaum's testimony and its contours, while maintaining that she is not a Rule 12.2(b) witness. *See* Weitzman Decl. Ex. A. The government never objected or otherwise

suggested Rule 12.2(b) notice was late or overdue.  So it would be patently unfair to preclude Dr. Rosenbaum's testimony, which Senator Menendez timely noticed pursuant to the deadline for noticing defense experts, based on a timing objection that the government waited nearly a month to file in its motion *in limine*, on the eve of trial.[1]

**2.**  Senator Menendez's notice was also more than sufficient in substance.  Rule 16(b)(1)(C) requires a defendant's notice to include the "bases and reasons" for the opinions he intends to elicit from an expert witness, and the Senator's notice did just that.  It identified her opinions: That Senator Menendez suffers from ██████ and developed the coping mechanism of withdrawing and storing cash at his home as a result.  And it explained the "bases and reasons" underlying these conclusions:

> Dr. Rosenbaum's conclusions are … based on her[] experience and research that demonstrates that such coping mechanisms are a common response to scarcity among trauma victims, especially for those who suffer from intergenerational trauma.
>
> In addition to her experience and research, Dr. Rosenbaum's conclusions are based on evaluations she conducted of Senator Menendez, as well as a review of discovery produced in the case, including photographs of the cash seized from Senator Menendez's home, Senator Menendez's bank records, and photographs taken of the interior of Senator Menendez's home, as well as her review of relevant scientific literature.

Govt. Ex. A at 1-2.  Senator Menendez attached Dr. Rosenbaum's curriculum vitae, which detailed extensively her experience and prior research.  *See id.* at 3-22.  And, although not required by the

---

[1] Even if Dr. Rosenbaum were a Rule 12.2(b) witness subject to an April 1 notice deadline, that Rule expressly allows belated notice "for good cause."  Fed. R. Crim. P. 12.2(b).  Good cause exists here, given that Senator Menendez provided his initial notice close in time to April 1; there was legitimate uncertainty over the Rule's applicability and operative deadline; his slight delay can be attributed to the substantial pretrial motions practice ongoing at that time; preclusion would be highly prejudicial, as explained above; and the government has not suggested that it has been prejudiced in any concrete way.

Rule, Senator Menendez intends to produce to the government copies of the scientific literature that Dr. Rosenbaum's opinions rely upon.

All this is sufficient to meet Rule 16's "bases and reasons" requirement, which is why the government regularly submits and courts regularly approve notices of comparable or even lesser specificity. *See, e.g.*, *United States v. Brown*, No. 3:22-cr-33 (BJL) (CHL), 2023 WL 5002872, at *1-2 (W.D. Ky. Aug. 4, 2023) (notice stated that expert's opinions were "based on his 'training, experience, and [personal] review of the [evidence],'" supplemented by a curriculum vitae); *United States v. Belloisi*, No. 20-cr-219 (DLI), (E.D.N.Y. Mar. 30, 2023), ECF No. 57-1 (government's notice stated that expert's opinions were "based on [his] experience and training, which are detailed in his curriculum vitae …, as well as call detail records previously produced"), *mot. to exclude denied*, 2023 WL 2716551, at *1 (E.D.N.Y. Mar. 30, 2023); *United States v. Menees*, No. 21-cr-151 (TDD), 2023 WL 127032, at *2 (E.D. Okla. Jan. 6, 2023) (government's notice stated that expert's opinions were based on her "knowledge and experience," as well as review of medical records and knowledge about the patient); *United States v. Raniere*, No. 18-cr-204-1 (NGG) (VMS), 2019 WL 2212639, at *4 (E.D.N.Y. May 22, 2019) (government's notice stated that its experts would rely on "extensive experience" and "extensive study"); Motion in Limine, *United States v. Diakhoumpa*, No. 15-cr-629 (S.D.N.Y. Mar. 9, 2016), ECF No. 23 (challenging government notices of testimony based on the experts' "training and experience, as well as information … about how to determine whether an item is counterfeit"), *denied*, Order, ECF No. 29 (S.D.N.Y. Mar. 11, 2016).[2]

---

[2] The requirements for expert disclosure in criminal cases are much lower than in civil cases. *See, e.g.*, *United States v. Patel*, No. 3:21-cr-220 (VAB), 2023 WL 2643815, at *36 n.10 (D. Conn. Mar. 27, 2023) (citing Fed. R. Civ. P. 16, 2022 advisory committee note).

