UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | 23-Cr-490 (SHS) |
| ROBERT MENENDEZ, NADINE MENENDEZ, WAEL HANA, and FRED DAIBES, | OPINION & ORDER |
| Defendants. | |

---

SIDNEY H. STEIN, U.S. District Judge.

**I.   INTRODUCTION**

Defendant Robert Menendez has moved to take the depositions of three individuals pursuant to Rule 15(a)(1) of the Federal Rules of Criminal Procedure. Those individuals are: (1) the principal ("Qatari Investor") of the entity described in the Indictment as the "Qatari Investment Company," (2) its Chief Operating Officer (COO), and (3) its General Counsel (GC).

Federal Rule of Criminal Procedure 15(a)(1) provides in relevant part that "[a] party may move that a prospective witness be deposed in order to preserve testimony for trial. The court may grant the motion because of exceptional circumstances and in the interest of justice." As the word "may" signifies, the district court "retains broad discretion" in deciding whether to grant a Rule 15(a)(1) motion. *United States v. Dillman*, 15 F.3d 384, 389 (5th Cir. 1994); *see also United States v. Pham*, No. 12-cr-423, 2015 WL 7871348, at *1 (S.D.N.Y. Dec. 4, 2015).

Rule 15(a)(1) permits a movant to take the deposition of a witness upon a showing that "(1) the prospective witness is unavailable for trial, (2) the witness' testimony is material, and (3) the testimony is necessary to prevent a failure of justice." *United States v. Cohen*, 260 F.3d 68, 78 (2d Cir. 2001). Rule 15(a)(1)'s requirement that only "exceptional circumstances" justify the taking of a deposition in a criminal case signifies that "only in extraordinary cases will depositions be compelled." *Dillman*, 15 F.3d at 389. The moving party—here, Menendez—bears the burden of making this showing. *See United States v. Whiting*, 308 F.2d 537, 541 (2d Cir. 1962).

## II. DISCUSSION

### A. Prong One: Unavailability of Witnesses

"Unavailability is to be determined according to the practical standard of whether under the circumstances the [defendant] has made a good-faith effort to produce the person to testify at trial." *United States v. Johnpoll*, 739 F.2d 702, 709 (2d Cir. 1984).

Menendez represents that the three Qatari Investment Company individuals will not voluntarily testify at the trial, which has already commenced. (*See* ECF No. 360 at 4.) Moreover, the three men all reside in the United Kingdom, *see id.*, which is beyond this Court's subpoena power, and the Government does not dispute that they are unavailable for the purposes of this motion. (*See* ECF No. 369 at 6 n.2.) Therefore, Menendez has satisfied the first prong of the Rule 15 analysis.

### B. Prong Two: Materiality of Potential Testimony

In order for evidence to meet the Rule 15 materiality threshold, it must be "highly relevant to a central issue in the case." *United States v. Grossman*, No. 03-cr-1156, 2005 WL 486735, at *3 (S.D.N.Y. Mar. 2, 2005) (quoting *United States v. Drogoul*, 1 F.3d 1546, 1556 (11th Cir. 1993)). It is not enough for the anticipated testimony to be "merely relevant." *United States v. Abu Ghayth*, No. 98-cr-1023, 2014 WL 144653, at *2 (S.D.N.Y. Jan. 15, 2014). Rather, the movant must make a showing that "the evidence would enable the defendant to alter the quantum of proof significantly in her favor." *United States v. Lafontaine*, No. 98-cr-251, 2000 WL 890380, at *2 (S.D.N.Y. July 5, 2000).

Menendez has failed to meet Rule 15's materiality threshold. In attempting to establish that the testimony would be "highly relevant to a central issue in the case," Menendez summarizes four statements the Qatari Investment Company's COO made during an interview with the Government, and claims that these statements "contradict[] the government's allegations." (ECF No. 360 at 2.) But these four categories of allegedly exculpatory information are not directly taken from the materials Menendez cites; there is a gap between the statements themselves and the conclusions that Menendez draws from those statements. For example, the COO stated that the Qatari Investor "had no sense of whether [the Qatari Investor] knew Menendez." (ECF No. 361, Ex. 1 at 6.) To Menendez, this means that "Senator Menendez has no connection to the Edgewater Development Project, the Qatari Investment Company, or the Qatari Investor." (ECF No. 360 at 2.) However, it could just as easily indicate a gap in the COO's knowledge that exists because of meetings that the COO did not participate in or activity between the Qatari Investor and Menendez, or simply information that the Qatari Investor chose not to pass on to the COO.

