

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

---

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

June 2, 2024

**By ECF**

The Honorable Sidney H. Stein
United States District Judge
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007

      Re:    *United States v. Robert Menendez, et al.*,
              S4 23 Cr. 490 (SHS)

Dear Judge Stein:

      The Government respectfully writes in the above-captioned matter in opposition to defendant Robert Menendez's letter motion, dated May 31, 2024 (Dkt. 431 ("Menendez Ltr.")), to strike Government Exhibit 3D-2 and all testimony concerning it. This motion is highly belated, and even if considered timely, fails for multiple reasons.

      I.      Background

           A.     *The Exhibit*

      Government Exhibit ("GX") 3D-2 was offered by the Government and admitted into evidence on May 21, 2024—10 days before Menendez filed his motion—during the direct examination of Jamela Maali. (Trial Tr. 1002.)

      GX 3D-2, which is enclosed herewith as Exhibit A, is an email, dated September 17, 2019. The email itself is devoid of any content, but indicates that, on that day, (a) Menendez sent defendant Fred Daibes the text of what appeared to be certain legislation, and (b) within less than two hours, Daibes forwarded the email to Ms. Maali. The legislation is titled the Eastern Mediterranean Security and Energy Partnership Act of 2019. The text of the legislation, as contained in an attachment to the email, does not indicate whether it had been introduced, or ever would be, in the Senate; does not contain the name of any particular Member of Congress; and does not indicate any role Menendez may or may not have had, or any position he may or may not have taken, concerning the legislation.

Honorable Sidney H. Stein
June 2, 2024
Page 2

        B.    *The Pre-Admission Provision of the Exhibit to the Defendants and the Sole Objection Raised*

GX 3D-2 was provided to the defendants in discovery long before trial and was provided to the defendants in marked form well before trial.

GX 3D-2 was then specifically identified, in writing, to the defendants by the Government on May 15, 2024—six days before it was offered—as an exhibit that the Government intended to offer during Ms. Maali's direct examination. Menendez did not raise a Speech or Debate Clause objection to this exhibit, but indicated, in separate correspondence regarding exhibits for the summary chart, that he might raise a relevance objection.

        C.    *The Admission of the Exhibit and the Testimony of Ms. Maali*

On May 21, 2024, as it had informed the defendants it would, the Government offered GX 3D-2 during the direct examination of Ms. Maali. Menendez objected on relevance grounds, and the Court overruled the objection and admitted the exhibit, subject to connection. (Trial Tr. 1002.) Menendez did not object on any other ground. Menendez did not object to the testimony of Ms. Maali concerning GX 3D-2, which did not touch upon legislative actions, if any, of Menendez concerning the pertinent legislation.

Following her testimony for the day, the Court discussed the exhibit with the parties, in light of Menendez's relevance objection. Menendez's counsel made no mention of the Speech or Debate Clause. After hearing argument, and reviewing the exhibit, the Court overruled the objection. (Trial Tr. 1011.)

        D.    *GX 1302 and the Testimony of Special Agent Coughlin*

GX 3D-2 was among the exhibits listed on GX 1302, a summary chart, which was offered and admitted during the direct examination of Special Agent Michael Coughlin. Menendez had previously objected to multiple entries and/or the underlying exhibits to such entries on this chart on Speech or Debate Clause grounds (*see, e.g.*, Dkt. 406), but he did not object to the inclusion of GX 3D-2 on that ground.

On May 29, 2024, Special Agent Coughlin testified, without objection, concerning GX 3D-2. He also testified about the communications that occurred following GX 3D-2, namely that, after Daibes received what appeared to be legislation from Menendez, Daibes forwarded it to defendant Wael Hana, who appeared to forward it to Egyptian official Ahmed Helmy. (Trial Tr. 1463-65.)

        E.    *Menendez's Subsequent Objection*

The following day, May 30, 2024, Menendez's counsel stated that they had done some "digging" and had learned "last night" that the legislation had been sponsored by Menendez, and accordingly they now objected on Speech or Debate Clause grounds to GX 3D-2 and all testimony concerning it. (Trial Tr. 1510.)

