

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

June 3, 2024

**By ECF**

The Honorable Sidney H. Stein
United States District Judge
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007

      Re:    *United States v. Robert Menendez, et al.*,
              S4 23 Cr. 490 (SHS)

Dear Judge Stein:

      The Government respectfully writes in the above-captioned matter to identify for the Court and seek the resolution of objections raised by defendant Robert Menendez to two exhibits the Government intends to present in connection with the direct testimony of a professional staffer on the Senate Foreign Relations Committee ("Staffer-1") who is expected to be the next witness after Ted McKinney, and may testify as early as today, Monday, June 3, 2024, in the late afternoon.

    I.    **Staffer-1's Expected Testimony**

      The Government expects to call Staffer-1 to testify as its next witness. Staffer-1 (who is referred to the Indictment as the "SFRC staffer," *see* Indictment ¶ 37(f)) is a former foreign policy advisor in Menendez's personal Senate office, and since early 2018 has been a professional staffer on the Senate Foreign Relations Committee ("SFRC"), where the staffer reported to Menendez while he served as Ranking Member and then Chair of the SFRC. Staffer-1 was responsible for a regional policy portfolio that included Egypt and Qatar from late 2018 through early 2022. In that capacity, Staffer-1 attended meetings with Menendez and foreign officials, and prepared materials for him for those meetings.

      As alleged in the Indictment, and as the evidence at the trial has shown (*see*, *e.g.*, GX 1302 at p.94 (lines 1228-38)), in or about the fall of 2021, Menendez and Nadine Menendez communicated with Mai Abdelmaguid (referred to the Indictment as "Egyptian Official-4") to arrange and plan a trip for Menendez and Nadine Menendez to Egypt, which they took in or about October 2021. (*See also* Indictment ¶ 37(f)). After Abdelmaguid became unhappy with how the trip was planned, she complained to Nadine Menendez, via text message, about Staffer-1, and then Nadine Menendez forwarded that text message to Menendez. (*Id.*; *see also* GX 1302 (lines 1233-34).)

Honorable Sidney H. Stein
June 3, 2024
Page 2

As is relevant to this letter, Staffer-1 is expected to testify, in sum and substance, that (1) Staffer-1 and another professional staffer on the SFRC ("Staffer-2") worked to plan the October 2021 congressional delegation ("CODEL") to Egypt and Qatar; (2) in approximately late September 2021, Staffer-2 called Staffer-1 with a request from Menendez that Staffer-1 coordinate planning of the CODEL with Abdelmaguid; (3) because of confusion regarding the name, they thought the individual was a male named "Abdel" with the last name "Maguid," not Mai Abdelmaguid, and, after contacting the Egyptian Embassy, were not able to locate the person by that name at the embassy; (4) Staffer-1 did not reach out to Abdelmaguid to plan the CODEL, and proceeded to plan the CODEL with the State Department; (5) on October 1, 2021, pursuant to Menendez's instructions, Staffer-2 told Staffer-1 not to attend the CODEL because certain Egyptian officials had said that Staffer-1 would not schedule a meeting for Menendez and the President of Egypt; and (6) Staffer-1 then met with Menendez, during which meeting Menendez stated that he had heard from two Egyptian officials, including the Egyptian Ambassador, that Staffer-1 would not schedule a meeting for Menendez with the President of Egypt, and Staffer-1 told Menendez that that information was false.

On Saturday, June 1, 2024, the Government received objections from counsel for Menendez to certain exhibits the Government had indicated that it intends to introduce in connection with Staffer-1's direct testimony.[1] The Government substantively replied by email and, yesterday early afternoon, conferred with counsel for Menendez for over an hour regarding their objections. Based on those conversations, which were very productive, the Government made certain redactions to exhibits and/or will defer offering certain other exhibits, and the Government understands that Menendez no longer is pressing certain other objections. While these good faith negotiations helped narrow the matters that require the Court's attention, the following limited matters remain.

