

June 24, 2024

<u>VIA ECF</u>

Hon. Sidney H. Stein
United States District Judge
Southern District of New York
500 Pearl Street, Courtroom 23A
New York, NY 10007

Re:    <u>United States v. Menendez et al.</u>, No. S4 23 Cr. 490 (SHS)

Dear Judge Stein:

We write to address the government's June 23 letter (ECF No. 480), in which it (i) misstates the elements of the charged obstruction counts; and (ii) seeks relief for which there is neither a need nor a compelling legal basis.

**I.      The Government Must Prove An Intent To Obstruct the Grand Jury**

The government's letter alludes to the "longstanding principle that obstruction of justice . . . requires proof that the defendant intended to obstruct [a grand jury] proceeding," but then proceeds to argue that such proof is actually ***not*** required; it argues that the jury can simply infer the requisite intent from evidence of (i) a false statement by the defendant; and (ii) the defendant's knowledge of the existence of a related grand jury investigation.  *See* ECF No. 480 at 2-3.  Both the Supreme Court and the Second Circuit have squarely rejected the government's theory.  *See United States v. Aguilar,* 515 U.S. 593, 601 (1995) (rejecting the government's contention that "[b]ecause respondent knew of the pending [grand jury] proceeding" his alleged false statements to law enforcement "are analogous to those made directly to the grand jury itself"); *United States v. Schwarz*, 283 F.3d 76, 109 (2d Cir. 2002) ("At best, the government proved that Bruder, knowing of the existence of a federal grand jury investigation, lied to federal investigators regarding issues pertinent to the grand jury's investigation. <u>The government has therefore failed to offer sufficient evidence of Bruder's intent to obstruct the federal grand jury</u>") (emphasis added).

Judge Furman's analysis in a recent decision overturning an obstruction conviction is instructive.  *See United States v. Schulte,* No. 17-CR-548 (JMF), 2023 WL 5561141, at **3-7 (S.D.N.Y. Aug. 29, 2023).  There, the defendant himself was interviewed by law enforcement or Assistant United States Attorneys on three occasions.  *Schulte*, 2023 WL 5561141, at *3.  Immediately following the first interview, the defendant was served with grand jury subpoenas concerning the

1

subjects of the interview, and was then interviewed two more times. *Id.* The court found that "ample evidence" was presented at trial that the defendant lied at all three interviews, and likewise accepted that the defendant knew that a grand jury investigation existed at the time of at least the second and third interviews. *Id.* at *2, *7. Still, Judge Furman noted that, critically, "there is no evidence that the investigators gave [the defendant] any indication that they would repeat his statements to the grand jury." *Id.* at *7. Accordingly, citing *Schwarz* and *Aguilar*, Judge Furman overturned the obstruction conviction, concluding that "at best . . . the government proved that [the defendant], knowing of the existence of a federal grand jury investigation, lied to federal investigators regarding issues pertinent to the grand jury's investigation. Under *Aguilar*, that does not suffice." *Id.* (quoting *Schwarz*, 283 F.3d at 109) (emphasis added). This analysis applies with equal force here.

The government's three cited authorities are distinguishable. In each case cited by the government, the record contained actual evidence of the defendant's intent to obstruct a grand jury, not mere knowledge of the existence of a grand jury investigation. *See* ECF No. 480 at 3 (citing *United States v. Mangano*, No. 16-CR-540 (JMA), 2022 WL 2872670, at *11 (E.D.N.Y. July 20, 2022) (allegedly false statements were made at proffers held "in direct response to the grand jury subpoena" or "in lieu of grand jury testimony"); *United States v. Sutherland*, 921 F.3d 421, 428 (4th Cir. 2019) (defendant created false documents which "attempted to explain away transactions reflected in . . .documents" subject to a grand jury subpoena); *United States v. Fassnacht*, 332 F.3d 440, 451 (7th Cir. 2003) ("References to the grand jury interspersed among the defendants' conversations in which they continued to refine their cover story provide a rational basis on which the jury could have concluded . . . that the grand jury was in fact an object of their obstructive efforts")), *see also Schulte*, at *5 (rejecting *Sutherland*, a Fourth Circuit case, as contrary to binding Second Circuit law).[1] Here, by contrast, there is no evidence in the record that the at-issue proffer had any connection to a grand jury investigation, *nor* is there any evidence that Senator Menendez even *knew* there was a grand jury investigation at the time of the proffer (though, of course, that evidence by itself would not be sufficient to sustain a conviction).

