

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

---

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

July 8, 2024

**By ECF**

The Honorable Sidney H. Stein
United States District Judge
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007

   Re:  *United States v. Robert Menendez, et al.*,
       S4 23 Cr. 490 (SHS)

Dear Judge Stein:

  The Government respectfully writes in the above-captioned matter in advance of the charging conference with respect to four discrete sections of the Court's proposed jury charge, which was transmitted by email to the parties yesterday. The Government is still reviewing the Court's overall instructions, and expects to have other comments and proposed revisions that it intends to raise orally at the conference. However, the Government writes at this time with respect to these four sections in the hope that providing these written comments will make for a more efficient conference. Specifically, the Government writes with respect to (1) the multiple conspiracies instruction, (2) the unanimity of theory instructions, (3) certain parts of the Section 219 instruction, and (4) a limited part of the obstruction of justice instruction.

  I.  <u>A Multiple Conspiracies Charge Is Not Warranted Under the Facts of This Case, But If It is Given, It Should be Revised</u>

  The Government believes that a multiple conspiracies instruction (proposed instruction 84) is not warranted in this case. *See United States v. Maldonado*, 922 F. 2d 934, 963 (2d Cir. 1990) (Where "only one conspiracy has been alleged and proved, the defendant[] [is] not entitled to a multiple conspiracy charge."); *United States v. Calabro*, 449 F.2d 885, 893 (2d Cir. 1971) ("[A] trial court is not required to charge on the issue of multiple conspiracies in every case where such a request is made."); *see also United States v. Jones*, 965 F.3d 149, 163 (2d Cir. 2020). "[T]o prove a single conspiracy, the government must show that each alleged member agreed to participate in what he knew to be a collective venture directed toward a common goal." *United States v. Geibel*, 369 F.3d 682, 689 (2d Cir. 2004) (internal quotation marks omitted). Even schemes involving "two or more phases or spheres of operation" may nevertheless amount to a single conspiracy, "so long as there is sufficient proof of mutual dependence and assistance" among the conspirators. *United States v. Berger*, 224 F.3d 107, 114-15 (2d Cir. 2000) (internal quotation marks omitted). And when the record "clearly show[s] only a single conspiracy," it does

Honorable Sidney H. Stein
July 8, 2024
Page 2

"not justify a multiple-conspiracy charge," even if the conspiracy happens to have "several interdependent phases." *Maldonado-Rivera*, 922 F.2d at 963.

For example, in *Maldonado-Rivera*, the alleged conspirators committed disparate criminal acts in different locations with different co-conspirators, but a multiple conspiracies instruction was nonetheless inappropriate because the conspiracy served a single overall goal, advanced in different phases, *see* 922 F.3d at 962-64—just as here Robert Menendez was bribed to further the Egyptian government's interests with regards to arms sales and financing and to protect the monopoly the same government awarded to IS EG Halal, from which promised bribes were then paid. More recently, the Second Circuit affirmed denial of a multiple conspiracy instruction in a fraud case where there were "two types of misrepresentations and two sets of victims," victimized by two "different set[s] of coconspirators," but "the two purported conspiracies involved the same goal" and centered on the same individual defendant. *United States v. Archer*, No. 22-539, 2023 WL 3860530, at *4 (2d Cir. June 7, 2023), *cert. denied*, 144 S. Ct. 694(2024). So too here, where the conspirators worked together to further the overarching criminal goal of bribing Menendez in exchange for his influence and power.

In short, here, for the reasons set forth in prior briefing (Dkt. 180, at 90-96), with highly interrelated and overlapping participants, actions, goals, and conduct, the conspiracy counts do not describe multiple conspiracies, and the evidence does not show multiple conspiracies. Put differently, a multiple conspiracies charge "is appropriate when the evidence shows separate networks operating independently of each other.'" *United States v. Dawkins*, 999 F.3d 767, 797 (2d Cir. 2021) (quoting *United States v. Barlin*, 686 F.2d 81, 89 (2d Cir. 1982)). That is not what the evidence shows here. The evidence shows there was only one "network," with Menendez at the center, which involved all of the trial defendants, and operated to seek to achieve multiple goals. That the conspiracy may have involved "several conversations among differing groups of people" is not enough to warrant a multiple conspiracies charge. *Dawkins*, 999 F.3d at 797.

