O6H5men1

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    UNITED STATES OF AMERICA,

4                    v.                        23 Cr. 490 (SHS)

5    ROBERT MENENDEZ,
     WAEL HANA, a/k/a "Will Hana,"
6    and FRED DAIBES,

7                    Defendants.
                                              Trial
8    ------------------------------x

9                                             New York, N.Y.
                                              June 17, 2024
10                                            2:30 p.m.

11

12   Before:

13
                         HON. SIDNEY H. STEIN,
14
                                              District Judge
15                                            -and a Jury-

16                          APPEARANCES

17   DAMIAN WILLIAMS
          United States Attorney for the
18        Southern District of New York
     BY:  PAUL M. MONTELEONI
19        DANIEL C. RICHENTHAL
          ELI J. MARK
20        LARA E. POMERANTZ
          CATHERINE E. GHOSH
21        Assistant United States Attorneys
          -and-
22        CHRISTINA A. CLARK
          National Security Division

23

24

25

O6H5men1

1

2                          APPEARANCES CONTINUED

3

PAUL HASTINGS LLP
4        Attorneys for Defendant Menendez
BY:  ADAM FEE
5        AVI WEITZMAN
         ROBERT D. LUSKIN
6        RITA FISHMAN

7

8

9   GIBBONS, P.C.
         Attorneys for Defendant Hana
10  BY:  LAWRENCE S. LUSTBERG
         ANNE M. COLLART
11       CHRISTINA LaBRUNO
         ANDREW J. MARINO
12       RICARDO SOLANO, Jr.
         ELENA CICOGNANI
13       JESSICA L. GUARRACINO

14

15  CESAR DE CASTRO
    SETH H. AGATA
16  SHANNON M. McMANUS
         Attorneys for Defendant Daibes

17

18

    Also Present:  Marwan Abdel-Rahman
19                 Bachar Alhalabi
                   Interpreters (Arabic)
20
                   Rachel Wechsler
21                 Connor Hamill
                   Braden Florczyk
22                 Paralegal Specialists, U.S. Attorney's Office

23                 Justin Kelly, DOAR

24

25

                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

O6H5men1

1                    (Trial resumed; jury not present)

2                    (The Court and all parties appearing via Microsoft

3        Teams)

4                    (Pages 3755-3757 SEALED by order of the Court)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

O6H5men3

| 1 | THE COURT:  OK.  I take it you need a little time to |

1    THE COURT:  OK.  I take it you need a little time to

2    regroup in terms of what's coming up and when the government

3    plans to close now.  What is the current status, government?

4    MR. MONTELEONI:  Your Honor, we have given this

5    thought and we expect to rest a week from tomorrow on June 25

6    as we have communicated to the defense.

7    THE COURT:  You have to tell the reporter who is

8    speaking.

9    MR. MONTELEONI:  I'm so sorry.  Paul Monteleoni for

10    the government.

11    THE COURT:  This is the 17th.  When do you plan to

12    rest now?

13    MR. MONTELEONI:  On June 25, which is a week from

14    tomorrow.

15    THE COURT:  OK.  Defense, let's start with

16    Mr. Menendez, what is your current intention?

17    MR. WEITZMAN:  We plan to present a defense case, as

18    we have said from the beginning, and we expect it will be at

19    least a week, perhaps a bit longer.

20    THE COURT:  Mr. Hana?

21    MR. LUSTBERG:  Yes, Judge.  Sorry.  I had to unmute.

22    We will also likely present a defense, much briefer than that.

23    I would say a couple of days, at most.

24    THE COURT:  Mr. de Castro?

25    MR. DE CASTRO:  We have identified some witnesses for

O6H5men3

1    the government.  If we call those witnesses, I don't think it

2    would be more than a day or less than a day.

3            THE COURT:  You mean witnesses for the defense?

4            MR. DE CASTRO:  Yes; yes, for Mr. Daibes.

5            THE COURT:  OK.  Well, this is beyond the time that I

6    told the jury -- or not that I told the jury -- that I got

7    their schedules because we really got their schedules through

8    July 5th.  If the government rests on the 25th and we are

9    talking about a week for Mr. Menendez, that's one, two, three,

10   four, five -- six through July 3, we then have the July 4

11   holiday and 5th, so we are probably, unfortunately, with

12   deliberations and charge, are going to go into the week of

13   July 15th.

14           Is that what the general consensus is?

15           MR. WEITZMAN:  Your Honor, I think we are hoping that

16   the parties can sum up during the week of July 8th.

