

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

---

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

November 13, 2024

**By ECF**

The Honorable Sidney H. Stein
United States District Judge
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007

    Re:    *United States v. Robert Menendez, Wael Hana, and Fred Daibes*,
              S4 23 Cr. 490 (SHS)

Dear Judge Stein:

       The Government respectfully writes in the above-captioned matter to notify the Court that, due to an error recently discovered by the Government, incorrect versions of nine Government Exhibits were loaded on the laptop the parties jointly provided to the jury for use in its deliberations. These exhibits were each the subject of the Court's May 24, 2024 ruling (the "May 24 Ruling") excluding certain evidence on the basis of the Speech or Debate Clause. As explained below, the jury laptop was inadvertently loaded with alternative versions that contained the redactions the Government sought in its motion for reconsideration of that ruling (which the Court denied), not the versions that contained broader redactions pursuant to the May 24 Ruling. Neither counsel for the Government nor counsel for the defendants, who had access to and inspected the exhibits on the laptop in advance of their provision to the jury, noticed the error at the time, and the error did not affect the relevant summary chart covering these documents, which was the correct and properly admitted version.

       As explained below, no action need be taken in light of the error, because, among other reasons, any objection was waived by defense counsel's inspection of the exhibits that were provided to the jury; the Government never referred to or displayed to the jury any incorrect versions of the exhibits; there is no reasonable likelihood any juror ever saw any of the erroneously less-redacted versions; and, in any event, those versions, which do not reference any legislative act and which were of secondary relevance and cumulative with abundant properly admitted evidence, could not have prejudiced the defendants even if they were ever seen.

Honorable Sidney H. Stein
November 13, 2024
Page 2

## I. The Court's Ruling and the Presentation of Evidence

On May 24, 2024, the Court issued the May 24 Ruling, striking certain line entries of one of the Government's summary charts, as well as underlying exhibits, on the basis of the Speech or Debate Clause. (*See* Dkt. 420.) The Government analyzed the May 24 Ruling and determined that it implicated, in addition to the summary chart (Government Exhibit 1302), the content of certain underlying exhibits beyond those expressly specified in the May 24 Ruling (collectively the "Implicated Exhibits"). That day, the Government sought reconsideration or clarification of the May 24 Ruling, seeking to introduce a version of the summary chart marked as Government Exhibit 1302, and of underlying exhibits, which redacted only the reference to a purported legislative act. (*See* Dkt. 421 (motion for reconsideration); Dkt. 423 (reply in support of motion for reconsideration).)

On May 27, 2024, while the motion for reconsideration was pending, the Government produced to the defendants two alternate sets of the Implicated Exhibits, to allow the parties to proceed with the presentation of evidence promptly after the Court ruled on the motion for reconsideration. The first set were exhibits with redactions pursuant to the May 24 Ruling, in the event reconsideration was denied (the "May 24 Ruling Versions"). The second set were exhibits intended to be used in the event the Court granted reconsideration and accepted the Government's proposed redactions (the "Reconsideration Versions"). As relevant here, the Government produced to all defendants both the May 24 Ruling Versions and the Reconsideration Versions of nine underlying exhibits (Government Exhibits A103-10, A120, B207-1, C207-8, C207-8T, C207-9, C207-9T, C602, and D207-3), as well as of Government Exhibit 1302.

On May 28, 2024, the Government offered Government Exhibit 1302 and the Implicated Exhibits, which were received pending the ruling on the motion for reconsideration. (Tr. 1169-70, 1175.) On May 29, 2024—before any content relevant to the May 24 Ruling was presented to the jury—the Court denied the motion for reconsideration. (Tr. 1343.) Accordingly, the May 24 Ruling Versions (and not the Reconsideration Versions) of the Implicated Exhibits were admitted in evidence.