The government nonetheless challenges Senator Menendez's notice by cataloging a list of issues it could further have addressed—such as whether the Senator's ███ also manifested itself in other ways; the intricacies of how Senator Menendez's ███ and coping mechanism developed; and details about how exactly her evaluations of Senator Menendez unfolded.  Mot. at 17-19.  But Rule 16 does not require this kind of "'comprehensive disclosure.'"  *Raniere*, 2019 WL 2212639, at *4.  Rather, a disclosure need only convey enough information so that the government can understand, in broad strokes, the "contours" of the witness's intended testimony, *Belloisi*, 2023 WL 2716551, at *1, so that it has "a fair opportunity to prepare to cross-examine expert witnesses and secure opposing testimony if needed," Fed. R. Crim. P. 16, 2022 advisory committee note.  The government's motion makes clear it faces no issue on either front:  It acknowledges that it has already prepared to retain a rebuttal psychiatrist if needed.  Mot. at 20 & n.4.  And the Senator made clear that he is not opposed to having such a government expert examine him, subject to proper safeguards.  *See* Weitzman Decl. Ex. B.  Yet the government never followed up on that offer, casting doubt on the sincerity of this concern.  And, notwithstanding the government's conclusory claim that it has been "hamper[ed]" in its trial preparation by Senator Menendez's failure to provide its desired details, its motion all but functions as a cross-examination outline.

In nonetheless arguing inadequate disclosure, the government is effectively demanding that Senator Menendez preview Dr. Rosenbaum's *answers* to cross-examination.  But Rule 16 does not require "a verbatim recitation of the testimony the expert will give at trial."  Fed. R. Crim. P. 16, 2022 advisory committee note.  The government's cited authority is not to the contrary.  *United States v. Mrabet* reasoned only that a Rule 16 disclosure cannot rely on a reference to "experience" "which is never elaborated in even the slightest respect."  2023 WL 8179685, at *2 (S.D.N.Y. Nov. 27, 2023).  Instead, "[a]n expert opinion requires some explanation as to how the expert came to

his conclusion and what methodologies or evidence substantiate that conclusion." *Id.* (quoting *Riegel v. Medtronic, Inc.*, 451 F.3d 104, 127 (2d Cir. 2006)).  But unlike the one-sentence justification in *Mrabet*, the notice here offered the necessary explanation.  It made clear Dr. Rosenbaum's methodology (application of psychiatric medicine, based on her experience, research, and scientific literature) and the evidence she relied on (her interviews of Senator Menendez and the factual record of the case).  Rule 16 requires no more.

Likewise, it makes no difference that Senator Menendez did not turn over any papers from Dr. Rosenbaum's evaluations of Senator Menendez.  Dr. Rosenbaum did not prepare any "results or reports" after her evaluations of Senator Menendez, so the Senator's obligation to produce such materials is irrelevant.  *See* Fed. R. Crim. P. 16(b)(1)(B).  And Senator Menendez has no obligation to produce any notes that Dr. Rosenbaum informally prepared, as an expert's notes are not "results" or "reports" within the meaning of the Federal Rules, *see United States v. Dennison*, 937 F.2d 559, 566 (10th Cir. 1991); *United States v. Marenghi*, 893 F. Supp. 85, 98 (D. Me. 1995), a point the government has not disputed.  Of course, if the Court disagrees, Senator Menendez would produce Dr. Rosenbaum's notes to the government—that, not preclusion, would be the remedy.

Indeed, this Court should not preclude Dr. Rosenbaum's testimony even if it agrees with any of the government's objections as to the sufficiency of notice.  Preclusion is an "extreme sanction," which is warranted only in "extreme situations." *Trombetta v. Novocin*, No. 18-cv-993 (LTS) (SLC), 2023 WL 4118103, at *5 (S.D.N.Y. June 22, 2023).  The government offers no reason to think this case, where Senator Menendez gave meaningful, substantive notice more than three weeks before trial and 8 to 10 weeks before Dr. Rosenbaum is expected to testify, qualifies as an extreme circumstance.  *Cf. United States v. Raniere*, 384 F. Supp. 3d 282, 327 (E.D.N.Y. 2019) (preclusion is necessary where "testimony was disclosed on the first day of trial or later").

Accordingly, if this Court concludes that relief is necessary, it should simply order Senator Menendez to file a supplemental disclosure, as Rule 16 contemplates and as the notice cases cited by the government make clear is standard practice.  Fed. R. Crim. P. 16(b)(1)(C)(iv), (c); *United States v. Kwok*, No. 23-cr-118 (AT), 2024 WL 1773143, at *3 (S.D.N.Y. Apr. 24, 2024); *Mrabet*, 2023 WL 8179685, at *2.