The same is true of the limited attorney proffers provided by counsel for the Qatari Investor and the GC: Menendez draws conclusions from these documents that are not

borne out by the content of the proffers themselves. For example, Menendez claims that on the basis of the proffer statements of the GC and the Qatari Investor, "Senator Menendez had no involvement in the consideration of the Edgewater Development Project." (ECF No. 360 at 2-3.) However, the GC merely notes that he "had no knowledge of involvement of [Menendez]," not that Menendez was in fact uninvolved. (ECF No. 361, Ex. 2.) Moreover, the Qatari Investor notes that he actually was greeted by Menendez at a meeting with Daibes about the Edgewater Development Project and simply has "no recollection" as to whether the Edgewater Development Project or demands came up while Menendez was there. (*Id.*, Ex. 3.)

While no authority "bars this Court from relying solely on the basis of the [defendant's] representations in order to find that the materiality prong is satisfied," no authority mandates such reliance, either. *United States v. Vilar*, 568 F. Supp. 2d 429, 440 (S.D.N.Y. 2008). Where, as here, the defendant's representations are assertedly based on corroborating evidence, but that allegedly corroborating evidence does not bear the weight of the defendant's representations, this Court finds that the defendant has failed to make the required showing of materiality.

Moreover, even if one were to take each of Menendez's four conclusions as true, and the three witnesses were to testify precisely as Menendez asserts they would, Menendez would still fall short of the Rule 15 materiality threshold. At the core of what the Government must prove in the "Qatar scheme" it alleges in the Indictment is "that Daibes *expected* Menendez to take official action to benefit Qatar and that Menendez *was aware* of that expectation and accepted payment in exchange for doing so, or the promise to do so." (ECF No. 369 at 12.) The focus, then, is on the contemporaneous beliefs of Daibes and Menendez. But *none* of what Menendez seeks to elicit from the three Qatari Investment Company individuals bears on the contemporaneous beliefs of Daibes and Menendez. Rather, the statements reflect at most the intentions and objectives of the three individuals themselves and, perhaps, of the Qatari Investment Company. As these intents and objectives say nothing of what Daibes and Menendez's contemporaneous beliefs were, they are immaterial to the charges and come nowhere near "alter[ing] the quantum of proof significantly" in Menendez's favor. *Lafontaine*, 2000 WL 890380, at *2.

The Court finds that the prospective witnesses' testimony does not meet the materiality threshold of Rule 15, and Menendez has thus failed to meet the second prong of the Rule 15 analysis.

Since Menendez must make a successful showing on each of the three prongs to the Rule 15 analysis in order to prevail on his motion, and he has not met the required showing on the second prong—materiality—Menendez's Rule 15 motion fails. However, the Court will nevertheless proceed to analyze the third prong.

### C. Prong Three: Interest of Justice

As noted above, Rule 15 requires not only that exceptional circumstances be present, but also that the depositions be "in the interest of justice." Since the Court has found that the witnesses' potential testimony is not material, it follows that the testimony is not necessary to prevent a failure of justice. Moreover, there is a recognized interest of justice factor present here that militates against granting the motion: the potential delay in trying the matter. *See United States v. Alexandre*, No. 22-cr-326, 2022 WL 9843495, at *3 (S.D.N.Y. Oct. 17, 2022). While Menendez attests that depositions in the United Kingdom can be arranged in a matter of weeks, the Government asserts that letters rogatory, which the Government represents will be required in this case—where Menendez's attorneys have stated that the witnesses will oppose any effort to take their depositions—typically take months to arrange. (*See* ECF No. 369 at 6, 17-18.) Certainly, if the witnesses oppose the motion through court proceedings in London, the time until the depositions take place becomes further elongated. Regardless, there is a realistic possibility, even a likelihood, of having to pause the trial—which began three days ago—or even adjourning it for a lengthy period during trial, endangering the maintenance of the jury.

The Court finds that the anticipated testimony of the three individuals is not necessary to prevent a failure of justice, and that Menendez has failed to carry his burden on the third prong of the of the Rule 15 analysis.

### III. CONCLUSION

Menendez has failed to meet his burden to show that exceptional circumstances exist and that it is in the interest of justice to grant his motion to take the depositions of the Qatari Investor, the COO, and the GC in London. Accordingly, Menendez's motion to take Rule 15 depositions is denied.

Dated: New York, New York
　　　　May 16, 2024

　　　　　　　　　　　　　　　　　　SO ORDERED:

　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　Sidney H. Stein, U.S.D.J.