The next day, May 31, 2024, Menendez filed his motion to strike. (Dkt. 431.)

Honorable Sidney H. Stein
June 2, 2024
Page 3

II. Discussion

As an initial matter, contrary to Menendez's letter motion (Menendez Ltr. 1), and as the Government informed Menendez's counsel both before they raised their Speech or Debate Clause objection in court and again after they filed their letter motion, the Government was *not* aware that the pertinent legislation had been sponsored by Menendez when it offered GX 3D-2. Nor was this exhibit offered to show such sponsorship, or even that it was pending—and the Government's awareness or lack thereof of facts outside of the record and nowhere mentioned in the exhibit is legally irrelevant to whether the exhibit was properly admitted into evidence. Were the rule otherwise, a document pertaining a legislative act could not be admitted in redacted form, because the offering party would know what was under the redaction. That is not the law. *See United States v. Helstoski*, 442 U.S. 477, 488 n.7 (1979) (the Speech or Debate Clause does not prohibit "excising reference to legislative acts"). In any event, Menendez's objection should be rejected for multiple reasons.

*First*, it is highly belated. As described above, Menendez was aware of the Government's intention to offer GX 3D-2 for weeks, and specifically aware that the Government intended to do so during Ms. Maali's direct examination six days prior to the exhibit being offered. Yet Menendez—who otherwise has been hyper-attuned to alleged violations of the Speech or Debate Clause—raised such an objection to GX 3D-2 *nine days after* it was offered, and also subsequent to its inclusion on a summary chart that was heavily litigated and revised at his request and over the Government's objection.

In making this belated objection, Menendez's counsel represented that they first learned of his sponsorship of the legislation on May 29, 2024. (Trial Tr. 1510.) But Menendez himself is far and away the best source of what he did and did not do in the Senate. His objection is therefore untimely. *See United States v. Yu-Leung*, 51 F.3d 1116, 1120 (2d Cir. 1991) ("To be timely, an objection must be made as soon as the ground of it is known, or reasonably should have been known to the objector." (internal quotation marks omitted; alterations incorporated)). This untimeliness matters, because what Menendez now seeks is to strike an exhibit in its entirety, require material redaction of another exhibit (GX 1302, the summary chart), and strike the testimony of multiple witnesses, long after they left the witness stand and the Government had the ability to engage with the Court and revise its presentation of evidence should that prove necessary. Menendez is not entitled to such a windfall.

Indeed, the unfair prejudice to the Government would be even more serious because the Government also intends to elicit testimony about GX 3D-2 from a Menendez staff member (who is referred to the Indictment as the "SFRC staffer," *see* Indictment ¶ 37(f))), who may testify as soon as tomorrow, Monday, June 3, 2024, in late afternoon. That staff member is not going to be asked on direct examination about Menendez's sponsorship of or other legislative activity concerning the legislation in the exhibit, but rather certain sentences in the legislation, in light of Menendez's relevance objection and arguments that the legislation does not bear on Egypt. However, Menendez's objection is far broader, and, if accepted, may require revising this witness's examination just before the witness testifies. Avoiding this kind of disruption to the Government's efficient and effective presentation of evidence is precisely why the Government has been repeatedly requesting Menendez to provide objections to the Government's exhibits materially *before* a witness testifies, not only once an exhibit is offered, much less more than a week later. Countenancing a contrary approach would encourage gamesmanship, whereby a party

Honorable Sidney H. Stein
June 2, 2024
Page 4

could not object to certain evidence or only object on a particular ground, and then, depending on its view of how impactful the evidence was, move to strike it on another ground and leave the other party without recourse.