II. **Menendez's Objections to Two Exhibits to be Offered in Connection with Staffer-1's Testimony**

As of the time of filing this letter, the Government understands that Menendez intends to object to one exhibit and a portion of a second exhibit that the Government intends to offer in connection with Staffer-1's testimony. Those exhibits are discussed in greater detail below, and Menendez's objections to those exhibits principally concern hearsay. None of the objections, as the Government understands them, pertain to the Speech or Debate Clause. For the reasons below, the objections should be overruled.

A. **GX 8F-22 (Text Message Exchange Between Staffer-1 and Staffer-2)**

Menendez has indicated that he intends to object to a portion of GX 8F-22, which is a text message chain from September 27, 2021 to October 4, 2021, between Staffer-1 and Staffer-2,

---

[1] In an effort to resolve any objections pertaining to the testimony of Staffer-1 sufficiently in advance of Staffer-1's testimony, late in the evening on Tuesday, May 23, 2024, the Government disclosed the exhibits it was planning to offer with Staffer-1. Yesterday, the Government informed defense counsel that Staffer-1 was expected to be the next witness to testify after McKinney, and Menendez thereafter informed the Government of objections to certain specific exhibits.

regarding the planning of the October 2021 CODEL to Egypt and Qatar. The text message chain relates to, among other things, logistical details involved in the planning and preparation of the trip, such as: (1) dates of the trip, notification to the State Department regarding the trip, and preparation of an itinerary; (2) on September 27, 2021, Staffer-2 sending the contact information for Abdelmaguid, so Staffer-1 could contact Abdelmaguid in connection with the planning of the trip; and (3) on October 1, 2021, Staffer-1 and Staffer-2's exchange very shortly after Staffer-2 called Staffer-1 to convey the directive from Menendez that Staffer-1 was not to attend the CODEL following statements Egyptian officials made to Menendez about Staffer-1, which Staffer-1 explained were not accurate.[2]

Based on the parties' discussion earlier today, the Government has implemented certain redactions to that text message chain, and the Government understands that the only relevant portion that is in dispute are two messages on October 1, 2021. GX 8F-22 is attached as Exhibit A, and the relevant portion in dispute, which is on the last page, has an orange box around it that was added for ease of the Court's review. Prior to the messages in dispute, on October 1, 2021, Staffer-2 had communicated Menendez's directive to Staffer-1 not to attend the CODEL, and Staffer-1 replied that Menendez had inaccurate information because Staffer-1 had not told Egyptian officials that Menendez would not meet with the President of Egypt. The two messages in dispute come after those events. In particular, Staffer-2 texted, "All of this Egypt stuff is very weird, I've never seen anything like it. Lets see if I can talk to him about it again over the weekend and get him to a better place," and Staffer-1 responded, "Thanks."

All of the text messages in GX 8F-22, including these two messages, are either non-hearsay or subject to a hearsay exception. These text messages were exchanged between two professional staffers (*i.e.*, Staffer-1 and Staffer-2) who reported to Menendez regarding the planning of the CODEL at his direction. As such, and consistent with the Court's overruling of certain objections to exhibits reflected in GX 1302 of emails exchanged among SFRC staff, these text messages fall within the hearsay exception for agent statements. *See, e.g.*, *Pappas v. Middle Earth Condominium Ass'n*, 963 F.2d 534, 537 (2d Cir. 1992) ("liberal treatment [of] proof" of agency "is accorded" under Rule 801(d)(2)(D)); *In re Reserve Fund Secs. & Derivs. Litig.*, No. 09 Civ. 4346 (PGG), 2012 WL 12354233, at *7 (S.D.N.Y. Oct. 3, 2012) ("Where an individual defendant controls the entity that employs the declarant, and is the declarant's ultimate supervisor, the employee is an agent of the defendant for purposes of F.R.E. 801(d)(2)(D), and his statements are admissible against that individual defendant." (citing *United States v. Rioux*, 97 F.3d 648, 660 (2d Cir. 1996))).