## II.     The Requested Jury Instruction Would Unfairly Prejudice Defendants and Distort the Government's Burden

Because of the law cited above, the government is not entitled to the jury instruction it really wants: that false statements made in connection with a request not to indict are sufficient to

---

[1] *Quattrone* (cited in ECF No. 480 at 2-3) is even further afield. That case considered whether a defendant who destroyed evidence could be convicted on obstruction charges even without specific knowledge that the evidence was subject to a grand jury subpoena. *United States v. Quattrone*, 441 F.3d 153, 177 (2d Cir. 2006). The Second Circuit, unsurprisingly, found that destroying evidence that the defendant "had reason to believe were within the scope of the grand jury's investigation" was enough, even if the defendant lacked specific knowledge that the documents were within the scope of a grand jury subpoena. *Id.* But *Quattrone* says nothing of a situation like the one here, where the defendant allegedly causes a false statement to be made to prosecutors, without any concomitant evidence that he intend that same statement to reach the grand jury.

prove obstruction. So, instead, the government proposes that the Court provide the jury with the supposedly "neutral" instruction that, because of the close cooperation between prosecutors and the grand jury in investigating crime and returning indictments, the prosecutors and the grand jury are basically one-in-the-same. *See* ECF No. 480 at 4. The government does not cite any authority supporting the validity of such an instruction, and its request should be denied.

*First*, even accepting the government's recounting of how a grand jury operates, the record is utterly devoid of evidence that Senator Menendez was contemporaneously *aware* of such information. Accordingly, such facts are completely irrelevant to the issue before the jury here: assessing Senator Menendez's *intent* with respect to the grand jury (or lack thereof). Indeed, it is the government that has repeatedly made the argument as to other issues that any *defense-proffered* evidence lacking an immediate connection to a defendant's contemporaneous knowledge should be excluded. *See, e.g.*, ECF No. 478 at 4 (arguing for exclusion of evidence as to which, supposedly, "no defendant . . . would have had contemporaneous knowledge").

*Second*, the government's proffered instruction is contrary to law. As *Aguilar* and its progeny make clear, in the context of an obstruction charge, there is a crucial distinction between statements intended solely for a prosecutor and those intended for the grand jury. An irrelevant instruction on the close connection between prosecutors and grand juries would thus only serve to confuse the jury – on the one hand, the jury will be told they can't convict unless they find a specific intent to disrupt the grand jury; on the other hand, the jury will be told (apparently as some sort of extraneous "FYI") that the grand jury and the prosecutors are essentially opposite sides of the same coin. There is no way for the jury to reliably make sense of these contrary instructions.

*Third*, the objection to the question to Mr. Mearns which sparked this dispute was *sustained*. Mr. Mearns did not answer the question and the jury has repeatedly been instructed that questions are not evidence. There is thus no need to "clean up" the record with the government's proposed misleading instruction. In fact, the government objected – on Rule 403 grounds and otherwise – to *any* inquiry into the grand jury processes during Mr. Mearns testimony, and those objections were sustained. *See* Trial Tr. at 4286:5-4298:11. The government should not be permitted to reverse course now that it realizes it would prefer that the jury consider the grand jury's connection (if any) to the September 11, 2023 proffer.

                Very truly yours,

                /s/ *Adam Fee*
                Adam Fee
                Avi Weitzman

                *Attorneys for Defendant Robert Menendez*