To the extent that the Court nevertheless concludes that a multiple conspiracies charge is warranted, the Government requests certain small but critical changes to fully incorporate Second Circuit case law in this area, which is not captured by the model jury instruction at Sand et al., MODERN FEDERAL JURY INSTRUCTIONS, Instr. 19-5. This includes that there is no requirement that "the goals of all the participants be congruent for a single conspiracy to exist, so long as the participants agree on the 'essential nature' of the enterprise and 'their goals are not at cross purposes.'" *United States v. Eppolito*, 543 F.3d 25, 47-48 (2d Cir. 2008) (quoting *United States v. Beech-Nut Nutrition Corp.*, 871 F.2d 1181 (2d Cir. 1989)); *see also United States v. Williams*, 205 F.3d 23, 33 (2d Cir. 2000) (single conspiracy not transformed into multiple conspiracies "simply by lapse of time, change in membership, or a shifting emphasis in its locale of operations" (internal quotation marks omitted)).

It is also critical that the multiple conspiracies charge not inadvertently suggest that the mere fact that a scheme may have had multiple phases or sub-parts necessarily turns that scheme into multiple conspiracies. That also is not the law. *See, e.g.*, *Berger*, 224 F.3d at 114-15 ("[A] single conspiracy is not transformed into multiple conspiracies merely by virtue of the fact that it might involve two or more phases or spheres of operation"); *Maldonado-Rivera*, 922 F.2d at 963 (that a scheme had "several interdependent phases" does not turn it into separate conspiracies).

Honorable Sidney H. Stein
July 8, 2024
Page 3

Accordingly, the Government requests that, if the Court gives a multiple conspiracies charge, it give an instruction that incorporates the foregoing principles, as was done by Judge Gregory H. Woods in *United States v. Jamal Russell*, No. S1 16 Cr. 396, by Judge Robert W. Sweet in *United States v. Austin Romain*, No. 13 Cr. 724 (RWS), and by Judge Paul A. Engelmayer in *United States v. Jason Polanco*, No. 16 Cr. 826 (PAE). Judge Engelmayer's instruction is enclosed as Exhibit A, and a redline of the Court's proposed charge is enclosed as Exhibit B.

Finally, regardless of whether the Court gives a multiple conspiracies instruction, it should not be given for Count Fifteen, which charges a conspiracy for Menendez to act as a foreign agent, not to solicit or accept bribes for one or more purposes, and accordingly does not present any multiple conspiracies issue.

II.   The Proposed Unanimity of Theory Instructions Should be Revised

While the Government does not believe that an unanimity of theory instruction (proposed instructions 46 and 53) is necessary, the Government does not object to one based on the particular facts of this case. However, the proposed instruction states that, as to each of Counts Six and Seven, the Government "has alleged that the defendants engaged in two bribery schemes." That is not correct. In the Government's view, each of these counts describes—and the evidence proves—one integrated scheme. The Government accordingly requests that the instruction be revised to avoid the Court taking a position as to whether the counts describe one scheme or two schemes, and instead ask the jury to be unanimous as to whether it is (a) one scheme or (b) two schemes with one or both such schemes proven.

III.   The Proposed Section 219 Instructions Should be Revised

In the defendants' proposed instructions (Dkt. 353-1), the defendants included certain language from guidance issued in 2020 by the Department of Justice (the "Guidance"). *See The Scope of Agency Under FARA*, *available at* https://www.justice.gov/nsd-fara/page/file/1279836/dl (May 2020). The Guidance has no precedential value, is not binding authority, and has not been adopted as such by any court. *See generally Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 97 (2015) (guidance documents "do not have the force and effect of law"). Nevertheless, after coordinating with counsel for the defendants, the Government agreed to include in its proposed instructions certain language from the Guidance that was proposed by the defendants, which was also generally supported by the limited body of FARA case law. (*See* Dkt. 354, at 112.) However, in submitting their final proposed instructions, the defendants appeared to cherry-pick language from the Guidance in a manner that misrepresents the Guidance and provides a misleading definition of what is required for agency. The Government requests three minor modifications to the Court's proposed instructions in the interest of completeness and accuracy.

*First*, in proposed instruction 70, the Court accepted the defendants' addition of the following language: "Instead, the foreign principal making the ask must have some degree of authority over the agent." As the instruction currently reads, this "degree of authority" language appears incorrectly stated as an absolute rule and is devoid of necessary context. The Guidance finds support for this proposition in the U.S. Senate testimony of Philip B. Heymann, Assistant

Honorable Sidney H. Stein
July 8, 2024
Page 4

Attorney General for the Criminal Division.[1]  (*See* Guidance at 2-3.)  The jury instruction should follow suit.  Accordingly, consistent with that testimony and the Guidance, the Government requests that sentence sought by the defendants be merged with the next sentence, so the paragraph reads:

> Instead, the foreign principal making the ask must have some degree of authority over the agent, such that it is fair to draw the conclusion that an individual is not acting independently, such as by simply stating or following his own views, but is instead acting as an agent of the foreign principal.