17           THE COURT:  Is this Mr. Weitzman.

18           MR. WEITZMAN:  Yes, this is Avi Weitzman.

19           Our hope would be that we can sum up during the week

20   of July 8, as soon as possible, and then proceed to charge and

21   deliberations that week.

22           THE COURT:  If we can sum up the -- well, yes.  I

23   mean, let's aim for that, let's certainly aim for that, to have

24   the defense case over by July 8.  Is that what you are talking

25   about, Mr. Weitzman?

O6H5men3

 1          MR. WEITZMAN:  No, I'm not sure that that is going to

 2    be feasible because I mentioned I do think our defense case, if

 3    I am listening to everybody correctly, is going to be closer to

 4    a week and a half or two weeks, so --

 5          THE COURT:  You are talking about for all of the

 6    defendants.

 7          MR. WEITZMAN:  Correct.  Correct.  That means, I

 8    imagine, summations will be mid or second half of the week of

 9    July 8, not early part of the week.  I would add though, your

10    Honor, I think we have an amazing jury and I think they've been

11    very attentive and no one -- we have all been on long trials

12    and jurors do their best to get off sometimes and this jury has

13    not done that at all so I think they'll understand and I think

14    that they are going to stick with us.

15          THE COURT:  Well, I agree that they seem to be very

16    attentive and quite interested, and you may have noticed that a

17    couple of them are taking copious notes but it is a separate

18    issue because I didn't get their schedules for anything after

19    July 5.  Well, let's hope for the best, and I do have the sense

20    that these jurors just are paying close attention.  Let's hope

21    they stay with us.

22          MR. RICHENTHAL:  This is Daniel Richenthal, your

23    Honor.

24          One related note, we received from Mr. Menendez' team

25    a list of 48 defendants witnesses.  If I am hearing correctly,

O6H5men3

1  their case is approximately one week, it seems to me they're

2  not going to call 48 people.  It is very difficult for us to

3  plan with a list of 48.

4          THE COURT:  Stop right there.

5          Mr. Menendez' team, you are not going to sandbag the

6  government here with 48 names.  I assume, in good faith, you

7  don't intend to keep the 48 names on.  What are your

8  intentions?

9          MR. WEITZMAN:  So, your Honor, I will tell you that

10  the issue is that the government still has 18 witnesses on

11  their list.  We have asked them who they are withdrawing.  Many

12  of our 48 are names of witnesses who are on the government's

13  list that we do not know whether they intend to call or not but

14  that we needed to name in order to make sure that we can

15  preserve our ability to recall them given their scope

16  objections.  So, that is the first thing.

17          The second thing is, and if the government were to

18  actually provide us a list of the next four days' witnesses,

19  which is what we are talking about, we would be able to narrow

20  our own witness list but we have been unable to get that from

21  the government.

22          The second thing is that I do think we will have a

23  substantial case and I am talking about two dozen plus

24  witnesses.  We are going to keep it very tight, your Honor.  We

25  are talking about witnesses who are going to be half an hour

O6H5men3

1   so, yes, we have a substantial case and we are going to present

2   them.

3              THE COURT:  You can't get 24 witnesses on in a week.

4              MR. WEITZMAN:  I think these are going to be very

5   tight witnesses, your Honor; very, very tight.

6              THE COURT:  What is the agreement of the parties in

7   terms of advance notice?  My recollection is it is two days'

8   notice for witnesses; is that right.

9              MR. WEITZMAN:  It is three days' notice for witnesses

10  and two days for any exhibits that the other side intend to use

11  as non-impeachment exhibits so, yes, three days' notice, your

12  Honor.

13             MR. RICHENTHAL:  This is Dan Richenthal again, your

14  Honor.

15             I'm not trying to get into a quantitative fight but it

16  is not accurate that many of the folks on the 48-person list

17  are our witnesses.  I think maybe three or four are.  I don't

18  believe that is many.  We have also gone ahead and given the

19  defense our witnesses for the next three days, I think all but

20  the final day of trial, which we are still refining.