The Government displayed and asked witnesses to read to the jury portions of the admitted May 24 Ruling Version of Government Exhibit 1302, the summary chart. The jurors were never exposed, at any point during the presentation of trial evidence or jury addresses, to any of the Reconsideration Versions of any of the Implicated Exhibits. Indeed, although the Government displayed the correct and properly-admitted version of the summary chart to the jury, the Government never showed *any* versions of the Implicated Exhibits themselves to the jury in its presentation of trial evidence or its jury addresses, and neither did any of the defendants.

## II. The Submission of Government and Defense Exhibits to the Jury

In assembling a set of the admitted exhibits to be loaded onto a laptop to be jointly provided by the parties to the jury, the Government inadvertently included in the materials the Reconsideration Versions, rather than the admitted May 24 Ruling Versions, of nine of the underlying Implicated Exhibits. Neither the Government counsel nor, to the Government's knowledge, any defense counsel—who, as detailed below, had and took an opportunity to inspect

Honorable Sidney H. Stein
November 13, 2024
Page 3

the exhibits and the laptop—noticed that the incorrect versions of these exhibits were included on the laptop.

  In advance of the submission of exhibits to the jury, the Government gave defense counsel an opportunity, over several days, to inspect the exhibits the Government proposed to submit on the laptop, which each defense team took. At approximately 5:39 p.m. on Wednesday, July 10, 2024, the Government uploaded to a file-sharing platform for defendants what it believed to be the final set of admitted Government Exhibits, and asked the defendants to inform the Government if this set reflected the defense teams' internal versions so that it could be ready to be loaded on a laptop for the jury.[1] This set of Government Exhibits had the same versions of the Implicated Exhibits that were loaded onto the jury's laptop. Members of the Government team then met with members from each of the defense trial teams and reviewed the contents of the laptop itself. As a result of this process, the finalized set of documents loaded onto the jury's laptop was agreed to by shortly after noon on Friday, July 12, 2024, as the Government informed the Court on the record later that day. (*See* Tr. 7165 ("And in addition, let me note the laptop is available. It has been inspected by all defense counsel. It's being provided by our paralegals, so that's ready to go.").)

  The jury's laptop was loaded with 2,549 Government Exhibits, 387 defense exhibits introduced by Robert Menendez, and 138 defense exhibits introduced by Wael Hana. The version of Government Exhibit 1302—the summary chart covering the Implicated Exhibits, which was displayed for and portions of which were read to the jury during trial—that was loaded onto the jury's laptop was the correct and properly admitted version. However, the Government recently discovered that as to nine of the exhibits underlying that summary chart, the Reconsideration Versions (attached hereto as Exhibits A-1 through I-1) were inadvertently loaded onto the jury's laptop instead of the admitted May 24 Ruling Versions (attached hereto as Exhibits A-2 through I-2). There were three substantive differences between the versions provided on the laptop and the versions in evidence.

- First, several of the Reconsideration Versions included a text message that consisted, in its entirety, of the text "https://amp.cnn.com/cnn/2022/01/25/politics/us-arms-sales-egypt/index.html", as well as, in one version, a thumbnail of the CNN logo and a thumbnail picture of the President of Egypt. (*See* Ex. A-1 (GX A103-10 Reconsideration Version); Ex. B-1 (GX A120 Reconsideration Version); Ex. H-1 at 74 (GX C602 Reconsideration Version).) In the admitted versions of those exhibits, this link was redacted (along with the thumbnails). (*See* Ex. A-2 (GX A103-10 admitted version); Ex. B-2 (GX A120 admitted version); Ex. H-2 at 74 (GX C602 admitted version).) Neither the Government nor the defendants referenced the sending of this text message in their jury addresses.

---

[1] In a reflection of the document-intensive nature of the trial, the parties had previously encountered an issue where each party believed a different version of a particular Government Exhibit was in evidence, and thus were alert to the need to ensure that the parties agreed on which versions of the parties' exhibits were in evidence. (*See* Tr. 6160-66.)