### B.  Dr. Rosenbaum's Testimony Is Admissible Under the Federal Rules of Evidence.

Nor is the substance of Dr. Rosenbaum's testimony inadmissible for any reason.  The government's challenges under Rule 702, hearsay grounds, and Rule 403 all fail.

### 1.  Testimony By a Forensic Psychiatrist Like Dr. Rosenbaum Is Routinely Admitted Under Rule 702.

The government's Rule 702 challenge—focused on whether Dr. Rosenbaum's testimony would be based on reliable methods or sufficient facts or data—flies in the face of countless cases permitting psychiatrists and psychologists to testify.  Dr. Rosenbaum's opinions are reliable because they are grounded in the standard methodology of psychiatrists.  She interviewed Senator Menendez, reviewed record materials from this case, and drew conclusions based on her psychiatric training, experience, and the relevant literature (which, again, Senator Menendez will produce).[3]  Courts regularly recognize that this methodology is sufficient to establish reliability



under Rule 702, and presumably the government's rebuttal expert will take a similar approach

should it hire one.  *See, e.g.*, *Tchatat v. City of New York*, 315 F.R.D. 441, 445 (S.D.N.Y. 2016)

(crediting argument that "it is generally accepted practice in the field of psychiatry for a diagnosis

to be made based on an examination of the individual being assessed); *Schoolcraft v. City of N.Y.*,

No. 10-cv-6005 (RWS), 2015 WL 6444620, at *2 (S.D.N.Y. Oct. 22, 2015) (psychologist had a

reliable methodology where he interviewed plaintiff for 90 minutes and reviewed medical records

and depositions); *Waers v. Embassy Healthcare, Inc. - Embassy Cambridge, LLC*, No. 2:20-cv-

3713 (MHW), 2022 WL 3704000, at *3 (S.D. Ohio Aug. 26, 2022) (psychiatrist had a reliable

methodology where she "synthesiz[ed] [information from an interview of plaintiff and relevant

documents] and appl[ied] her experience and knowledge about psychology and mental health to

come to a conclusion").  Thus, this case is not one like *United States v. Ray*, where the expert

offered "no method which another psychiatrist in the field could apply and arrive at the same

conclusion."  583 F. Supp. 3d 518, 542 (S.D.N.Y. Feb. 1, 2022).  Dr. Rosenbaum's testimony easily

clears Rule 702's "liberal standard of admissibility," which permits exclusion of expert testimony

only if it is so "'speculative or conjectural or based on assumptions that are so unrealistic and

contradictory as to suggest bad faith or to be in essence an apples and oranges comparison.'"

*United States v. Napout*, 963 F.3d 163, 187 (2d Cir. 2020).

The government's specific quibbles with Dr. Rosenbaum's methodology—that Senator

Menendez does not have a previous ███████ diagnosis and that her diagnosis assertedly diverges

from the *Diagnostic and Statistical Manual of Mental Disorders* ("DSM-5")—do not change this

calculus.  After all, the absence of a previous diagnosis is reasonably explained by ███████ status

███████████████████████████████████████████████████████████████

as an underreported ailment.  *See* Schrader & Ross, *supra*, at 548.  And Dr. Rosenbaum's diagnosis

does *not* conflict with the DSM-5.  She based her evaluation on literature using the DSM-5's

criteria, *see, e.g.*, *id.*; Friedman, *supra*, and the DSM-5 excerpt cited by the government itself

recognizes "avoidance of stimuli associated with the traumatic event(s)" (*i.e.*, the development of

a coping mechanism) as an indicator of ███, *see* Am. Psychiatric Ass'n, *Diagnostic and*

*Statistical Manual of Mental Disorders* (5th ed. 2013), https://ncbi.nlm.nih.gov/books/

NBK207191/box/part1_ch3.box16/.   To the extent the government nevertheless perceives

shortcomings in Dr. Rosenbaum's analysis, those would not be flaws "large enough that the expert

lacks good grounds for … her conclusions" and so could not warrant exclusion.  *FHFA v. Nomura*

*Holding Am., Inc.*, No. 11-cv-6201 (DLC), 2015 WL 353929, at *4 (S.D.N.Y. Jan. 28, 2015)

(quoting *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 267 (2d Cir. 2002)).   Rather,

they are issues it should raise on cross-examination or in its responsive case.  *See Kaiser v. Jayco,*