*Second*, even if the Court were to overlook the untimeliness of Menendez's objection, it should reject the objection on the merits. As an initial matter, to the extent that Menendez appears to suggest that the mere fact that a document or communication might be connected to a legislative act, or could be read to suggest one occurred, the communication is barred (Menendez Ltr. 2), he is wrong. Rather, as the Government explained during oral argument in response to Menendez's objection, the transmission outside of Congress of information concerning or relating to a legislative act is not *itself* a legislative act. *See, e.g.*, *Hutchinson v. Proxmire*, 443 U.S. 111, 133 (1979) ("The other sense of the term [informing], and the one relied upon by respondents, perceives it to be the duty of Members to tell the public about their activities. Valuable and desirable as it may be in broad terms, the transmittal of such information by individual Members in order to inform the public and other Members is not a part of the legislative function or the deliberations that make up the legislative process."); *Doe v. McMillan*, 412 U.S. 306, 313-14 (1973) ("Nor does the Speech or Debate Clause protect a private republication of documents introduced and made public at a committee hearing, although the hearing was unquestionably part of the legislative process."); *cf. Gravel v. United States*, 408 U.S. 606, 625-26 (1972) ("Here, private publication [of materials introduced into a subcommittee record] by Senator Gravel through the cooperation of Beacon Press was in no way essential to the deliberations of the Senate; nor does questioning as to private publication threaten the integrity or independence of the Senate by impermissibly exposing its deliberations to executive influence. The Senator had conducted his hearings; the record and any report that was forthcoming were available both to his committee and the Senate."); *see generally United States v. Brewster*, 408 U.S. 501, 514 (1972) ("only acts generally done in the course of the process of enacting legislation [are] protected").

However, the Court need not determine precisely where the law draws the line to reject Menendez's claim, because GX 3D-2 does not reference a legislative act *at all*. Nothing in the exhibit indicates that the pertinent legislation had even been formally proposed, much less was pending. To be sure, it would be fine even if the exhibit so stated. *See, e.g.*, *Brewster*, 408 U.S. at 527 (bribery charge resting on payment in exchange for the official's "action, vote and decision on postage rate legislation which had been pending before him in his official capacity"); *cf., e.g.*, *United States v. Williams*, 644 F.2d 950, 952 (2d Cir. 1981) (rejecting argument that the Clause barred introduction of a video of a defendant's "discussion of a proposed immigration bill with the undercover agent"). But the exhibit does not even say that. It merely shows that Menendez forwarded what appears to be legislation to Daibes.

Menendez's assertion that, notwithstanding this fact, the only inference that the jury could draw from GX 3D-2 is that he previously "introduced or otherwise supported" the legislation (Menendez Ltr. 1) is strained, at best. The very fact that his counsel had to do "digging" outside of the record to discern Menendez's role proves this point. (*See* Trial Tr. 1510.) The far more natural inference—and the one the Government intends to ask the jury to draw—is not that Menendez forwarded the legislation to Daibes to demonstrate to Daibes what, if anything, Menendez had already done, which was both publicly available and of little consequence, but rather to indicate what Menendez *could or would* do if he were paid, *i.e.*, get the legislation, or similar legislation, passed. Indeed, the forwarding, in turn, of the same legislation to Hana, and then Helmy, demonstrates that that is precisely what Menendez was conveying and Daibes and

Honorable Sidney H. Stein
June 2, 2024
Page 5

Hana understood. And, as a matter of law, that is not protected conduct. *See, e.g.*, *Helstoski*, 442 U.S. at 489 ("Promises by a Member [of Congress] to perform an act in the future are not legislative acts."); *see also id.* at 490 ("A promise to deliver a speech, to vote, or to solicit other votes at some future date is not 'speech or debate.'").

In short, GX 3D-2 contains no "mention of a legislative act" at all, *id*. at 490. Menendez's belated Speech or Debate Clause objection, which would result in him receiving an unfair windfall, should be overruled.

        Respectfully submitted,

        DAMIAN WILLIAMS
        United States Attorney

By:    s/ Daniel C. Richenthal
        Eli J. Mark
        Daniel C. Richenthal
        Paul M. Monteleoni
        Lara Pomerantz
        Catherine E. Ghosh
        Assistant United States Attorneys
        (212) 637-2431/2109/2219/2343/1114
        Christina A. Clark
        Special Assistant United States Attorney
        (202) 307-5191

Enclosure

cc:    (by ECF)

        Counsel of Record