These statements concern Menendez's priorities and desired actions concerning the CODEL to Egypt, which both Staffer-1 and Staffer-2 had the authority to implement and act upon, and indeed, the statements related to Menendez's unusual conduct in his supervision of just such actions by the staffers. Accordingly, the agents clearly had "the authority to take action about which the statements relate." *Pappas*, 963 F.2d at 537; *see id.* ("The authority granted in the agency relationship need not include authority to make damaging statements, but simply the

---

[2] The text messages are photographs from the phone of Staffer-1; the messages from Staffer-1 are on the right, and the messages from Staffer-2 are on the left. This text message chain was provided by the SFRC in response to a voluntary request, and was reviewed by Menendez for any potential Speech or Debate Clause claim prior to being provided to the Government.

authority to take action about which the statements relate."). That these statements may reflect negatively on Menendez's actions with respect to Egypt does not mean that they are outside the hearsay exception—on the contrary, it means that the policies supporting the exception are at their zenith. As the Second Circuit has held in words directly applicable to this situation, "Liberal admissibility of this sort of proof is grounded on certain premises. One is that an employee is usually the person best informed about certain acts committed in the course of his employment, and another is that while still employed *an employee is unlikely to make damaging statements about his employer, unless those statements are true*." *Id.* (emphasis added); *see also, e.g.*, *United States v. Yildiz*, 355 F.3d 80, 82 (2d Cir. 2004) ("[F]ew principals employ agents for the purpose of making damaging statements."); *Weaver v. Bloomberg L.P.*, No. 22 Civ. 8201 (PAE), 2024 WL 693166, at *11 (S.D.N.Y. Feb. 20, 2024) ("That the statements are detrimental, not helpful, to [the employer's] interests does not impede their admission under Rule 801(d)(2)(D)."). Thus, even statements that could be characterized as an agent's "private musings" have been admitted when the agent is "speaking as to a matter that matches the subject matter of her job description." *In re Reserve Fund Secs. & Derivs. Litig.*, 2012 WL 12354233, at *7 (internal quotation marks omitted). So too here.

In addition, the first portion of Staffer-2's text message (*i.e.*, "All of this Egypt stuff is very weird, I've never seen anything like it") also is admissible under other hearsay exceptions, including as a present sense impression and/or state of mind, Fed. R. Evid. 803(1) and (3), as well as to provide context for Staffer-2's later plan of action (which is not a hearsay statement) that Staffer-2 would "talk to him [*i.e.*, Menendez] again over the weekend and get him to a better place." The first portion of Staffer-2's text messages also provides context for Staffer-1's response of appreciation ("Thanks"), and also Staffer-1's subsequent relationship with Menendez, which is relevant to the jury's assessment of Staffer-1's credibility. *See United States v. Ho*, 984 F.3d 191, 208 (2d Cir. 2020) (quoting *United States v. Pedroza*, 750 F.2d 187, 200 (2d Cir. 1984)) ("'When statements by an out of court declarant are admitted as background, they are properly so admitted not as proof of the truth of the matters asserted but rather to show the circumstances surrounding the events, providing explanation for such matters as the understanding or intent with which certain acts were performed.'"); *United States v. Gehl*, No. 93 Cr. 300, 1995 WL 54401, at *17 (S.D.N.Y. Feb. 2, 1995) (permitting testimony on "predicate information, which caused an investigation to be launched" because it was offered only to show why certain subsequent actions were taken in connection with the investigation). The rule permitting non-hearsay uses, of course, applies with full force "even where, as here, the contested statements also relate to the underlying issues of the case." *Leser v. U.S. Bank Nat. Ass'n*, No. 09 Civ. 2362, 2012 WL 6738402, at *5 (E.D.N.Y. Dec. 29, 2012).