*Second*, in proposed instruction 71, the Court accepted the defendants' addition of language indicating that there must be "some level of power by the principal over the agent."  Here too, the defendants appear to cite this principle as absolute without necessary context.  In discussing the "relevant factors" that would evince "some level of power," the Guidance sets out several "relevant," though not exclusive, factors for consideration.  In support, the Guidance cites FARA Unit Advisory Opinions (which also do not have precedential value) and the Heymann testimony. (*See* Guidance at 3-4.)  In one such citation to Mr. Heymann's testimony, the Guidance makes clear that compensation gives rise to a presumption of agency:

> At the same time, when he accepted this money he came under an obligation to Libya for the future. His statements and actions could no longer be regarded as independent behavior that just happened, entirely by chance, to parallel the interests of the Libyan government.

(Guidance at 4 n.iv.)

As currently drafted, however, proposed instruction 71 does not accurately capture this principle—that compensation can constitute "some level of power" and differentiate independent conduct from conduct as an agent.  In the interest of completeness and accuracy, the Government believes it is necessary to add the following italicized sentence, which paraphrases the above quotation from the Guidance:

> In determining whether this agency test is met, the surrounding circumstances must evince some level of power by the principal over the agent or some sense of obligation on the part of the agent to achieve the principal's request. *Accepting payment can give rise to a sense of obligation such that an agent's statements and actions can no longer be regarded as independent behavior that just happen, entirely by chance, to parallel the interests of a foreign principal.*

---

[1]  At the time of the testimony, the FARA Unit sat within the Department's Criminal Division.  It has since moved to the National Security Division.

Honorable Sidney H. Stein
July 8, 2024
Page 5

*Third*, also in proposed instruction 71, the Court removed certain language regarding the alignment of the agent's independent interests and subjective viewpoint with the foreign principal's from the "factors that support finding an agency relationship" and moved it to the following paragraph, which discusses factors that count *against* finding an agency relationship. However, the modification proposed by the Court is not supported by the Guidance. The Guidance states only the inverse: that a *misalignment* of these interests is one factor that supports a finding of agency. (*See* Guidance at 4.) In fact, the Guidance expressly recognizes that an alignment of interests does not cut against agency: "[T]he fact that a person and a foreign principal may agree on a particular policy does not necessarily preclude an agency relationship, because lobbyists often agree with their clients' views without losing their status as agents." (Guidance at 4.) Because the defendants' proposal, as adopted by the Court, is contrary to the Guidance relied on elsewhere in the instructions, is contrary to the common sense observation contained in the Guidance, and is confusing as currently drafted, the Government proposes removing that language from the instruction, and making the following modest change, as follows:

> Conversely, the following factors **may** count against finding an agency relationship: if the foreign principal's instructions or requests are more general, ~~the foreign principal's goals align with the alleged agent's own interests or subjective viewpoint~~, or the alleged agent's interactions with the foreign principal or its intermediaries are only infrequent.

IV.   The Proposed Obstruction of Justice Instruction Should be Revised

Finally, the Government requests that proposed instruction 66 be revised to avoid seeming to limit the jury's consideration of a defendant's interactions with third parties only to those interactions that a defendant knows will affect a judicial or grand jury proceeding. Presently, this instruction reads in pertinent part: "A defendant's interactions with third parties, including prosecutors, are therefore relevant only if the defendant knew that those interactions were likely to affect the judicial or grand jury proceeding and specifically intended that result." However, such interactions may be—and in this case, are—relevant for multiple purposes, including (a) consciousness of guilt and (b) evidence of a scheme to obstruct, even if the interactions are not, in and of themselves, obstruction of justice. The Government also submits that "knew" is not the correct word, rather than "believed," because the focus should be on the defendant's intent.

Accordingly, the Government requests that this sentence be revised to read: "A defendant's interactions with third parties, including prosecutors, can therefore themselves be acts of obstruction of justice only if the defendant believed that those interactions were themselves likely to affect the judicial or grand jury proceeding and specifically intended that result. The interactions, however, may be relevant for other purposes."

Honorable Sidney H. Stein
July 8, 2024
Page 6

                                                  Respectfully submitted,

                                                  DAMIAN WILLIAMS
                                                  United States Attorney

By:    <u>s/ Daniel C. Richenthal</u>
        Eli J. Mark
        Daniel C. Richenthal
        Paul M. Monteleoni
        Lara Pomerantz
        Catherine E. Ghosh
        Assistant United States Attorneys
        (212) 637-2431/2109/2219/2343/1114
        Christina A. Clark
        Special Assistant United States Attorney
        (202) 307-5191

Enclosures

cc:    (by ECF)

        Counsel of Record