21             THE COURT:  Look, I'm going to need more good faith on

22  the part of both sides here.  Nobody should be dealing with 48

23  potential witnesses.  I am just going to ask you to narrow

24  those down to the extent you can.  I will continue to urge that

25  on you as we go forward.

1          Who are the next three days' witnesses for the

2     government?

3          MR. MONTELEONI:  This is Paul Monteleoni again.

4          We intend to continue and conclude the examination of

5     Mr. Sellinger.  Then we intend for Michael Soliman to testify.

6     After that it is likely going to be Paul van Wie, the final

7     summary witness, we think that is going to take us into the

8     next day which that looks like it will be Thursday; at which

9     time we expect to call Joseph Catania and Isabella Fuchs, as

10    well as Geoffrey Mearns, the individual who was authenticating

11    the portion of the presentation that there is a motion about.

12    Following that, we believe that Shannon Kopplin is likely to

13    testify after that, and as well as Vasken Khorozian, a jeweler.

14    So we think that that is probably more than take us through the

15    rest of this week and then we are sort of tinkering with the

16    order for the last few witnesses -- sorry.

17         THE COURT:  No.  Go ahead.

18         MR. MONTELEONI:  We have engaged with defense

19    substantially about our witnesses.  There is a number that we

20    are not currently in a position to drop from the list but we

21    hope to be in that position after some -- after developments at

22    trial.  There is some we have indicated are likely to drop but

23    not fully there yet and some we are waiting to make the

24    decision on.  Obviously there is some uncertainty all around

25    but we think it is four trial days which is going to take us to

O6H5men3

```
 1    next Tuesday.  That's where our estimate comes from.

 2                THE COURT:  All right.  So tell me with hours and the

 3    subject matter, I know we have gone over it before but I want

 4    to be refreshed.  How much longer do you have on Sellinger?

 5                MR. WEITZMAN:  On the cross I expect probably another

 6    hour, your Honor.

 7                THE COURT:  Tell me again, government, who Soliman is

 8    and how long?

 9                MR. RICHENTHAL:  Mr. Soliman is a former political

10    advisor for Mr. Menendez.

11                THE COURT:  Oh yes.  There has been testimony about

12    him already.  Yes.

13                MR. RICHENTHAL:  I think his name has appeared on

14    documents.  I believe also one of our witnesses may have

15    mentioned him as well.  That's correct.

16                THE COURT:  How long on direct?

17                MR. RICHENTHAL:  I think Mr. Soliman's direct will be

18    under two hours.

19                THE COURT:  van Wie is the chart and I have to go over

20    the objections to the chart with you, which I will do tomorrow.

21    How long is he on direct?

22                MR. MONTELEONI:  Your Honor, we have been trying to

23    refine it.  I don't want to say something that I am then going

24    to be asked to go shorter on, but in the letter we said it

25    might be three to four hours.  It is looking like it will be
```

O6H5men3

1    under three but please don't hold me to that.  I am really

2    trying to get it down.

3         THE COURT:  So it looks like for tomorrow we will get

4    Sellinger, Soliman, and start on van Wie; right?

5         MR. MONTELEONI:  Yes.  That's what is it is looking

6    like.  I actually -- I should correct something that I said

7    about Thursday's witnesses because we had to -- I was thinking

8    about when we thought we were going to be starting on Monday,

9    not starting tomorrow, but yes, I think that tomorrow is likely

10   to be Sellinger, Soliman, and start of van Wie.

11        THE COURT:  Tell me now about Catania, Fuchs -- Mearns

12   is your para on the exhibit that there is an issue on, the

13   presentation; right?

14        MR. RICHENTHAL:  That's correct.

15        THE COURT:  Tell me about Catania and Fuchs.  How long

16   are they going to be?

17        MR. MONTELEONI:  First of all, I should say I

18   apologize for this, they are likely going to be on Monday, not

19   on this coming Thursday.

20        THE COURT:  Let me just see.  Well, you mean there may

21   or may not be, it depends -- oh, there is cross on van Wie.