- Second, one of the Reconsideration Version exhibits included a text message that was redacted to state only "I'm sending you an article." (*See* Ex. C-1 (GX B207-1 Reconsideration Version).) In the admitted version, "I'm sending you an article" was also redacted. (*See* Ex. C-2 (GX B207-1 admitted version).) Neither the Government nor the defendants referenced the sending of this text message in their jury addresses.

- Third, several of the Reconsideration Version exhibits included a text message that was redacted to read only "Director office of Egyptian affairs in state department 'Kathryn Kiser' told our DCM today [redacted] a billion $ of usaid to Egypt before the recess !!!!". (*See* Ex. D-1 at 1-2 (GX C207-8 Reconsideration Version); Ex. E-1 at 1 (GX C207-8T Reconsideration Version); Ex. F-1 at 5-6 (GX C207-9 Reconsideration Version); Ex. G-1 at 6-7 (GX C207-9T Reconsideration Version); Ex. I-1 at 1 (GX D207-3 Reconsideration Version).)[2] This message was quoted or forwarded in several text messages, but in each case with those redactions. In the admitted version, this sentence was omitted or redacted in its entirety. (*See* Ex. D-2 at 1 (GX C207-8 admitted version); Ex. E-2 (GX C207-8T admitted version); Ex. F-2 at 5-6 (GX C207-9 admitted version); Ex. G-2 at 6-7 (C207-9T admitted version).) Neither the Government nor the defendants referenced the sending of this text message in their jury addresses. The Government in its summation displayed and briefly referenced portions of the properly redacted summary chart summarizing other text messages sent near the time of this message, which were sourced to other, properly admitted, portions of the Implicated Exhibits (Tr. 6400-01), and no defendants referenced any of those messages, or any part of the Implicated Exhibits, in their jury addresses at all.

The jury returned a guilty verdict on all counts after deliberation spanning three days and taking somewhat less than two trial days of time. None of the notes it sent indicated any focus on any of the foregoing messages, or indeed on any counts to which the Implicated Exhibits appeared to be relevant.

### III. No Action is Warranted by The Inadvertent Inclusion of Reconsideration Versions of Exhibits on the Jury Laptop

The law and record make clear that the inadvertent erroneous inclusion of nine Reconsideration Versions of exhibits on the laptop furnished to the jury, which all parties reviewed and to which no party objected, is not a ground for upsetting the verdict.

   1. *Applicable Law*

"'[D]efense counsel is as responsible as the prosecutor for seeing to it that only proper exhibits are sent to the jury room, and normally the failure of counsel to register a timely objection to the submission of improper evidence to the jury will be deemed a waiver, unless it is shown that the evidence was so prejudicial that the defendant was denied a fair trial.'" *United States v. Stasiv*,

---

[2] The fully unredacted version of this message, which referenced an individual's belief that Menendez had taken an act, was not included on the jury's laptop and the jury was never exposed to it in any way.

No. 19-4286, 2021 WL 4888865, at *2 (2d Cir. Oct. 20, 2021) (quoting *United States v. Camporeale*, 515 F.2d 184, 188 (2d Cir. 1975)); *see also, e.g.*, *United States v. Jefferys*, No. 20-3630, 2022 WL 9627085, at *3 (2d Cir. Oct. 17, 2022) (citing *Camporeale*); *United States v. O'Brien*, No. 13 Cr. 586 (RRM), 2017 WL 2371159, at *13 (E.D.N.Y. May 1, 2017) ("Here, O'Brien failed to register a timely objection and accordingly, O'Brien waived any objection to the submission of the Jones testimony transcript."); *Barnett v. United States*, 870 F. Supp. 1197, 1205 (E.D.N.Y. 1994) ("In the instant case, petitioner's counsel made no objection to the submission of the improper evidence to the jury. Therefore, any objection to the submission of the evidence was waived." (citation omitted)).