*Inc.*, No. 1:20-cv-12903, 2022 WL 856155, at *6-7, (E.D. Mich. Mar. 22, 2022) (recognizing that

psychiatrists often disagree on diagnostic criteria, and so "apparent deviation from the DSM" goes

to "the weight of his testimony," not reliability); *Lingo v. Burle*, No. 4:06-cv-1392, 2008 WL

1914148, at *3 (E.D. Mo. Apr. 25, 2008) (courts "rarely exclude an expert from testifying under

*Daubert* for failure to adhere to the DSM").[4]

   The government next argues that Dr. Rosenbaum has not adequately established that

Senator Menendez's storing of the cash at issue in this case was caused by his ███, and that she

should have considered alternative explanations.  Mot. at 22.  But that misunderstands the scope

---

[4] Although the government identifies a rare exception where deviation from the DSM was a factor undermining the reliability of the expert's opinion, the expert's alternative approach there was predicated on "speculation" based on "arguably dated articles," a defect not present here.  *See Brush v. Old Navy LLC*, No. 21-cv-155 (CR), 2023 WL 5311434, at *4 (D. Vt. Aug. 17, 2023).

of the proffered testimony.  As Senator Menendez's notice reflects, he is not calling Dr. Rosenbaum to offer an opinion on the particular funds in this case; that is an issue of fact for the jury.  Rather, Dr. Rosenbaum will testify only to the Senator's ████ and his storage of cash as a coping mechanism generally.  *See id.*  Those more limited conclusions were reached through reliable methodologies.  It is well-established that individuals who suffer from ████ often develop coping mechanisms.  *See, e.g.,* ██████████████████████████████████████████ ████████████████████████████████████████████ ██████████████████████████████  And Dr. Rosenbaum properly drew on her research, training, and experience, to apply that principle to the context of trauma related to scarcity, which can prompt efforts to avoid the perception of scarcity by hoarding cash.  Her conclusions certainly cannot be considered so "'speculative,'" "'conjectural,'" or "'unrealistic'" as to warrant their wholesale exclusion as unreliable.  *Napout*, 963 F.3d at 187.

Last, this Court should not treat Dr. Rosenbaum's opinion as relying on insufficient facts or data merely because she did not interview others besides Senator Menendez.  Courts "routinely" admit expert testimony based on evaluation of just the defendant himself, *Qube Films Ltd. v. Padell*, No. 13-cv-8405, 2016 WL 888791, at * 2 n.1 (S.D.N.Y. Mar. 1, 2016), and indeed it would be unusual for a psychiatrist to withhold diagnosis pending interviews with third parties.  Instead, practitioners invariably "rel[y] on the reports of [their] clients," evaluated against their "significant training and specialized knowledge."  *United States v. Maxwell*, No. 20-cr-330 (AJN), 2021 WL 5283951, at *3 (S.D.N.Y. Nov. 11, 2021).  Dr. Rosenbaum's evaluations followed this approach, in contrast to the cases the government cites, where the experts deviated from best practice by taking the patient's "statements at face value."  *Id.*  As Dr. Rosenbaum's notice makes clear, she did not just rely on Senator Menendez's word; she also reviewed the evidentiary record, including

photographs of the cash seized from the Senator's home, photographs of the interior of his home, and his bank records.  Govt. Ex. A at 2.  To the extent the government nonetheless believes that Dr. Rosenbaum overly credited Senator Menendez's interview statements, the "adversary system provides the necessary tools for challenging … debatable[] expert testimony."  *Amorgianos*, 303 F.3d at 267.  The government is free to pursue "[v]igorous cross-examination," "presentation of contrary evidence" through a rebuttal expert, or a jury instruction clarifying how the jury should assess expert testimony.  *Daubert*, 509 U.S. at 595.  Likewise, to the extent this Court has any doubts about the reliability of Dr. Rosenbaum's methods, it should permit further development through a supplemental notice.