### B. GX 3A-8 (Email Request for Meeting with Qatari Officials)

Menendez has indicated that he intends to object to GX 3A-8, a January 2021 email from Menendez's scheduler and deputy chief of operations ("Staffer-3") to Staffer-1 and another SFRC staffer ("Staffer-4"), which communicated that Menendez had agreed to a meeting with two Qatari officials (referred to in the Indictment as "Qatari Official-1" and the "Qatari Investor" (*see, e.g.*,

Indictment ¶¶ 56, 57, 64)). The email attaches biographies of the two Qatari individuals.[3] This email, which is attached as Exhibit B, is both highly relevant and admissible.

The cover email from Staffer-3 to Staffer-1 and Staffer-4, which communicates that Menendez agreed to meet with the two Qatari officials, is admissible under the hearsay exception for agent statements. *See, e.g.*, *Pappas*, 963 F.2d at 537 ("liberal treatment [of] proof" of agency "is accorded" under Rule 801(d)(2)(D)). The biography attached to Staffer-3's email is part of Staffer-3's communication to Staffer-1 and Staffer-4 and is necessary to indicate to the recipients of the email the names of the two Qatari officials that Menendez agreed to meet, because Staffer-3 did not reference them by name in the body of the email. Indeed, the email reflects that Staffer-3 was passing on the attached biographies for the purpose of informing Staffer-1 and Staffer-4 (who was then the senior most staffer on the SFRC) of the identities of the two Qatari officials.

The Government understands that Menendez may nonetheless object that the biographies for the two Qatari officials reflect inadmissible hearsay describing the nature of their positions with the Qatari government. As an initial matter, the biographies for the two Qatari officials are admissible both because Menendez, by accepting the meeting on the premise that these individuals were Qatari officials, "manifested" that he "believed [them] to be true," Fed R. Evid. 801(d)(2)(B), and/or under the hearsay exception for directory information or other similar compilations that are generally relied on, as this sort of introductory biographical email is, *see* Fed. R. Evid. 803(17) ("Market quotations, lists, *directories, or other compilations* that are generally relied on by the public or *by persons in particular occupations*." (emphasis added)).[4] However, even if the Court were to hold that this information did not meet either exclusion or exception, it would still be relevant and admissible not for its truth, but to help establish that Menendez believed that Qatari Official-1 and the Qatari Investor were affiliated with the Qatari government, which is a disputed issue at trial. Although Menendez was not on this email, it was sent by Staffer-3 (who served as Menendez's scheduler and the staffer who compiled briefing materials for Menendez for his meetings with foreign officials), and it supports that Menendez believed that Qatari Official-1 and the Qatari Investor were affiliated with the Qatari government.[5] The Government has no objection to an appropriate limiting instruction if the email is admitted not for its truth (*i.e.*, not under a hearsay exclusion or exception).

---

[3] This email was provided to the Government by Menendez's personal Senate office in response to a grand jury subpoena, and was reviewed by Menendez for any potential Speech or Debate Clause claim prior to being provided to the Government.

[4] The Court can readily conclude based on the context of this email, the accompanying biographies, and Menendez's acceptance of the meeting that introductory biographies of this sort are routinely relied on by persons in Congressional offices.

[5] That Menendez was not on the email goes to the weight of the evidence, not to its relevance and admissibility.

Honorable Sidney H. Stein
June 3, 2024
Page 6

                                                     Respectfully submitted,

                                                     DAMIAN WILLIAMS
                                                     United States Attorney

By:     s/ Eli J. Mark
           Eli J. Mark
           Daniel C. Richenthal
           Paul M. Monteleoni
           Lara Pomerantz
           Catherine E. Ghosh
           Assistant United States Attorneys
           (212) 637-2431/2109/2219/2343/1114
           Christina A. Clark
           Special Assistant United States Attorney
           (202) 307-5191

Enclosures

cc:     (by ECF)

       Counsel of Record