22   OK, let's assume that it would be on Monday.  All right.  Go

23   ahead.  Catania, Fuchs; who are they?  How long?

24        MR. MONTELEONI:  So Catania is New York Federal

25   Reserve Bank employee to testify about bank note tracing.

O6H5men3

1    Isabella Fuchs is an FBI employee who intends to testify about

2    relating some of the serial numbers that were photographed in

3    the search of the -- from the cash seized and searched at the

4    home to the data that the Federal Reserve will have provided

5    about when these bank notes entered into circulation.  We think

6    that their combined direct would be about an hour and a half

7    total.  But I should say, I forgot one witness for Thursday

8    which will be before them.

9               THE COURT:  Who?  Van Wie or Mearns?

10              MR. MONTELEONI:  Tuesday is going to be van Wie,

11   possibly we can sneak Mearns in on Tuesday.  Thursday we finish

12   up with van Wie.  In addition to Vasken Khorozian, a jeweler

13   and Shannon Kopplin, ethics counsel for Senate I neglected,

14   with apologies, to mention Vikas Khanna, who is the first

15   assistant U.S. Attorney for the District of New Jersey.

16              THE COURT:  When are they coming in?

17              MR. MONTELEONI:  For Thursday, this coming Thursday.

18              THE COURT:  Who do you see -- you have told me about

19   all of these, I realize that now, Catania, Fuchs and so forth.

20   Who do you see on Thursday?  Catania, Fuchs, Khanna and

21   Khorozian

22              MR. MONTELEONI:  I think Khanna, Khorozian, and

23   Shannon Kopplin.  We think that Catania and Fuchs are likely to

24   be the following Monday so a week from today, not Thursday, as

25   I initially told you.  I apologize.

O6H5men3

1        THE COURT:  If I understand now, Thursday is Kopplin,

2    Khorozian, Khanna.

3        MR. MONTELEONI:  Yes.  And whatever is left of

4    van Wie.

5        THE COURT:  Now let's deal with Critchley.  First of

6    all can I deal with it without Kevin Marino on the phone?  What

7    is the position of the parties here in regard to Critchley?  I

8    have the e-mail from Mr. Weitzman of 12:08 p.m.  What is the

9    position of the parties?

10        Mr. Weitzman, it is your letter here.

11        MR. WEITZMAN:  Yes.  I have been in touch with Kevin

12    Marino.  I think he would be comfortable with us discussing it

13    outside his presence.  We can also get him on the call if you

14    prefer but I know his position, given what he has communicated

15    to me, and I think he has spoken directly with the government

16    as well.

17        Mr. Critchley is 80 years old.  He will not join in a

18    live -- in a conference room live for a deposition to preserve

19    his testimony.  He has made that very clear to us through

20    counsel.  He is fearful and does not want to proceed with

21    in-person testimony.  He is more than willing to sit for a

22    remote deposition.  I think we all have experience doing remote

23    testimony after years of COVID and we would, ask as an

24    accommodation to the witness, that the government agree to do

25    that.

O6H5men3

| | |
|---|---|
| 1 | THE COURT:  Government, what is your position here? |
| 2 | MS. POMERANTZ:  Your Honor, we did indeed speak to -- |
| 3 | THE COURT:  I take it this is Ms. Pomerantz. |
| 4 | MS. POMERANTZ:  Yes, your Honor, this is |
| 5 | Ms. Pomerantz. |

We did speak to Kevin Marino.  We did not hear from Mr. Weitzman until we saw that e-mail that he sent to your Honor's chambers.  We agreed to this accommodation so as to not disrupt the witness' vacation plans and we had indicated that we could wear masks.  We don't understand there to be a legal basis to force us to do this by video and defense hasn't cited any, and so this is just the first that we are hearing of this from Mr. Weitzman.

THE COURT:  Well, have you spoke -- you mean Marino didn't tell you this?

MS. POMERANTZ:  Yes, he did just -- he did this morning, that he did not indicate that his client would refuse, he just indicated a preference to do it by video.

THE COURT:  And what's the government's position on -- I understand you prefer to do it in person, but why?

MS. POMERANTZ:  Your Honor, I think for a variety of reasons that we prefer to do it in person.