Even leaving aside a waiver, "[a]lthough a defendant's Sixth Amendment rights are implicated and prejudice is presumed when a jury is exposed to extra-record evidence, 'that presumption may be rebutted by a showing that the extra-record information was harmless.'" *Jefferys*, 2022 WL 9627085, at *3 (quoting *United States v. Farhane*, 634 F.3d 127, 168 (2d Cir. 2011)); *see also United States v. Schwarz*, 283 F.3d 76, 99 (2d Cir. 2002) ("[N]ot every instance of a juror's exposure to extrinsic information results in the denial of a defendant's right to a fair trial. Many such instances do not."). The Second Circuit has repeatedly stated that "[t]he touchstone of decision is thus not the mere fact of infiltration of some molecules of extra-record matter but the nature of what has been infiltrated and the probability of prejudice." *Bibbins v. Dalsheim*, 21 F.3d 13, 16 (2d Cir. 1994) (internal quotation marks and ellipses omitted).

To determine if the presumption is rebutted, a court considers "(1) the nature of the information or contact at issue, and (2) its probable effect on a hypothetical average jury." *Farhane*, 634 F.3d at 169. In making an objective assessment of possible prejudice, the "trial court should assess the possibility of prejudice by reviewing the entire record, analyzing the substance of the extrinsic evidence, and comparing it to that information of which the jurors were properly aware." *United States v. Weiss*, 752 F.2d 777, 783 (2d Cir. 1985) (internal quotation marks omitted). A court "may properly conclude that such extra-record information was non-prejudicial if it determines that an abundance of properly admitted evidence relevant to this matter exists." *Id.*

A trial court has "broad discretion in reviewing the issue of the prejudicial effect of the infiltration of extra-record evidence into the deliberations of the jury," *id.*, and may inquire into the "circumstances surrounding the jurors' exposure to the information," *Farhane*, 634 F.3d at 169, but "may not reach further to inquire into the subjective effect of the information on jurors' mental processes or on the jury's deliberations," *id.*; *see also* Fed. R. Evid. 606(b). The Second Circuit has cautioned that "post-verdict inquiries may lead to evil consequences: subjecting juries to harassment, inhibiting juryroom deliberation, burdening courts with meritless applications, increasing temptation for jury tampering and creating uncertainty in jury verdicts." *United States v. Ianniello*, 866 F.2d 540, 543 (2d Cir. 1989). While a hearing may be justified by "clear, strong, substantial and incontrovertible evidence that a specific, non-speculative impropriety has occurred," *id.* (internal quotation marks and ellipsis omitted), such as specific evidence that jurors actually "consulted extra-record information" in reaching their verdict, *id.*, the Second Circuit has affirmed, on plain error review, the denial of a mistrial without a hearing where the district court concluded based on the circumstances that it "was highly likely that the jury did not view" a

Honorable Sidney H. Stein
November 13, 2024
Page 6

mistakenly submitted document and its "contents were either immaterial or already on the record and therefore harmless." *United States v. Nkansah*, 699 F.3d 743, 751 (2d Cir. 2012), *abrogated on other grounds by Loughrin v. United States*, 573 U.S. 351, 366 & n.9 (2014).

> 2. *The Defense Waived Any Objection to Inclusion of the Reconsideration Exhibits on the Laptop*

As an initial matter, the fact that no party objected to the inclusion of these exhibits on the jury's laptop itself is a ground for denying any request for a new trial in these circumstances. The Second Circuit has held that "'defense counsel is as responsible as the prosecutor for seeing to it that only proper exhibits are sent to the jury room, and normally the failure of counsel to register a timely objection to the submission of improper evidence to the jury will be deemed a waiver, unless it is shown that the evidence was so prejudicial that the defendant was denied a fair trial.'" *Stasiv*, 2021 WL 4888865, at *2 (quoting *Camporeale*, 515 F.2d at 188). As a result, courts in situations such as these rely on the parties to make such objections and deny requests for new trials where those objections are waived. *See, e.g.*, *O'Brien*, 2017 WL 2371159, at *13 ("Here, O'Brien failed to register a timely objection and accordingly, O'Brien waived any objection to the submission of the Jones testimony transcript."); *Barnett*, 870 F. Supp. at 1205 ("In the instant case, petitioner's counsel made no objection to the submission of the improper evidence to the jury. Therefore, any objection to the submission of the evidence was waived." (citation omitted)). Here, all defense teams had and took the opportunity to review the jury exhibit set, which they had for almost 48 hours (first the exhibits that the Government uploaded for defense counsel, and then the laptop itself, both of which contained the Reconsideration Versions). As such, the defendants' waiver is itself sufficient to warrant denying any request for a new trial, should any be made.