## 2.  Dr. Rosenbaum's Testimony Cannot Be Excluded on Hearsay Grounds.

Equally unpersuasive is the government's argument that Dr. Rosenbaum's testimony should be precluded on hearsay grounds.  As the government acknowledges, "an expert may rely on facts and data that would 'otherwise be inadmissible' under the hearsay rules."  Mot. at 24 (citing Fed. R. Evid. 703).  Thus, "an expert witness may rely on hearsay evidence while reliably applying expertise to that hearsay evidence."  *United States v. Dukagjini*, 326 F.3d 45, 58 (2d Cir. 2003); *accord, e.g.*, *United States v. Locascio*, 6 F.3d 924, 938 (2d Cir. 1993); *United States v. Castro*, 411 F. App'x 415, 419 (2d Cir. 2011); *United States v. Torres*, No. 20-cr-608 (DLC), 2021 WL 1947503, at *7 (S.D.N.Y. May 13, 2021); *United States v. Delligatti*, No. 15-cr-491 (KBF), 2018 WL 1033242, at *5 (S.D.N.Y. Feb. 23, 2018).  Accordingly, Dr. Rosenbaum's reliance on Senator Menendez's statements during her evaluations of him is not a basis to exclude her testimony.  "[E]xpert witnesses can testify to opinions based on hearsay … if experts in the field reasonably rely on such evidence in forming their opinions."  *Locascio*, 6 F.3d at 938.  And, as explained, psychiatrists routinely make determinations based on their interviews of their patients.

Thus, taken to its logical conclusion, the government's argument would require exclusion of all psychiatric witnesses—a position that cannot be squared with well-established law and practice.

The cases cited by the government only confirm the admissibility of Dr. Rosenbaum's testimony.  *See United States v. Mejia*, 545 F.3d 179, 197 (2d Cir. 2008); *Dukagjini*, 326 F.3d at 58.  Those cases affirm the general rule that experts can invoke hearsay in the course of "applying [their] expertise," but recognize that they cannot do so when offering lay testimony, *Mejia*, 545 F.3d at 197, and that experts cannot just "repeat[] hearsay evidence without applying any expertise whatsoever," *Dukagjini*, 326 F.3d at 59.  *Dukagjini* and *Mejia* both involved case agents, where hearsay limits are uniquely necessary given that such witnesses testify about "both their expert opinions and the facts of the case."  *Dukagjini*, 326 F.3d at 55-59l; *see Mejia*, 545 F.3d at 197-98.  No similar risk applies to Dr. Rosenbaum, who is testifying solely as to her psychiatric evaluation of Senator Menendez, a subject where expert analysis will always and inevitably involve hearsay.

Dr. Rosenbaum's expertise will greatly assist the jury, and Senator Menendez is not calling her as a witness to circumvent hearsay rules.  He intends to call fact witnesses to corroborate many of the facts upon which Dr. Rosenbaum relied, and the government will be free to cross-examine them on these issues.  But Dr. Rosenbaum's testimony is necessary too, because jurors may not intuitively understand the reasons why someone might store excessive amounts of cash in his home, and so might draw incorrect inferences about the Senator's credibility and guilt.  *See United States v. DiDomenico*, 985 F.2d 1159, 1170 (2d Cir. 1993) (expert testimony is admissible when "it is aimed at an area where the purported common knowledge of the jury may be very mistaken, an area where jurors' logic, drawn from their own experience, may lead to a wholly incorrect conclusion").  Expert testimony can help defendants "'overcome stereotyped impressions'" in a way that lay testimony often cannot.  *United States v. Lopez*, 913 F.3d 807, 822-23 (9th Cir. 2019).

And to the extent that Dr. Rosenbaum's testimony (like any psychiatrist's) inevitably draws on her interviews with the patient, the Court should not torpedo it on hearsay grounds.

Moreover, even if this Court were concerned about hearsay, the recourse should not be wholesale exclusion. As *Dukagjini* makes clear, any hearsay concerns can be remedied through a limiting instruction reminding the jury that they should not accept the hearsay as "'general proof of the truth of the underlying matter,'" 326 F.3d at 58, particularly given the strong presumption that "juries follow limiting instructions," *United States v. Becker*, 502 F.3d 122, 130 (2d Cir. 2007) (following this presumption unless there is an "'overwhelming probability'" that the jury will not follow the limiting instruction and the result would be "'devastating'" to the prejudiced party). And at most, any hearsay issue should bear on the scope of Dr. Rosenbaum's testimony, addressed as needed at trial. *See* Mot. at 26 (even on the government's hearsay position, recognizing issues as to which Dr. Rosenbaum may be able to testify).[5]

### 3. Dr. Rosenbaum's Testimony Is Admissible Under Rule 403.

Finally, Dr. Rosenbaum's testimony is admissible under Rule 403 as well. Rule 403 directs the Court to exclude evidence "if its probative value is substantially outweighed by a danger of … unfair prejudice, confusing the issues, [or] misleading the jury." Fed. R. Evid. 403. But Dr. Rosenbaum's testimony has significant probative value, and the government's claimed fears of confusion or distraction are makeweights.