I am sure the Court knows from its own experience the value of being able to interact with witnesses in person and so that was the reason and our preference to be doing it in

O6H5men3

1  person.

2          THE COURT:  Ms. Blakely, technologically, can we add

3  Ken Marino to this call?

4          THE DEPUTY CLERK:  Yes.  They have to give me the

5  phone number.

6          THE COURT:  Somebody provide it.

7          MR. LUSTBERG:  This is Mr. Lustberg.  I have Kevin's

8  phone number.  His cell phone is 973-715-5315.

9          THE DEPUTY CLERK:  OK.  I will try to get him.

10         THE COURT:  Do I understand that there was an

11 agreement that he would appear in person before this COVID

12 issue arose?

13         MS. POMERANTZ:  Yes, your Honor.  The way we had

14 agreed upon proceeding --

15         [Outgoing voicemail recording]

16         THE COURT:  Mr. Marino, this is Judge Stein.  I am

17 trying to add you to a conference call with the parties in

18 United States against Menendez.  I understand a deposition has

19 been scheduled here in New York at 6:00 tonight for

20 Mr. Critchley and there is an issue as to whether it should be

21 remote or not.  Please contact the Court and we will set up a

22 conference call with you.  I will also solicit from the parties

23 if they have another number for you.

24         Ms. Blakely, can you cut that connection?

25         THE DEPUTY CLERK:  Yes.

O6H5men3

1      MR. LUSTBERG:  So this is Larry again, Judge.  I know

2  Kevin for many years, just so you know it is not like I know

3  these numbers from this case.  He is --

4      THE COURT:  He has appeared before me also.  There is

5  more than one good attorney in New Jersey, despite what some

6  testimony was.

7      MR. LUSTBERG:  So, his office, I am thinking that

8  maybe his office will be able to reach him and his office

9  number is 973-824-9300.

10      THE COURT:  Ms. Blakely, call that number on another

11  line so that we don't have to have the back and forth but get

12  Kevin Marino on the phone.

13      MR. WEITZMAN:  Your Honor, I have Kevin Marino.  He

14  called me on my cell phone.  *Kevin are you available on your*

15  *cell phone or office line right now if the Court contacts you?*

16  *They'll call you right now on your cell phone, OK Kevin?*  *OK.*

17  *Thank you, Kevin.*

18      Ms. Blakely, I think if you call right now he is

19  expecting your call.

20      THE DEPUTY CLERK:  Is that the 824-9300 number?

21      MR. LUSTBERG:  No, that's the office number.

22      THE COURT:  Mr. Marino, can you hear me?

23      MR. MARINO:  Yes.

24      THE COURT:  This is Judge Stein from the Southern

25  District of New York.  How are you, sir?

O6H5men3

```
 1            MR. MARINO:  I am all right.  Good afternoon, your
 2   Honor.  It has been a long time.
 3            THE COURT:  It has, indeed.
 4            We have all of the attorneys in United States against
 5   Menendez here on this call with you.  I appreciate your joining
 6   it.  I understand that there was a deposition of Mr. Critchley,
 7   who you represent, scheduled for 6:00 p.m. tonight, I gather,
 8   to be taken -- not remotely -- taken in a conference room in
 9   the U.S. Attorney's office and an issue has arisen in regard to
10   that, so speak to me.  What's the problem?  The government is
11   all set to proceed at 6:00 p.m. in its offices.
12            MR. MARINO:  Thank you very much for the opportunity
13   to address the Court, your Honor.
14            We have worked cooperatively with the government in
15   this matter, as I think they'll attest and want to make
16   Mr. Critchley available and let folks have, do a direct
17   examination and cross-examination of him.  We had planned to do
18   it in person.  The deep concern, your Honor, is COVID, and
19   specifically knowing that one of the defendants has taken ill
20   with it, that others were certainly exposed to it and a deep
21   concern over perhaps another lawyer or more having tested
22   positive.  Mr. Critchley is leaving for Europe on Wednesday.  I
23   am as well on separate vacations with our families XXXXXXX
24   XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
25   XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
```

O6H5men3

1    XXXXXXXXX.  I don't want to embarrass him by referring to his

2    age, he is somewhat senior to me and I am not a kid, and I

3    think it would be dangerous for him to do this.  We will -- I

4    will make him available in my office, we can do it by Microsoft

5    Teams or Zoom or whatever other virtual platform anyone wants

6    to use, but I would beg the Court's indulgence in not asking

7    us, particularly on the cusp of these vacations and with I

8    think a very valid concern about COVID-19 being raised, I would

9    ask your Honor to spare us having to do so in person.