> 3. *There is No Indication that the Reeconsideration Versions of Any Exhibits Were Seen by the Jury*

Even leaving aside waiver, a new trial would be inappropriate because the circumstances indicate it is extraordinarily unlikely that any juror became aware of the Reconsideration Versions of any of the exhibits during their deliberations. This is so for several reasons.

*First*, the number of exhibits loaded on the jury's laptop (over 3,000) makes it unlikely that the jurors reviewed each one in their approximately two trial days of deliberation, particularly given that an accurate and properly redacted summary chart covering the subject matter of the Implicated Exhibits was admitted and included on the laptop. Indeed, the parts of the summary chart citing properly admitted portions of a handful of the Implicated Exhibits were mentioned and displayed only briefly in the Government's summation (*see* Tr. 6400-01), the other Implicated Exhibits were not mentioned to the jury in any way, and no version of any of the Implicated Exhibits themselves was ever displayed to the jury.

*Second*—unlike in a number of cases where the jury actually *requests* the erroneously provided documents, *see, e.g.*, *O'Brien*, 2017 WL 2371159, at *13—the jury in its notes gave no

indication it had any questions about any of the facts related to those documents or indeed any issues related to any of the counts to which those documents related.[3]

*Third*, even on those counts, these exhibits did not bear on any subject on which the parties placed any significant emphasis in their summations. As noted above, the Government made only a brief reference in one of its jury addresses to properly admitted portions of certain of the Implicated Exhibits (Tr. 6400-01), and no defendant even bothered to respond in their jury addresses. This lack of any real dispute makes it even more unlikely that the jurors would have consulted the documents in an effort to address the points of dispute between the parties.

The exceedingly low likelihood, given the circumstances of the trial, that any juror actually became aware of or considered the Reconsideration Versions of any exhibits rebuts the presumption of prejudice, as multiple Second Circuit cases recognize. *See Jefferys*, 2022 WL 9627085, at *3 ("Here, such a presumption is rebutted because there was no indication that the jurors considered the evidence."); *United States v. Hansen*, 369 F. App'x 215, 216 (2d Cir. 2010) ("Here, the introduction of extra-record evidence was not prejudicial because there was no indication that the jury actually considered it."); *Nkansah*, 699 F.3d at 751 (holding no plain error where "it was highly likely the jury did not view" the non-admitted document and that its contents were harmless); *see also Smithwick v. Walker*, 758 F. Supp. 178 (S.D.N.Y. 1991) ("That the jury took time and continued to deliberate for a full day after having the photographs speaks also of the harmlessness of the error. Indeed, it was never determined whether any of the jurors saw the photos for more than a few seconds if at all.").

4. *Even if Seen by the Jury, the Reconsideration Versions of the Exhibits Could Not Have Caused Any Prejudice*

Even if, contrary to all reasonable likelihood, the jury had actually reviewed the Reconsideration Version exhibits among the thousands of exhibits on its laptop, there is no reasonable possibility that they prejudiced the jury given the circumstances and context of the case.