As mentioned, Dr. Rosenbaum's testimony is important because a jury may not understand the benign explanation for why a person may choose to store cash in his home—even large amounts of cash—and thus may draw incorrect inferences that the storing of cash reflects criminal

---

[5] Likewise, the government could also conduct its own psychiatric examination of Senator Menendez to test Dr. Rosenbaum's conclusions. But, again, the government has made no attempt to follow up on Senator Menendez's offer to allow it to do so.

conduct, which is exactly what the government will argue.  Under these circumstances, expert testimony is absolutely warranted and necessary.  *See DiDomenico*, 985 F.2d at 1170 (expert testimony is admissible to inform the jury about "'an area where the purported common knowledge of the jury may be very much mistaken'" and "'expert knowledge would enable the jurors to disregard their prior conclusions as being common myths rather than common knowledge'").  Courts have long recognized that psychiatric testimony can be useful in explaining unusual or counter-intuitive reasons why a defendant may have acted as he did, which can strengthen the jury's ability to accurately assess the defendant's conduct and credibility, *United States v. Smith*, 987 F.2d 888, 891 (2d Cir. 1993), over and above the utility of lay testimony, *see Lopez*, 913 F.3d at 823.  For example, courts regularly admit expert testimony on conditions such as child sexual abuse syndrome and battered woman's syndrome, to help jurors understand "common psychological patterns" that may not otherwise be apparent to them.  *See, e.g.*, *White v. Keane*, 51 F. Supp. 2d 495, 501-02 (S.D.N.Y. 1999); *United States v. Roberts*, 86 F.4th 1183, 1187 (8th Cir. 2023).  So too, the government often calls expert witnesses to testify as to why certain behaviors may be more probative of guilt than they may seem on their face.  *United States v. Dingwall*, 6 F.4th at 753-54 (7th Cir. 2021) (collecting examples).  The same principle applies here: The jury may be predisposed to treat the money in Senator Menendez's home as a strike against him, so Dr. Rosenbaum's testimony is necessary to ensure that the jury appreciates the range of explanations for the evidence.  *Roberts*, 86 F.4th at 1187.

Conversely, her testimony will not unfairly prejudice the government—much less do so to such an extent that it would "substantially outweigh" the probative value.  At bottom, the government's objection to Dr. Rosenbaum appears to be a concern that a jury may be more persuaded by Dr. Rosenbaum's testimony about the behavioral patterns of ███ sufferers than by

lay testimony about Senator Menendez's personal experience alone. *See* Mot. at 27-29. But jury reliance on expert testimony to explain scientific concepts is a salutary feature of expert testimony, not a bug. *See Lopez*, 913 F.3d at 823. So it cannot amount to the "unfair prejudice" circumscribed by Rule 403, which uses that term to "mean[] an undue tendency to suggest decision on an *improper basis.*" *Old Chief v. United States*, 519 U.S. 172, 180 (1997) (emphasis added). Likewise, to the extent that the Court is concerned the jury may draw improper assumptions, this risk can be resolved through a limiting instruction—a possibility the government fails to contemplate. *See* Fed. R. Evid. 703, 2000 advisory committee note (trial court should consider limiting instruction before exclusion).

The government's argument for Rule 403 exclusion is that "psychiatric evidence of a mental condition" is subject to a heightened burden of admissibility, requiring "a 'direct link' between the psychiatric evidence and the defendant's *mens rea.*" Mot. at 27. But the government's cases are focused on the "special concerns" at play when "mental disease evidence [is] offered in an attempt to negate the intent element of an offense," given legal limitations on how mental disease evidence can negate *mens rea.* *United States v. Dupre*, 339 F. Supp. 2d 534, 540-41 (S.D.N.Y. 2004). As discussed, that is not Dr. Rosenbaum's function here. She is not being called to testify regarding *mens rea*, and those "special concerns" do not apply as to testimony bearing on conduct, where jurors may broadly consider all relevant evidence. And regardless, given the strong probative value of Dr. Rosenbaum's testimony and the minimal prejudice that could accrue, her testimony should be admissible under any form of Rule 403 scrutiny.

## II. MR. RICHARDSON'S TESTIMONY SHOULD BE ADMITTED.

The government's partial objection to Mr. Richardson's prospective testimony fares no better. In short, Mr. Richardson plans on offering the conventional expert testimony of a forensic accountant: That a defendant's financial records and spending habits are consistent with that

person's lawful income.  Indeed, Mr. Richardson's testimony will *directly rebut* similar evidence that the government intends to offer and that the Court declined to exclude, running in the other direction, about how Senator Menendez allegedly lived a lavish lifestyle, beyond his known means. There is no cogent explanation—and the government offers none—why such testimony is proper for the government, but not the defense.