10           THE COURT:  Does it change your view if I tell you

11    that based on what Mr. de Castro wrote here, that the person

12    who had COVID -- and the symptoms first arose last Wednesday

13    afternoon, I believe, or maybe Thursday, I'm not sure -- has

14    been cleared to appear in court and I don't believe, although I

15    am not sure, that -- I don't think any attorney has tested

16    positive.  So, the person who had COVID has been cleared to

17    appear in court and he is no longer symptomatic.

18           MR. WEITZMAN:  Your Honor?

19           MR. MARINO:  Your Honor -- I'm sorry.  Didn't mean to

20    interrupt.

21           MR. WEITZMAN:  XXXXXXXXXXXXXXX

22    XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

23    XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

24    XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

25    XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

O6H5men3

```
1    XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
2    XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
3    XXXXXXXXXXXXXXXXXXXXXXXXXXXX.
4              THE COURT:  Mr. Marino, does this change your view at
5    all?
6              MR. MARINO:  Your Honor, I would think, your Honor,
7    that we should do it by virtual appearance and I ask your
8    Honor's indulgence.  I know it is never easy for
9    multi-defendant trial, your Honor has been presiding over it
10   for a long period of time, I know that it is an inconvenience,
11   but I would beg your indulgence to allow us to do it.  I have a
12   very viable and strong connection in my office, we can do it by
13   Teams, I will have Mr. Critchley in my office with me, and
14   obviously my role is there to advise him, off camera, your
15   Honor, which is an important role, but certainly I want this to
16   proceed as though it were proceeding in the courtroom where I
17   would not be interposing objections and the like, but I feel
18   very strongly that I should be there and I think the only real
19   fair and safe way to do that for both of us would be to do it
20   virtually, so I ask your Honor's indulgence in permitting us to
21   do so.
22             THE COURT:  Thank you.
23             Let me hear from the government on this issue.  The
24   question is whether it proceeds remotely with Mr. Critchley in,
25   I take it, Newark, and the government and everyone else remote.
```

O6H5men3

1          Government?

2          MS. POMERANTZ:  Your Honor, this is the first that we

3     are learning of this and so we would like a moment to confer

4     because, as noted, we understood this morning that we were

5     going to be proceeding in person, we understood that that was

6     all scheduled to go this way, and now what your Honor has just

7     heard is the first that we are hearing about Mr. Weitzman.

8          THE COURT:  All right.  So mute yourselves and

9     discuss.

10          MR. WEITZMAN:  Your Honor, if I can add one thing, and

11     it is something I noted in my e-mail?  We will be having remote

12     testimony in this case.  We expect that Ambassador Cohen --

13          THE COURT:  I saw it.  I saw it, Mr. Weitzman.  Thank

14     you.  Let the government discuss it.  I'm not quite sure what

15     the interests of Mr. Menendez here is in having it remote.

16          MR. WEITZMAN:  I don't know that we have an interest

17     other than to preserve this witness' testimony because he is a

18     defense witness called by Mr. Menendez.

19          THE COURT:  Yes.  Well, it is preserved by his being

20     present so that concern really shouldn't be a concern of yours.

21          MR. WEITZMAN:  I agree, assuming if he were to proceed

22     in person.  I'm not sure that that will occur if we insist on

23     an in-person.

24          THE COURT:  All right.  Thank you, Mr. Weitzman.  Let

25     the government talk to itself.