None of the erroneously unredacted text—*i.e.*, a link (without the linked article) reading "https://amp.cnn.com/cnn/2022/01/25/politics/us-arms-sales-egypt/index.html", a text from Nadine Menendez to Hana stating "I'm sending you an article," and the highly redacted phrase "Director office of Egyptian affairs in state department 'Kathryn Kiser' told our DCM today [redacted] a billion $ of usaid to Egypt before the recess !!!!"—would plausibly have affected the decision of any hypothetical average juror. They did not relate to any matter that was in any real dispute between the parties. Indeed, the Government asked the jury to convict on all of the Egypt

---

[3] Of course, the jury deliberations involved consideration not merely of the Egypt counts to which the Reconsideration Version exhibits related (*i.e.*, Counts One, Two, Three, Five, Six, Seven, Eight, Fifteen, and Sixteen), but also counts involving the New Jersey Attorney General's Office, the New Jersey U.S. Attorney's Office, Qatar, and obstruction of justice as well (*i.e.*, other portions of Counts, One, Two, and Three, as well as the entirety of Counts Four, Nine, Ten, Eleven, Twelve, Thirteen, Fourteen, Seventeen, and Eighteen), rendering it vanishingly unlikely that the jury felt the need to delve deeply into every document supporting the Egypt counts.

counts on the basis solely of Menendez's attempts to pressure the USDA, not even relying on Egyptian aid at all. (Tr. 6395-400.)

Moreover, without any explanation from a witness or argument from a party in summation, the non-admitted portions of the Reconsideration Versions would have been meaningless and impenetrable if a juror had seen them. By contrast, courts have found even extraneous documents with an obvious facial prejudicial effect to be insufficiently prejudicial in the circumstances of the case. *See, e.g.*, *Smithwick*, 758 F. Supp. at 183 (finding no prejudice from submission to the jury of extraneous photographs of murder victim, even while acknowledging that "No photograph of a deceased person is going to be pleasant."). Here, the extraneous portions of the documents, without context or explanation, simply lacked any facial relevance or prejudicial effect at all.

Even to the extent relevant, the Reconsideration Version exhibits were cumulative with other admitted evidence, which, as noted in part in the Government's post-trial memorandum, included extensive evidence of statements by and requests to Menendez concerning military aid to Egypt. (*See, e.g.*, Dkt. 611 at 11-12, 18-24, 50-56.)

Where, as here, extraneous documents are simply cumulative with admitted evidence, the inference of prejudice is rebutted. *See, e.g.*, *Nkansah*, 699 F.3d at 751 (affirming denial of new trial where contents of document "were either immaterial or already on the record"); *O'Brien*, 2017 WL 2371159, at *13 (rejecting new trial where substance of allegedly incorrect document was consistent with facts in the record). Indeed, the Second Circuit has affirmed the denial of a motion for a mistrial without a hearing in a case where jurors actually considered extra-record information about a fact "critical to the government's case," because that fact was "cumulative" with "abundant properly admitted evidence" and not itself subject to dispute in summation. *United States v. Hillard*, 701 F.2d 1052, 1064 (2d Cir. 1983). Here, where the facts at issue were so far from "critical to the government's case" that the Government urged the jury to convict without even considering them (Tr. 6395-400), there is no basis for finding prejudice.

Lastly, but no less importantly, the evidence of guilt in this case was overwhelming. As discussed in detail in the Government's memorandum of law in opposition to the defendants' post-trial motions (Dkt. 611 at 11-42, 48-66), there was far more than "an abundance of properly admitted evidence," *Weiss*, 752 F.2d at 783; *see also, e.g.*, *Stasiv*, 2021 WL 4888865, at *2 & n.2 (finding extra-record evidence in jury room harmless, even while assuming it was covered by district court's ruling excluding evidence of prior criminal record, because of the overwhelming evidence). That evidence, just on the Egypt counts, included testimony of Menendez's staffers, Hana's employees, a public official Menendez tried to pressure, other Executive Branch official witnesses, law enforcement witnesses involved in searches, a Senate ethics official, a jeweler Menendez and Nadine Menendez used to liquidate gold bar bribes under false pretenses, and voluminous documentary evidence including extensive text message, email, phone, and financial evidence (*see, e.g.*, Dkt. 611 at 11-25, 48-57), to say nothing of the other documentary, cooperator, other witness, fingerprint expert, DNA expert, cell site expert, and other evidence that was offered principally to prove other portions of the broader scheme (*see id.* at 25-42, 58-66). This is simply not a case in which scant improperly redacted exhibits could possibly have caused any prejudice.