Moreover, as with Dr. Rosenbaum, the government has been put on more than adequate notice about Mr. Richardson's testimony.  And as with Dr. Rosenbaum, the government has all it needs to prepare its cross-examination or rebuttal.  The government's objection should be rejected.

**1.** Mr. Richardson is a forensic auditor and investigator, with twenty-five years' experience in the field.  Senator Menendez anticipates calling Richardson to testify to a question within his core competency: Whether the Senator's financial records line up with what we know about his lawful compensation and income.  This is an exceedingly common task for a forensic accountant, and common fare at trial.  *See, e.g.*, *United States v. Bhula*, 645 F. Supp. 3d 1228, 1240 (D.N.M. 2022) (admitting expert testimony of forensic accountant to assess whether financial records have "red flags" of illicit activity); *United States v. Miller*, 295 F. Supp. 3d 690, 699 (E.D. Va. 2018), *aff'd*, 911 F.3d 229 (4th Cir. 2018) (forensic accountant testifying whether financial activity is "unusual"); *United States v. Sixty-one thousand nine hundred dollars & no cents ($61,900.00) seized from account number XXXXXX4429 held in the name of PRP Rest., Inc.*, 802 F. Supp. 2d 451, 460 (E.D.N.Y. 2011) (same for investigator).

Indeed, the government accepts (as it must) that Mr. Richardson may testify to the substance of the Senator's financial records, and detail for the jury both his inflows and outflows. Mot. at 31-32.  But asking how those inflows and outflows *compare* is the natural next step, within the heartland of a financial expert's expertise.  Oddly, the government seems to assert that the

latter—whether the Senator spent within his fiscal means, or went beyond them—is not "expert *analysis*" at all.  Mot. at 32-33 (emphasis in original).  But that is obviously wrong.  People turn to financial accountants or advisors all the time to determine whether they can afford something (*e.g.*, can I buy this house?), or what would be a responsible spending pattern (*e.g.*, what can I set aside for retirement every month?).  Financial analysts answer those questions by looking at a person's depository accounts, credit card statements, tax returns, financial disclosures, related financial documents, and the like—exactly what Richardson did when he analyzed whether the Senator was living within his means.  That sort of judgment determination is precisely what a financial expert is tasked to do.  And it is precisely what the government typically asks such an expert to do, in analogous cases.  *See, e.g.*, *United States v. $84,367 in U.S. Currency*, No. 15-cv-2600 (JRA), 2018 WL 2928061, at *2 (N.D. Ohio June 12, 2018) (noting that a forensic accountant concluded that an individual's cash and expenses indicated that he underreported his income stream); *Schoenauer v. United States*, 759 F. Supp. 2d 1090, 1100 (S.D. Iowa 2010) (ATF auditor gave expert testimony that defendant had millions in "unexplained income," creating inference that money was product of illegal activity); *United States v. Gonzales*, 21 F.3d 1045, 1047 (11th Cir. 1994) (similar).

The government is thus wrong to insist the Federal Rules of Evidence require the jury to pour through all of these records—unaided—and determine for itself what the Senator could afford (or not).  Mot. at 33.  That sort of financial judgment call does not fall within a lay jury's expertise; it is not a matter of common sense, or back-of-the-envelope math.  *See, e.g.*, *Bhula*, 645 F. Supp. 3d at 1240 ("Forensic accounting and reconstruction of financial records is likely beyond the knowledge of average lay jurors and therefore the jury would benefit from [the expert's] testimony].").  Instead, it is something that lends itself to expert judgment.  *See, e.g.*, *United States*

19

*v. Hillard*, 542 F. Supp. 487, 491 (S.D.N.Y. 1982), *aff'd*, 701 F.2d 1052 (2d Cir. 1983) (noting that investigators concluded the defendant had made "extravagant" purchases as well as "unusually large cash expenditures" that went "beyond [his] legitimate source of [known] income"); *see also United States v. Poole*, 640 F.3d 114, 122 (4th Cir. 2011) (describing how prosecution witness reviewed expenditures to conclude that defendant had unreported income).  And it is especially important now that the government will be able to introduce its own "lifestyle" evidence.