O6H5men3

```
 1              (Pause)

 2              MS. POMERANTZ:  Your Honor, this is Lara Pomerantz.

 3              I would again note that the reason that we are

 4    proceeding by a deposition is because we have agreed to do so

 5    as a courtesy and we are not aware of legal authority requiring

 6    us to do it at all or to be doing it by video or in person.  Of

 7    course, if the Court wants us to proceed this way, we will do

 8    so but, again, we are just not aware of a requirement to do so.

 9    We have been doing this as a courtesy.

10              THE COURT:  I am going to provide that it be remote.

11    I think this is a request in good faith by Mr. Marino, given

12    the fact that XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX, his

13    client is 80 years old, and they are both planning trips abroad

14    within the next day or two.  I am going to provide that it be

15    done remotely.

16              Thank you.  I don't think there is anything else and

17    we will notify -- I will have my chambers notify the jurors.

18    Let's hope they all show up and I will provide that the part of

19    this discussion after we dealt with Mr. Daibes' medical

20    condition be made public.

21              Is there anything else I can help the parties with at

22    this time?

23              MR. RICHENTHAL:  This is Dan Richenthal, your Honor.

24              We agree that portion should be public.  I will just

25    flag for the Court I don't think anything needs to be resolved
```

O6H5men3

 1    now, but we are hopeful we will go from a 48 person list to

 2    something shorter.  I would also note, we didn't receive 26.2

 3    material for a substantial number of those witnesses so we

 4    actually don't know what they're expected to say.  We asked the

 5    defense last night for a proffer, in sum, of the expected

 6    testimony for the witnesses for whom we did not receive

 7    information and we were told we have no right to it.  We don't

 8    have to litigate on this phone call, we may not have a right to

 9    it -- quote unquote -- but we certainly would like it and we

10    think it would be more efficient for the Court.  Otherwise,

11    frankly, we are entirely blind as to what the defense case is

12    going to be as to those witnesses.

13            THE COURT:  What is your agreement in terms of when

14    26.2 would be turned over?  You certainly have a right to 26.2.

15            MR. RICHENTHAL:  Maybe I misspoke, your Honor.  The

16    agreement as 26.2 material had it due yesterday.  We did,

17    indeed, receive it to the extent it exists.  Unfortunately, we

18    were informed it does not exist for a substantial number of

19    witnesses.  We accept that recommendation, that is, that it

20    does not exist.  The problem is that without 26.2 material as

21    to a number of people, we don't have any idea what they're

22    going to testify about and therefore no ability to tee up

23    evidentiary issues.  We therefore ask the defense, as a

24    courtesy, to give us a proffer -- that is the word we used, a

25    proffer -- in sum, as to what these people would say, and by

O6H5men3

1   "these people" I mean the people for whom we were told there is

2   no 26.2 material.  And the defense declined to give us anything

3   more.  And to be clear, your Honor, when I say "the defense" I

4   am referring Mr. Menendez' team.

5            THE COURT:  No, I understand.

6            Mr. Weitzman?

7            MR. WEITZMAN:  Yes, your Honor.

8            Just to be perfectly clear, we told the government,

9   and I think they do not dispute this, that as of those

10  40-some-odd witnesses, 33 of them have been interviewed by the

11  government and there are 302s that represent those witnesses'

12  statements for 33 of them.  So there is, you know, eight or 10

13  or so that there is no 26.2 material for, that's consistent

14  with my practice generally not to take notes when I speak to

15  witnesses.  We are happy to provide, if and when we call them,

16  a proffer as to their relevance in advance of trial on the

17  three-day schedule but I don't think we should be required to

18  create 26.2 materials for these witnesses now.

19            XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

20  XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

21  XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

22  XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX.

23            THE COURT:  XXXXXXXXXXXXXXXXXXXXXXXXXX?

24            MR. WEITZMAN:  XXXXXXXXXXXXXXXXXXXXXXXXXXX

25  XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX.

O6H5men3

1          THE COURT:  XXXXXXXXXXXXXXXXXXXXX?

2          MR. WEITZMAN:  XXXXXXXXXXXXXX --

3          THE COURT:  XXXXXXXXXXXXXXXXXXXXXXXXXXXX.

4          As of now, look, I am going to expect that 48 number

5  to be substantially reduced in the near future.  As of now, I

6  don't expect you to generate 26.2 material, but I want a solid

7  three days in advance a proffer on these people who don't have

8  26.2 information disclosed.

9          All right, I will see everyone tomorrow at 9:30.

10 Thank you.

11          (Adjourned to June 18, 2024, at    9:30 a.m.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25