5. *The Court's Ruling Excluding the Reconsideration Version Exhibits Does Not Render their Inadvertent Inclusion on the Jury Laptop Prejudicial*

The fact that these exhibits contained material that the Court had ruled inadmissible does not affect the prejudice analysis. *See, e.g.*, *Stasiv*, 2021 WL 4888865, at *2 & n.2 (finding extra-record evidence in jury room harmless even while assuming it was covered by district court's ruling excluding evidence); *United States v. Friedland*, 660 F.2d 919, 928 (3d Cir. 1981) (affirming denial of new trial where evidence covered by a ruling excluding certain categories was provided to jury, but was "inconsequential when compared with" the rest of the evidence, citing *Camporeale*); *United States v. Strassman*, 241 F.2d 784, 785-86 (2d Cir. 1957) (affirming conviction and noting duty of counsel to check exhibits where a document, including portions which had been excluded, was provided to the jury). As an initial matter, the exhibits included on the jury laptop were not the documents that the Government had initially offered, and which the Court excluded in its May 24, 2024 Ruling. Instead, they were a much more limited and redacted subset of those exhibits that the Government offered in its motion for reconsideration, and although the Court rejected the Government's proposal to offer these as well, they present substantially different issues from those the Government originally offered.

The Court's ruling excluding the Reconsideration Versions of the nine exhibits does not necessitate the conclusion that, in the redacted form they were included on the laptop, they still infringed on the Speech or Debate Clause. Indeed, in a surreply to the Government's motion for reconsideration proposing the Reconsideration Versions, Menendez did not (and could not) make any substantial effort to argue that the Reconsideration Versions would in some way still reveal Menendez's acts, a possibility he briefly raised in a parenthetical without any supporting argument.[4] Instead, he emphasized that if the redactions they contained did obscure reference to legislative acts, the Reconsideration Versions would be confusing and lack probative value. (*See* Dkt. 425 at 2 ("But if the proposed redactions actually obscured reference to Senator Menendez and his legislative acts beyond the jury's comprehension (a highly dubious proposition), then the proposed exhibits would be stripped of any probative value, resulting only in juror confusion. The government cannot have it both ways. Either the evidence is probative as to a legislative act, in which case it is barred by the Speech or Debate clause, or it has no probative value in this case and must be excluded." (footnote omitted)).)

In any event, none of the nine Reconsideration Version exhibits, in the form they were loaded onto the jury laptop, makes any reference to any legislative act. Even in the exceedingly unlikely circumstance in which a juror reviewed any or all of these documents, that juror would lack any information about whether Menendez had or had not performed a legislative act. The lone act of sending a link reading "https://amp.cnn.com/cnn/2022/01/25/politics/us-arms-sales-

---

[4] In initially opposing the redactions, Menendez claimed that these redactions would still lead the jury to assume an action by Menendez (Dkt. 422 at 2-3), but he all but abandoned this argument after the Government pointed out that the evidence showed that the State Department, and not any Member of Congress, was empowered to and did take actions that would create obstacles to the provision of aid to Egypt, fatally undercutting any inference that Menendez would have or did do so (*see* Dkt. 423 at 2 (citing Tr. 868, 873-76, 930)).