**2.**  The government's primary objections seem to stem from some of the adjectives or adverbs Mr. Richardson may use to describe the Senator's spending patterns.  That is misguided.  Again, the focus of his testimony will be whether the Senator's spending patterns were consistent with his lawful compensation and income—*i.e.*, whether he lived within his means.  Someone can exceed those bounds by a little or a lot, with accompanying adjectives to match.  In describing the Senator's spending as neither "extravagant" nor "excessive," Mr. Richardson will just make the point that the Senator did not make major or unnecessary purchases he could not afford.  To the extent the government wants to plumb the exact contours of "excessive," or Mr. Richardson's other conclusions, that is a proper subject of cross-examination—where the government can interrogate that point alongside any others.  Related, there is no serious argument the government does not have what it needs to prepare for that examination.  The government concedes that Mr. Richardson "appears qualified to analyze financial records."  Mot. at 32.  And Senator Menendez has disclosed (i) the materials Mr. Richardson has reviewed, and (ii) what he concluded from those materials, employing a conventional financial analysis.  Nothing more is required here.

**3.**  The government also objects that it unclear how Mr. Richardson's testimony accounts for the various non-cash items the Senator allegedly received, but did not pay for.  Mot. at 32.  The answer is it does not—that is beyond the scope of his opinion, and in turn no basis for excluding

it.  Once more, Mr. Richardson's sole focus will be on whether the Senator's known outflows line up with his known, legitimate inflows.  If the government wants to raise the non-cash items the Senator allegedly received—and interrogate whether they affect Mr. Richardson's conclusions— that again is a legitimate topic for cross-examination.  But the government's allegation of non-cash transfers does not undermine Mr. Richardson's opinion on its own terms, or its relevance to this case—which, after all, involves a number of alleged cash bribes.

**4.**  The government's hearsay objections to Mr. Richardson's testimony are no sounder.  As the Senator's notice made clear, Mr. Richardson based his opinion principally on business records (*e.g.*, depository accounts, tax returns, credit card statements).  Those business records are not hearsay.  *See, e.g.*, *Chevron Corp. v. Donziger*, 974 F. Supp. 2d 362, 691 (S.D.N.Y. 2014) (admitting bank statements as business records); *see also Ray*, 2022 WL 558146, at *15 (noting that government "intends to offer [at trial] … bank records … as business records under Rule 803(6)").  Yes, he also interviewed the Senator.  But he did so to clarify certain ambiguities in those records (*e.g.*, what a given line-item meant)—a routine practice for any financial analyst.  So while Mr. Richardson's expert opinion is based in part on the Senator's statements, it is equally obvious that his testimony will not be a backdoor way of transmitting those otherwise-irrelevant statements to the jury.  *See, e.g.*, *Mejia*, 545 F.3d at 197 (explaining that experts can "testify to opinions based on … hearsay" so long as he is not just "transmit[ting] that hearsay to the jury").

**5.**  As for Rule 403, the government's argument cannot bear the weight of its own concessions.  It maintains that "Menendez's and Nadine Menendez's finances, and their desire to receive certain things of value, including many things they could not otherwise afford, from bribe-payors and their associates, is highly relevant."  Mot. at 34.  The government has made clear that it intends to offer evidence on that score, and the Court has held that such evidence is admissible.

21

But it therefore must *also* be relevant and admissible *what they could afford* in the first place, and whether their spending habits were misaligned with their legitimate income.  *See United States v. One Gulfstream G-V Jet Aircraft*, 941 F. Supp. 2d 1, 15 (D.D.C. 2013) ("without knowing what [the defendant's] means are, the court is hard-pressed to infer that he lives beyond them.").  And for *that*, an expert is required.  As noted, digesting a large volume of financial records is not the sort of thing that a lay jury can readily do.

At most, if certain characterizations of the Senator's spending tip the Rule 403 scales, that may be a reason for this Court to order that those specific wording choices be avoided—not for excluding Richardson's highly relevant testimony on this point in full.

## CONCLUSION

For the reasons set forth herein, the government's motions *in limine* should be denied.  To the extent this Court has any concerns with the proffered testimony, it should order supplemental notice, allow other remedies short of exclusion, or defer the matter until trial.

Dated: May 7, 2024                    Respectfully submitted,

By: */s/ Adam Fee*

      **PAUL HASTINGS LLP**

      Adam Fee
      Avi Weitzman
      Robert D. Luskin
      200 Park Avenue
      New York, N.Y. 10166
      (212) 318-6000

      **JONES DAY**

      Yaakov M. Roth (*pro hac vice*)
      51 Louisiana Avenue N.W.
      Washington, D.C. 20001
      (202) 879-3939

      *Attorneys for Defendant Robert Menendez*