egypt/index.html", without the linked article, would not allow a juror to conclude that any arms sale was concluded or rejected (even assuming that that would lead to the inference that Menendez played a role), rather than any number of other reasons an article might discuss the topic of arms sales to Egypt. Similarly, the Reconsideration Versions of the other messages—which in the redacted form they were included on the laptop lacked any tie to any action by Menendez (or even any action at all)—simply did not threaten the "independence of individual legislators," consistent with the Court's reasoning in approving other redactions. *United States v. Menendez*, No. 23 Cr. 490 (SHS), 2024 WL 3014205, at *2 (S.D.N.Y. June 14, 2024) ("[T]he independence of individual legislators is not threatened if the identities of those legislators are withheld from the relevant documents." (internal quotation marks omitted)). Even if the Court had been concerned that the Reconsideration Versions of the exhibits could have been a component of some argument that Menendez engaged in a legislative act, that concern is not implicated where the Reconsideration Versions were not shown to the jury, let alone argued. Even in the implausible case where a juror simply happened upon the Reconsideration Versions of the exhibits in deliberation, the juror would not have any understanding of whether Menendez took or did not take a legislative act from the face of these documents, which do not reference any act, let alone by Menendez.

In sum, the exhibits on the jury laptop do not reference any legislative acts. The mere fact that (in actuality but unknown to the jury) Menendez's staff had taken legislative acts with respect to these subjects is simply not relevant, because no evidence of those acts was presented. This principle is the same one applied by the Court in overruling Menendez's objection to the reference to the text of Senate Bill 1102, a piece of legislation that (in actuality but unknown to the jury) Menendez had taken a legislative act to advance. (*See* Tr. 3591-92 (Court's ruling).)

Even if the Reconsideration Versions of the exhibits had more squarely implicated legislative acts, they would still not have been prejudicial, for the reasons stated above, even if the defendants had not waived any objection to them in inspecting the jury laptop, and even if there were any basis to believe any juror became aware of the contents of the non-admitted portions of the exhibits in any way, none of which occurred. *See, e.g.*, *United States v. Johnson*, 383 U.S. 169, 185-86 (1966) (declining to review court of appeals' "assessment of the record" in determining that admitted Speech or Debate material "was prejudicial" as to challenged counts, without suggesting that such an assessment should not be performed to determine a new trial motion); *id.* at 188 (Warren, C.J., joined by Brennan, J., and Douglas, J., concurring in part and dissenting in part) ("It is my conclusion that the Court of Appeals erred in determining that the evidence concerning the speech infected the jury's judgment on the substantive counts. The evidence amply supports the prosecution's theory and the jury's verdict on these counts . . . ."). Here, where the jury was never shown the improperly redacted portions of the Reconsideration Versions, or had them described, the Government's case cannot be said to in any way "rely on" those portions, even assuming *arguendo* both that those portions had revealed legislative acts and the jurors had become aware of them. *See United States v. Brewster*, 408 U.S. 501, 512 (1972) ("*Johnson* thus stands as a unanimous holding that a Member of Congress may be prosecuted under a criminal statute provided that the Government's case does not rely on legislative acts or the motivation for legislative acts."); *cf., e.g.*, *United States v. Williams*, 644 F.2d 950, 952 (2d Cir. 1981) (affirming denial of motion to dismiss indictment where material covered by the Speech or Debate Clause "constituted an insignificant portion of the evidence presented to the jury and

Honorable Sidney H. Stein
November 13, 2024
Page 11

was not a factor in the issuance of the indictment"); *see also United States v. Renzi*, 651 F.3d 1012. 1029 (9th Cir. 2011) ("[T]he mere fact that some 'legislative act' evidence was presented to the grand jury cannot entitle Renzi to dismissal. That would contravene the [Supreme] Court's example in *Brewster* and *Johnson*—two cases in which the Court decided that dismissal of the indictment was not warranted even though each Member was indicted by grand juries to whom the Government had presented 'legislative act' evidence.").

In sum, no action is required due to all parties' inadvertent oversight allowing the nine Reconsideration Version exhibits to be loaded onto the laptop provided to the jury.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By:     s/ Paul M. Monteleoni
        Eli J. Mark
        Daniel C. Richenthal
        Paul M. Monteleoni
        Lara Pomerantz
        Catherine E. Ghosh
        Assistant United States Attorneys
        (212) 637-2431/2109/2219/2343/1114
        Christina A. Clark
        Special Assistant United States Attorney
        (202) 307-5191

Enclosures

cc:     (by ECF)

        Counsel of Record