

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

December 16, 2024

**By ECF**

The Honorable Sidney H. Stein
United States District Judge
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007

      Re:   *United States v. Robert Menendez, Wael Hana, and Fred Daibes*,
             S4 23 Cr. 490 (SHS)

Dear Judge Stein:

      The Government respectfully writes in the above-captioned matter to notify the Court that on December 11, 2024, the Government discovered that several admitted exhibits consisting of long chat chains (collectively, the "Chat Exhibits") contained small portions of material covered by the Court's rulings excluding certain evidence.[1]  This error went undiscovered by all parties until it was identified by the Government on December 11, 2024, following full briefing on the defendants' supplemental post-trial motions.

      For many of the reasons discussed in the Government's opposition to the defendants' supplemental post-trial motions (Dkt. 648), and in particular, because there is no reasonable possibility that the jury found, in its two days of deliberations, these messages buried deep in multi-page exhibits that all counsel did not find in *weeks* of focused searching, these exhibits do not require any action.  Although this conclusion is readily apparent from the record, the Government herein describes the background and issue in detail so that the Court is fully apprised of all relevant facts.

---

[1] This error is separate from the inadvertent inclusion of insufficiently redacted versions of the September 2019 Messages and the January 2022 Messages (and two other unrelated exhibits) on the jury laptop that was described in the Government's November 13, 2024 letter (Dkt. 630) and the defendants' supplemental post-trial motions (Dkts. 641-645, 651-653).  (*See generally* Dkt. 648 at 1-11 (summarizing jury laptop issue).)

Honorable Sidney H. Stein
December 16, 2024
Page 2

I. **The Chat Exhibits**

As described further below, during the course of its ongoing preparation for the trial of Nadine Menendez, the Government discovered that the Chat Exhibits were admitted into evidence containing unredacted portions of the September 2019 Messages and the January 2022 Messages.[2] Although all of these exhibits were admitted into evidence without objection, none of them was ever published to the jury, referenced in any party's jury addresses, or mentioned in the presence of the jury at all.

On April 19, 2024, in preparation for the May 2024 trial, the Government marked and disclosed to the defendants an initial production of Government Exhibits. That production included a number of long text message chains, including—as relevant here—each of the Chat Exhibits. The Chat Exhibits consist of Government Exhibit B207 (a 252-page PDF file reproducing a text message chat and a WhatsApp chat between Nadine Menendez and Wael Hana), Government Exhibit C207 (a 636-page PDF file reproducing a WhatsApp chat between Hana and Ahmed Helmy), Government Exhibit D207 (a 51-page PDF file reproducing a chat between Fred Daibes and Hana), and Government Exhibit C603 (a 127-page PDF file reproducing a WhatsApp chat between Nadine Menendez and Hana).[3]

The Chat Exhibits were all offered and admitted into evidence on May 28, 2024, in connection with the testimony of the first of the Government's summary witnesses and in advance of the introduction of the Government's first chronological summary chart, Government Exhibit 1302. Each of the Chat Exhibits was moved into and received in evidence, without objection, by being included on a list of exhibits to be admitted (the "Admission List"), which itself was a marked Government Exhibit (Government Exhibit 1330). (*See* Tr. 1169-70; *see also id.* at 1106-07 (Government explaining procedure).) As set forth below, three of the Chat Exhibits (the "Uncited Chat Exhibits") were not cited in the pertinent summary chart, Government Exhibit 1302, and were intended by the Government to be deleted from the Admission List, but were inadvertently not removed prior to the Government offering the Admission List, and their presence on the Admission List was not objected to by defense counsel either at the time or at any later point. The fourth Chat Exhibit, a chat chain that was cited in Government Exhibit 1302 only for two missed voice calls (the "Missed Call Chat Exhibit"), was properly included in the Admission List, but neither the Government nor defense counsel noticed that this exhibit included a copy of a different message that was covered by the Court's May 24 Ruling, which had been issued a few days earlier, excluding evidence.

---

[2] The terms used herein are consistent with those terms defined in the Government's opposition to the defendants' supplemental post-trial motions (Dkt. 648).

[3] Each of these documents is within the admitted exhibit set previously provided to the Court and the Government does not attach them here due to their length, but can provide the Court with additional copies upon request.

        A.       *The Uncited Chat Exhibits*

The three Uncited Chat Exhibits (Government Exhibits B207, C207, and D207)—that is, those not included in the pertinent summary chart (Government Exhibit 1302)—were never mentioned in the jury's presence or cited or described in any document the jury saw, including in any summary chart, although, as noted above, they were included by exhibit number (without description) on the Admission List. Like all admitted exhibits, they were also listed with a non-substantive description on a 93-page index of all admitted Government Exhibits that was provided by the parties to the jury in connection with its deliberation (the "Jury Index").

The Uncited Chat Exhibits were initially referenced in an early draft of Government Exhibit 1302 circulated to the defendants before trial, but were later removed from that chart, in part based on defense objections related to the citation of long chat chains as opposed to smaller subparts of those chains. As a result, the Uncited Chat Exhibits were not cited at all in the final, admitted version of Government Exhibit 1302, which referenced only smaller subparts of those exhibits (which subparts were each separately numbered and properly admitted).

Indeed, as stated above, the Government intended to remove the Uncited Chat Exhibits from the Admission List (and thus not to offer the Uncited Chat Exhibits at all), but inadvertently did not notice them when removing exhibits from that lengthy list. The Government circulated to defense counsel on the morning of May 28, 2024 a hardcopy initial version of the Admission List, and sent an electronic copy shortly before noon, in advance of the summary witness's anticipated testimony in the afternoon.[4] Counsel for Robert Menendez identified several errors in the initial version and communicated that the Admission List should be checked for accuracy before being offered. The presence of the Uncited Chat Exhibits was not one of the errors identified by counsel for Menendez. In addition to fixing the errors identified by defense counsel, the Government's team worked quickly during the trial day (while the witness prior to the summary witness was testifying) in an attempt to find and remove from the Admission List all documents that were not cited in Government Exhibit 1302. As a result of those efforts, the Government circulated a revised version of the Admission List shortly before 2:00 PM (and shortly before the relevant summary witness was to take the stand), indicating that the Government had gone through the Admission List in order to remove the exhibits that were not on the chart and not intended to be offered in connection with the summary witness's testimony. Counsel for Menendez responded after several minutes that on an initial review, it looked accurate, with the exception of one exhibit that counsel believed should not be on the Admission List.

---

[4] The Government had previously, beginning on May 15, 2024, indicated its intent to call the summary witness and introduce the exhibits cited on Government Exhibit 1302 (as well as additional exhibits, which the Government advised the defendants of beginning on May 16, 2024). The Admission List circulated on May 28, 2024 was intended to reflect a subset of these previously noticed exhibits, but—due to an inadvertent failure to incorporate amendments made to the exhibits cited and summarized in Government Exhibit 1302—included the Uncited Chat Exhibits, which had been cited in an earlier version of Government Exhibit 1302.

Honorable Sidney H. Stein
December 16, 2024
Page 4

Shortly after circulation of the revised Admission List, the testimony of the prior witness concluded, and the Government offered the exhibits cited in the Admission List, with a reservation on the one exhibit defense counsel had identified. (Tr. 1169-70.) The documents on the Admission List (*i.e.*, including the Uncited Chat Exhibits) were admitted without objection, although counsel for Menendez stated, "I don't want to interrupt the flow, but I will wish to discuss this afterwards." (Tr. 1170.) At the conclusion of the witness's testimony that day, counsel for Menendez raised objections regarding the mode of questioning of the summary witness, but did not raise any objection to the admission of documents. (Tr. 1277-79.)

In reviewing the Admission List, the Government did not notice and remove, and defense counsel also did not raise or object to the presence of, the Uncited Chat Exhibits. Each of the Uncited Chat Exhibits contains some content implicated by the Court's May 24 Ruling excluding certain evidence on the basis of the Speech or Debate Clause (Dkt. 420). As relevant here:

- Page 72 of the 252-page Government Exhibit B207 (in a portion containing a text message chat) contains the link that Nadine Menendez texted Hana in the January 2022 Messages discussed in connection with the defendants' supplemental post-trial motions. (*See* Dkt. 648 at 7-8.) Page 166 of Government Exhibit B207 (in a portion containing a WhatsApp message chat) contains an excluded portion of one of the January 2022 Messages, which is Nadine Menendez texting Hana, "Bob had to sign off on this . I'm sending you an article".

- Pages 547 and 548 of the 636-page Government Exhibit C207 contain duplicate copies of the unredacted Helmy Message in the September 2019 Messages discussed in connection with the Government's opposition to the defendants' supplemental post-trial motions. (*See* Dkt. 648 at 3-4.) Pages 561 and 562 of Government Exhibit C207 contain duplicate copies of the unredacted Helmy Message, which Helmy reforwarded to Hana during the chat several days later.

- Page 10 of the 51-page Government Exhibit D207 contains a copy of the Helmy Message, which Hana forwarded to Daibes.

While the number of exhibits listed on the Admission List was substantial, and the Admission List was only finalized a short time before the exhibits on it were formally offered, any counsel, for any party, could have noticed and corrected the error at any time after the Uncited Chat Exhibits were offered on May 28, 2024, and before these exhibits—which were never shown to or even mentioned in front of the jury—were included on the laptop provided to the jury on July 12, 2024, approximately six weeks later.

Indeed, given the volume of exhibits in this complicated, lengthy trial, all parties regularly worked collaboratively in good faith to resolve potential or actual issues related to exhibits. For example, the morning after the admission of documents on the Admission List (*i.e.*, including the Uncited Chat Exhibits), the Government noticed that a different exhibit had been included on the Admission List in error. Even though that exhibit was (like the Uncited Chat Exhibits) by that

point formally in evidence, the Government invited defense counsel to argue that it should be excluded prior to its being shown to the jury.[5]

No counsel communicated to the Government any awareness of the excluded material in the Uncited Chat Exhibits during trial. The admission of each of the Uncited Chat Exhibits was expressly noted on the admitted exhibit lists that the Government circulated to all defense counsel throughout trial, beginning with the May 29, 2024 list (which was circulated several minutes after midnight on May 30). In addition to the exhibit lists noting the admission of the Uncited Chat Exhibits, defense counsel had, since April 19, 2024, the exhibits themselves, which contained the excluded content. As to one of the Uncited Chat Exhibits, Government Exhibit D207, the Government itself noticed the error during the trial and circulated a revised version on June 21, 2024, redacted pursuant to the May 24 Ruling. Unfortunately, the Government later inadvertently included the unredacted version, rather than the replacement redacted version, in the set of admitted exhibits to be provided to the jury, both in the version uploaded for the defense on July 10, 2024, and the version on the jury laptop. (*See* Dkt. 648 at 11-12.)

As explained above, none of the Uncited Chat Exhibits was ever shown to the jury, cited in any admitted summary chart, or referenced before the jury by any witness or any counsel for any party. The only documents that the jury had access to listing the exhibit numbers of the Uncited Chat Exhibits were the Admission List itself (which only listed the exhibit numbers of these exhibits in a long list of other exhibit numbers, with no description), and the Jury Index, a 93-page document that did not substantively describe the exhibits themselves.[6]

### B. The Missed Call Chat Exhibit

The last of the Chat Exhibits is the Missed Call Chat Exhibit (Government Exhibit C603), which was also never mentioned in the jury's presence, and was cited in Government Exhibit 1302, but only—on a page of that exhibit the jury was never shown—for two line entries that each reflected only a missed WhatsApp voice call. (*See* GX 1302 lines 1266, 1268.)

---

[5] By the same token, later during the trial, the Government informed the defendants that upon reviewing a defense exhibit that had already been admitted into evidence, the Government objected to it, and Menendez, the offering defendant, ultimately agreed to redact some text from that exhibit, which the Court, after hearing arguments seeking a broader removal of the exhibit, ordered. (*See* Tr. 6263-64.)

[6] The listing for Government Exhibit B207, on page 73 of the Jury Index, read: "Report of message thread between 516-395-1745 and 201-370-4144, [03/10/2021-04/23/2022]". The listing for Government Exhibit C207, on page 79 of the Jury Index, read: "Report of message thread between 15515744550@s.whatsapp.net and 12027950565@s.whatsapp.net between 07/09/2018 - 07/20/2021". The listing for Government Exhibit D207, on page 85 of the Jury Index, read: "Report of message thread between 15515744550@s.whatsapp.net and 15515744550@s.whatsapp.net from 07/19/2019 to 01/01/2023".

The Missed Call Chat Exhibit was a report of a WhatsApp chat between Nadine Menendez and Hana, which listed both text messages and missed WhatsApp calls in the same chain. Page 66 of the 127-page Missed Call Chat Exhibit contains a copy of the excluded portion of one of the January 2022 Messages, which is Nadine Menendez texting Hana, "Bob had to sign off on this . I'm sending you an article". The Missed Call Chat Exhibit does not include the link that was texted (which was sent by text message, not WhatsApp). Pages 66 and 67 of the Missed Call Chat Exhibit also contain admitted portions of the January 2022 Messages, including, as relevant here, the two missed WhatsApp voice calls referenced in Government Exhibit 1302.

The Missed Call Chat Exhibit was included on the Admission List and admitted in evidence on May 28, 2024, without objection, in connection with the testimony of the relevant summary witness. No party apparently noticed, or objected to, the excluded content in the Missed Call Chat Exhibit, which was cited not for that content but only for the two missed calls. The admission of the Missed Call Chat Exhibit was noted in the Government's lists of admitted exhibits circulated to counsel, beginning on the May 29, 2024 list, and the Missed Call Chat Exhibit itself had been produced to the defendants on April 19, 2024.

The Missed Call Chat Exhibit was never shown to the jury or referenced before the jury by any witness or any counsel for any party. Apart from two line entries on page 97 of Government Exhibit 1302 (a page which was not shown to the jury during the summary witness's testimony (*see* Tr. 1567 (concluding Special Agent Coughlin's direct examination on page 96)))—the detail portions of which each read, in their entirety, "Missed WhatsApp voice call (GX C603)"—the exhibit number of the Missed Call Chat Exhibit was not listed in any document the jury had other than the Admission List itself (which cited only its exhibit number among many others) and the 93-page Jury Index, which did not substantively describe it.[7]

### C. The Discovery of the Pertinent Content

Defense counsel did not raise any objections to the inclusion of the pertinent content in the Chat Exhibits at any time between their admission into evidence and the filing of this letter. As noted in connection with their supplemental post-trial motions, the defendants were provided access, on November 15, 2024, to copies of the exhibit set loaded on the jury laptop, and searched it for additional errors, bringing two to the Court's attention on November 27, 2024, almost two weeks later. (Dkt. 648 at 8-9.) To the Government's knowledge, no party was aware of the presence of the pertinent content before Government discovered it on December 11, 2024.[8]

---

[7] Page 83 of the Jury Index lists Government Exhibit C603 as "Report of message thread between 5163951745@s.whatsapp.net and will@iseghalal.com between 06/17/2021 - 05/21/2022".

[8] Since discovering the presence of certain excluded material in the Chat Exhibits on December 11, 2024, the Government has undertaken its best efforts to ascertain if other similar errors could have affected other exhibits loaded onto the jury laptop (in addition to those efforts undertaken prior to filing the November 13, 2024 letter regarding errors pertaining to materials loaded onto the jury laptop). These efforts have included attempts to review those exhibits for which

Honorable Sidney H. Stein
December 16, 2024
Page 7

## II. The Chat Exhibits Do Not Require Any Action

For many of the reasons applicable to the Reconsideration Versions discussed in connection with the defendants' supplemental post-trial motions, the Chat Exhibits described in this letter do not warrant a new trial. Indeed, several of these reasons apply with even greater force to the Chat Exhibits.

As an initial matter, the Chat Exhibits were formally admitted without objection—whether contemporaneously or otherwise *nunc pro tunc* during the trial—which alone defeats any request for a new trial based on the Chat Exhibits, just as it defeats any evidentiary claim first raised after trial that fails to meet the demanding plain error standard. *See, e.g.*, *United States v. Washington*, No. 21 Cr. 603 (VEC), 2024 WL 4457707, at *2-3 (S.D.N.Y. Oct. 10, 2024) (applying plain error standards on Rule 33 motion based on failure to timely object); *United States v. Tuzman*, 15 Cr. 536 (PGG), 2021 WL 1738530, at *30 (S.D.N.Y. May 30, 2021) (same); *United States v. Riley*, 90 F. Supp. 3d 176, 185 (S.D.N.Y. 2015) (same).

But assuming that the Court believes it appropriate to analyze these materials as documents containing extra-record material consistent with the principles discussed in the Government's opposition to the defendants' supplemental post-trial motions, because they contained excluded matter that was not presented to the jury during the trial but was included among the exhibits that the jury had access to in its deliberations, any request for a new trial still fails. *See, e.g.*, *United States v. Strassman*, 241 F.2d 784, 785-86 (2d Cir. 1957) (affirming conviction and noting duty of counsel to check exhibits where an admitted document, including portions which had been excluded, was provided to the jury); *United States v. Coney*, 76 F.4th 602, 604, 606 n.2 (7th Cir. 2024) (affirming conviction, analyzing documents that had been "formally admitted into evidence," but "over objections that the district court overruled on the condition that" the documents would be removed from the jury laptop). (*See generally* Dkt. 648 at 13-16.)

---

superseding versions were produced during trial, in order to determine whether the correct versions of other exhibits were loaded onto the jury's laptop, as well as attempts to inspect unrelated admitted exhibits for matter the Court excluded in its rulings on the Speech or Debate Clause. As a result of these efforts, the Government has discovered that one other unrelated exhibit in evidence, a news article never referenced in any party's jury addresses, contained on its fifth page (which page was never shown to the jury), a reference to then-Senator Patrick Leahy having placed a hold (*see* GX 10A-8 at 5), which should have been redacted pursuant to the Court's oral ruling (Tr. 1018). This reference (unnoticed by any of the parties until now) does not support the defendants' supplemental post-trial motions, for all of the reasons discussed in the Government's filings in connection with those motions (*see* Dkt. 648 at 16-55), and especially because the basis for the redaction was for the potential benefit of another Senator—and not the defendants here, who cannot invoke another Senator's Speech or Debate Clause rights. *See, e.g.*, *Gravel v. United States*, 408 U.S. 606, 622 (1972) (the Speech or Debate Clause is "invocable only by the Senator or by the aide on the Senator's behalf"). Nor could the defendants possibly have been prejudiced by reference to an act of a non-conspirator, which was not alleged to have been caused by the defendants.

        A.      *Waiver*

The arguments the Government made with respect to waiver (Dkt. 648 at 16-20) apply with even greater force to the Chat Exhibits. Unlike with the Exhibits at issue in the supplemental post-trial motions—where defense counsel had a period of approximately 48 hours to inspect the versions at issue before they were submitted to the jury—with respect to all of the Chat Exhibits, the defendants had many weeks to notice each portion of excluded matter before its submission to the jury.

Even leaving aside that all parties did not notice that the Chat Exhibits contained excluded material before they were offered, all parties also had approximately six weeks *after* the admission of the Chat Exhibits to notice the issue and seek appropriate redactions. Such redactions could have been made at any time before the submission of the laptop to the jury, considering the jury was never shown these documents. Indeed, during the course of trial, the parties conferred on and Menendez agreed to a redaction to a defense exhibit that was already in evidence. (*See* Tr. 6263-64.) And as noted above, with respect to the admission of exhibits on May 28, 2024 in particular (the date the Chat Exhibits were entered in evidence), the Government on its own noticed a similar error in the inclusion of a separate exhibit on the Admission List, and the next day offered defense counsel an opportunity to raise objections to that exhibit, even though it (like the Chat Exhibits) had already been formally admitted.[9]

In short, each party had all of the information necessary to identify the excluded matter in the Chat Exhibits from at least the moment of their being offered, even leaving aside entirely their opportunity to notice the issue before the exhibits were offered. All parties had the Chat Exhibits prior to the offer of those exhibits, and each of the Chat Exhibits was then identified as admitted on the Government's admitted exhibit lists.[10]

Thus, even entirely discounting the time *prior* to the admission of the Chat Exhibits, as to every single one of the Chat Exhibits, all counsel had multiple weeks to notice the error, in addition to the almost 48-hour period to review the final exhibit set to be loaded on the laptop. The arguments for waiver, thus, apply with even greater force to the Chat Exhibits than to the Exhibits at issue in the supplemental post-trial motions.

---

[9] Indeed, counsel for Menendez appeared to have made the decision, at the time of the offer of exhibits through the Admission List, to reserve any objections regarding that list until later so as not to "interrupt the flow," an apparent recognition of the ability to fix any arguable errors after the formal admission of documents on the Admission List. (*See* Tr. 1170 (defense counsel stating, immediately after receipt of Admission List documents in evidence, "Your Honor, I don't want to interrupt the flow, but I will want to discuss this afterwards.").)

[10] In the case of only one of the Chat Exhibits (Government Exhibit D207) did the Government ever circulate a revised version with redactions, and even this revised version was not circulated until June 21, 2024, more than *three weeks* after the original admission of that exhibit.

Honorable Sidney H. Stein
December 16, 2024
Page 9

Menendez's claim that none of this matters with respect to anything on the jury laptop implicating the Speech or Debate Clause, because he cannot be held to basic standards of trial participation and waiver where the Speech or Debate Clause is concerned (Dkt. 645 at 14; Dkt. 651 at 4), deeply misstates the law. Menendez plucks the Supreme Court's observation that "the ordinary rules for determining the appropriate standard of waiver do not apply" to Speech or Debate Clause material, *United States v. Helstoski*, 442 U.S. 477, 491 (1979), from the context in which it was made. There, the Supreme Court rejected the government's argument that by testifying in the grand jury, a Member of Congress had waived the protections of the Clause on the *subject matter* at issue, such that he could—if the government's view in that case were correct—then be prosecuted, at trial, on the basis of evidence of his legislative acts on that same subject matter. *Id.* at 490-91. And of course, such subject matter waiver, which was at issue in *Helstoski*, can have an exceedingly powerful effect when it is found, allowing a trial based on otherwise protected acts and allowing the introduction and reliance on otherwise protected materials beyond those the Member of Congress himself or herself chose to introduce. *See, e.g.*, *United States v. Myers*, 635 F.2d 932, 942 (2d Cir. 1980) ("The protection against being 'questioned' outside of Congress prevents the use of legislative acts against a Member. It does not prevent him from offering such acts in his own defense, even though he thereby subjects himself to cross-examination."); *United States v. Renzi*, 769 F.3d 731, 746 (9th Cir. 2014) ("a Congressman cannot claim the protections of the privilege when he himself introduces the violative evidence"); *see generally In re Grand Jury Proceedings*, 219 F.3d 175, 182 (2d Cir. 2000) ("[A] party cannot partially disclose privileged communications or affirmatively rely on privileged communications to support its claim or defense and then shield the underlying communications from scrutiny by the opposing party."). As a result, it is unsurprising that the Supreme Court in *Helstoski* erected a heightened standard before recognizing such a far-reaching waiver. 442 U.S. at 491.

But saying that the standard for *subject matter* waiver is heightened does not remotely suggest that Menendez is relieved from the fundamental rules governing objections to *discrete items of evidence*, which must be timely. The Government does not here claim that Menendez's failure to object has effected a subject matter waiver, or that the Chat Exhibits or materials inadvertently placed on the jury laptop thereby became unprotected, such that Menendez now may be subject to a prosecution that intentionally relies on evidence of his legislative acts. The present question before this Court is far narrower. The question is simply whether Menendez, like any litigant, may through his conduct waive or forfeit objections to particular evidence, such that he cannot later be heard to make objections or related claims (whatever their basis may be). *See* Fed. R. Crim. P. 51(b) (requiring contemporaneous objection to preserve claim of error); Fed. R. Crim. P. 52(b) (plain error exception); *see also, e.g.*, *United States v. Yu-Leung*, 51 F.3d 1116, 1120 (2d Cir. 1991) ("To be timely, an objection must be made as soon as the ground of it is known, or reasonably should have been known to the objector." (internal quotation marks omitted; alterations incorporated)); *Washington*, 2024 WL 4457707, at *2-3 (applying Rule 52(b) plain error standard on Rule 33 motion for new trial).

The answer to that question is that Menendez, for these purposes, is like any other litigant. Under the uniform case law cited by the Government in connection with the defendants' supplemental post-trial motions (Dkt. 648 at 13-14), and consistent with the Federal Rules of

Criminal Procedure, a waiver of a claim that a defendant was prejudiced by the jury being inadvertently provided with access to materials not in evidence does not turn on the *nature* of those materials, but on whether the defendant was given an opportunity to discover the inadvertent provision. And this requirement of contemporaneous objection, no matter the importance of the substantive interest at issue, is no anomaly in the law, and not limited to non-constitutional claims, or intentional decisions not to object. *See, e.g.*, *Puckett v. United States*, 556 U.S. 129, 135-36 (2009) (adhering to plain error rule and criticizing arguments to judicially create exceptions to it); *Yakus v. United Sates*, 321 U.S. 414, 444 (1944) ("No procedural principle is more familiar to this Court than that a constitutional right may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it."); *United States v. Yousef*, 327 F.3d 56, 125 (2d Cir. 2003) (a failure to bring timely a motion required to be brought under Federal Rule of Criminal Procedure 12, which includes multiple motions alleging constitutional violations, constitutes a "complete" waiver, barring review even for "plain error," and "[a] strategic decision by counsel not to pursue a claim, inadvertence of one's attorney, and an attorney's failure to timely consult with his client are all insufficient" to overcome such waiver).

The Supreme Court in *Helstoski*, considering an appeal from an order deciding a pretrial motion, had no occasion to and certainly did not issue a rule exempting Members of Congress from the longstanding and fundamental requirement, at trial, to render contemporaneous objections and claims. 442 U.S. at 485. Indeed, it would have been absurd to do so, as such a rule would perversely reward gamesmanship. A super-litigant who was empowered by such a rule to freely raise objections in 20/20 hindsight would have every incentive *not* to raise them contemporaneously when they could be corrected. *See, e.g.*, *Puckett*, 556 U.S. at 134 ("[T]he contemporaneous-objection rule prevents a litigant from 'sandbagging' the court—remaining silent about his objection and belatedly raising the error only if the case does not conclude in his favor."); *United States v. Gersh*, 328 F.2d 460, 463 (2d Cir. 1964) (Friendly, J.) (a defendant cannot be heard to complain when he "stood mute, gambling on an acquittal while holding th[e] issue in reserve"); *cf. United States v. Menendez*, 720 F. Supp. 3d 301, 310 (S.D.N.Y. 2024) ("[W]hile the Speech or Debate Clause must be read broadly to effectuate its purpose of protecting the independence of the Legislative Branch, its purpose was not to make Members of Congress super-citizens, immune from criminal responsibility." (internal quotation marks omitted)); *see also United States v. Williams*, 644 F.2d 950, 952 (2d Cir. 1981) (refusing to disclose grand jury minutes to Senator in absence of particularized need, holding "Appellant had no general immunity from the rules that govern the conduct of a criminal bribery proceeding."). The same absurdity refutes Menendez's suggestion that this Court should now impose such a rule—as it would have to in order for him to benefit from it, given that *Helstoski* simply did not consider such a question, and no other court, to the Government's knowledge, has so much as suggested it is the law. On the contrary, the special rule for which Menendez appears to advocate is difficult to reconcile, at best, with the Supreme Court's admonition that courts should not treat unobjected-to errors as having been timely brought. *See, e.g.*, *Puckett*, 556 U.S. at 135-36 ("We have repeatedly cautioned that any unwarranted extension of the authority granted by Rule 52(b) would disturb the careful balance it strikes between judicial efficiency and the redress of injustice, and that the creation of an unjustified exception to the Rule would be even less appropriate." (internal quotation marks omitted)); *id.* at 134 ("There is good reason for [contemporaneous objection rule]; anyone familiar

with the work of courts understands that errors are a constant in the trial process, that most do not much matter, and that a reflexive inclination by appellate courts to reverse because of unpreserved error would be fatal." (internal quotation marks omitted)).[11]

### B.  Lack of Reasonable Possibility that Jurors Saw the Chat Exhibits

The arguments that the jury was exceedingly unlikely to have seen the Reconsideration Versions (Dkt. 648 at 20-32) also apply, and also do so with greater force, to the Chat Exhibits, and are themselves a sufficient and conclusive reason to find that the Chat Exhibits do not warrant a new trial.  As discussed below, none of the exhibit numbers of the Chat Exhibits was ever heard or seen by the jury during the trial, three of the Chat Exhibits were not referenced or cited to the jury *at all*, and the one that was cited was referenced only as the source for summary chart entries (which the jury was never shown and about which there was no testimony from the summary chart witness) noting two missed calls.

The Uncited Chat Exhibits—*i.e.*, all but one of the Chat Exhibits—were not cited before the jury in any summary chart, witness testimony, or jury address at all.  Literally the only way a juror could have come across these Chat Exhibits would have been through perusing *all* of the evidence blindly, which Menendez acknowledges obviously did not happen.  (*See* Dkt. 651 at 17 ("No one is suggesting, as the government posits in its strawman, that the jury opened every single one of the exhibits on the jury laptop and reviewed them all.").)

The one Chat Exhibit that bore an exhibit number that the jury could have even seen in its deliberations (other than in the Admission List and the Jury Index, neither of which contain a substantive description) was cited truly glancingly: the Missed Call Chat Exhibit was cited only in a page of the summary chart that the jury was never shown (*see* Tr. 1567), regarding events that were never mentioned, even briefly, in any party's jury addresses, and was cited in the chart only on two line entries that read, "Missed WhatsApp voice call."  (*See* GX 1302 lines 1266, 1268.) The prospect that the jury, even if it happened upon these unmentioned entries on the summary chart in deliberations, would have decided to inspect the backup documents supporting an entry for a *missed voice call* is vanishingly small, if not truly nonexistent.  The jury would have to have gone to a page in the summary chart that it had never been shown, describing events that no party had presented any evidence or argument regarding, go to the lines on this un-shown and

---

[11] The Court's finding that Menendez's motion to strike portions of the Government's summary chart, which was made during trial, was not belated, *see United States v. Menendez*, No. S4 23 Cr. 490 (SHS), 2024 WL 3014205, at *2 n.1 (S.D.N.Y. June 14, 2024), does not imply that Menendez can—as he would have to in order to escape the Second Circuit's precedent here—at any time, months after trial, press any new claim, so long as he relates it to the Speech or Debate Clause. Indeed, this past Friday, the Court correctly applied Rule 33's strictures to deny Menendez's attempts to relitigate his Speech or Debate claims, *see United States v. Menendez*, No. S4 23 Cr. 490 (SHS), 2024 WL 5103452, at *46 (S.D.N.Y. Dec. 13, 2024), indicating its recognition, in the context of Speech or Debate claims already raised and decided, that Menendez's *substantive* Speech and Debate rights do not entitle him to disregard the *procedural* rules governing when and how he may raise them.

unmentioned page listing missed calls, decide to consult the backup document cited for the missed calls, and navigate—without the benefit of a pin cite in the summary chart—to *page 66* of the 127-page document. There is, to put it mildly, no reasonable possibility that this happened.

The patent implausibility of any claim that the jurors would have been drawn in their deliberations to any of the Chat Exhibits (whether the Uncited Chat Exhibits or the Missed Call Chat Exhibit) is compounded by the fact that the pertinent matter, in each case, appears deep in lengthy exhibits—on page 10 of a 51-page exhibit, page 66 of a 127-page exhibit, pages 72 and 166 of a 252-page exhibit, and pages 547-48 and 561-62 of a 636-page exhibit. The plain reality is that the jurors obviously did not dive deeply into these unmentioned, scarcely-cited or wholly uncited documents and observe any of the excluded matter.

Indeed, tellingly, no defense counsel—having been notified of the initial errors on November 13, 2024, having received another copy of the admitted exhibit set on November 15, 2024, and having conducted their own post-trial review in advance of filing their supplemental post-trial motions—has found these errors in over *four weeks*. Nor, of course, did counsel for the Government discover this error until December 11, 2024, in the course of preparation for the trial of Nadine Menendez. There is truly no remotely plausible possibility that any juror (operating on a single laptop and, unlike all counsel, not having litigated the admissibility of these messages and having no idea what to look for) did so over the course of approximately *two days*. As the Government explained in connection with the defendants' supplemental post-trial motions, just this sort of mismatch between the difficulty counsel would have experienced in finding extra-record matter and the amount of time the jury had to do it justifies denial of a new trial. (*See* Dkt. 648 at 22-23 (citing, e.g., *Coney*, 76 F.4th at 608-09).)

Contrary to the arguments of Menendez and Hana (Dkt. 651 at 16; Dkt 652 at 4-6), circumstances indicating it is "highly likely" that the jury never viewed extra-record exhibits rebut the presumption of prejudice. *United States v. Nkansah*, 699 F.3d 743, 751 (2d Cir. 2012), *abrogated on other grounds by Loughrin v. United States*, 573 U.S. 351, 366 & n.9 (2014). These defendants' citation to the unremarkable proposition that the prejudicial effect of extra-record evidence is assessed under an "objective" standard (Dkt. 641 at 16; Dkt. 652 at 4-6) is a non sequitur. The "objective" standard relates to the prohibition on inquiring into jurors' subjective mental states. *See, e.g.*, Fed. R. Evid. 606(b)(1) (juror may not testify regarding "the effect of anything on that juror's or another juror's vote" or "any juror's mental processes concerning the verdict or indictment"). It has nothing to do with whether the circumstances reveal a reasonable likelihood that any juror was exposed to extra-record evidence at all. And that latter question may be proven by direct evidence, *see* Fed. R. Evid. 606(b)(2)(A) (juror may testify about whether "extraneous prejudicial information was improperly brought to the jury's attention"); *United States v. Jefferys*, No. 20-3630, 2022 WL 9627085, at *3 (2d Cir. Oct. 17, 2022) ("Here, such a presumption is rebutted because there was no indication that the jurors considered the evidence."); *United States v. Hansen*, 369 F. App'x 215, 216 (2d Cir. 2010) ("Here, the introduction of extra-record evidence was not prejudicial because there was no indication that the jury actually

considered it."), or circumstantial evidence, *see Nkansah*, 699 F.3d at 751; *Coney*, 76 F.4th at 608-09.[12]

      In sum, whether proven by direct or circumstantial evidence, a high likelihood that the jury did not see extra-record matter is—contrary to the arguments of Menendez and Hana—a basis for rebutting the presumption of prejudice. *See Nkansah*, 699 F.3d at 751; *Coney*, 76 F.4th at 608-09; *Jefferys*, 2022 WL 9627085, at *3; *Hansen*, 369 F. App'x at 216. The Court of course may, in its discretion, hold an inquiry of jurors consistent with Fed. R. Evid. 606(b)(2)(A). But where—as in *Nkansah*—no party has requested one, the Second Circuit has held that it is not plain error to deny a motion for a new trial without a hearing on the basis that the circumstantial evidence makes it "highly likely" that the jurors did not view the evidence in the time they had to deliberate. 699 F.3d at 751. Contrary to Menendez's and Hana's suggestions (Dkt. 651 at 20; Dkt. 652 at 5-6), certainty is not required. It was surely *theoretically possible* that the jurors in *Nkansah* examined the extra-record proffer agreement and then placed it back in the manila folder in which they found it before retiring for the evening, but that possibility did not justify upsetting the verdict. *Id.* at 747. Here, the circumstances which could conceivably have led to the discovery of any of the excluded matter are far more remote than in *Nkansah*—indeed, so much so that Menendez describes them as a "strawman" argument. (Dkt. 651 at 17.) It is thus far more than "highly likely that the jury did not view" the excluded matter, *Nkansah*, 699 F.3d at 751, and its inclusion in the Chat Exhibits does not warrant any action.

---

[12] Hana, in particular, badly mangles the law on this point, accusing multiple panels of the Second Circuit of being wrong, when it is his own position that is contradicted by the Federal Rules of Evidence and even the same published decisions of the Second Circuit that he cites. (*Compare, e.g.*, Dkt. 652 at 6 (arguing that an inquiry involving "jurors' statements that they had not looked at the extra-record evidence" was "not permitted by the objective standard," and the Second Circuit erred in holding otherwise) *with* Fed. R. Evid. 606(b)(2)(A) (juror may testify about "whether . . . extraneous prejudicial information was improperly brought to the jury's attention") *and United States v. Schwarz*, 283 F.3d 76, 98 (2d Cir. 2002) (holding that Federal Rules "expressly permit testimony concerning 'whether extraneous prejudicial information was improperly brought to the jury's attention'" (quoting Fed. R. Evid. 606(b))).) Hana's lengthy string cite of cases allegedly overlooked by the Government (*see* Dkt. 652 at 5) consists of cases that either do not address the issue of "inquiring into whether the jury became aware of the contents of the extra-record evidence" (*id.*) at all, or actually—contradicting Hana's entire premise—note that it is entirely proper for the Court to do so. *See, e.g., Schwarz*, 283 F.3d at 98; *United States v. Ianniello*, 866 F.2d 540, 544 (2d Cir. 1989) (directing hearing into "determining whether the judge or marshal made ex parte statements to the jury, what each said, the factual circumstances surrounding any ex parte contacts, and whether the jurors who heard the statements communicated the content of those statements to the other jurors.").

                C.      *Lack of Prejudice Even if the Chat Exhibits Were Seen*

Finally, many of the same arguments the Government previously made that the Reconsideration Versions could not have had a prejudicial effect if seen (Dkt. 648 at 32-35) apply to the Chat Exhibits.

The Chat Exhibits are unredacted, and thus the arguments the Government makes regarding confusion resulting from redactions themselves of course do not apply. But the pertinent messages contained within the Chat Exhibits are nevertheless confusing, particularly given that, unlike the Reconsideration Versions, the messages at issue were never summarized in any chart at all. Each of the Chat Exhibits are lengthy documents containing dozens to hundreds of pages and thousands of text messages on numerous disparate topics, including matters that were not cited in summary charts or the subject of testimony at trial. Indeed, not all of the Chat Exhibits render the times in the same time zone, and not all of them identify the senders and recipients in a readily comprehensible way, which would have required the jury to perform laborious and sometimes technical cross-referencing in order to even understand the sequence, senders, and recipients of the messages.[13] As a result, a jury would likely encounter significant difficulty fully comprehending lengthy chains of text messages between close associates and friends that spanned years in some cases, without the benefit of any guidance through summary testimony, contextualizing evidence, or argument or explanation.[14]

The arguments that the Reconsideration Versions would have been cumulative with properly admitted evidence (Dkt. 648 at 36-42) also apply with substantially equal force to the Chat Exhibits. The Chat Exhibits would—if read in their entirety and understood by a jury, which as noted above is at the very least far from clear—be more supportive than the Reconsideration Versions of an argument that Menendez had taken an "actual, consummated" act with respect to aid to Egypt (Dkt. 645 at 1). However, evidence of such an actual act was not a significant element of the Government's case, whether under the law, as the Government argued the case to the jury,

---

[13] Just this task of attribution, temporal adjustment, and cross-referencing was what the Government's summary witnesses undertook for the documents that were summarized. (*See, e.g.*, Tr. 1176, 1179-80, 1366.) This work, which was lengthy and laborious (*see, e.g.*, Tr. 1577), was *not* performed for any of the pertinent portions of the Chat Exhibits.

[14] Because they were presented without such testimony or explanation, the Chat Exhibits would not, if the jury had somehow chanced to inspect the pertinent portions, remotely have had the powerful effect that the Government argued to the Court that the evidence would have had. (Tr. 1019-46.) Those arguments—which defendants each cited as if they applied to the evidence in the form the jury could have seen it (*see, e.g.*, Dkt. 645 at 1, 4, 7, 13, 20, 26; Dkt. 641 at 9, 16, 22; Dkt. 644 at 1, 4 & 4 n.3)—were based not on the effect those documents would have if stumbled upon unexplained, but rather on the effect the evidence would have had if the Government was able to present it in context and in a comprehensible fashion, and to make arguments based on it, none of which happened with the Chat Exhibits.

Honorable Sidney H. Stein
December 16, 2024
Page 15

or in the minds of the jury, as is evident based on their conviction on counts not remotely relying under any theory on "actual, consummated" acts. (Dkt. 648 at 39-40.)

Indeed, the Court's recent denial of the defendants' first post-trial motions strongly shows such cumulativeness, recognizing that the evidence "amply" supports the convictions of the defendants, *United States v. Menendez*, No. S4 23 Cr. 490 (SHS), 2024 WL 5103452, at *4 (S.D.N.Y. Dec. 13, 2024), and—with respect to the Egypt conduct in particular—the Government introduced "*more than sufficient* evidence upon which a reasonable jury was entitled to conclude that Menendez promised to perform these acts in exchange for items of value," *id.* at *7 (emphasis added); *see also, e.g., id.* *9 ("The jury was similarly presented with ample evidence to conclude that Menendez promised to perform official acts to benefit Egypt and Hana in exchange for items of value[.]"); *id.* ("This series of events provided the jury with ample evidence to conclude that long before Menendez informed Hana of this official act—or received any payment—he *agreed* to do so in exchange for things of value."); *id.* at *10 ("In sum, this circumstantial evidence provides a more than sufficient foundation for the jury to reasonably infer that Menendez agreed to take official action in exchange for items of value for Nadine—including the mortgage payment and the checks from IS EG—before he took or attempted to take any official act."); *id.* at *12 ("[T]here was more than ample evidence from which the jury was entitled to conclude that Nadine's 'employment' by IS EG was simply a means of funneling bribe payments to her for her and Menendez's benefit."); *id.* at *28 ("In sum, the government introduced more than sufficient evidence to support Menendez and Hana's convictions on [the foreign agent counts].").[15]

To be sure, the Government acknowledges that the Chat Exhibits (unlike the Reconsideration Versions (Dkt. 648 at 43-46)) include what the Court under its May 24 Ruling considered to be mention of legislative acts. But while the Government respectfully disagreed with that ruling, the Government does not herein seek reconsideration of it, nor does the Court need to reconsider its ruling to find that the Chat Exhibits do not warrant any action. This is so for multiple reasons, as described above: (1) waiver; (2) that it is extraordinarily unlikely that the jury saw any of the pertinent portions of the Chat Exhibits; and (3) even if the jury had happened to see the Chat Exhibits, for the same reasons set forth in connection with the supplemental post-trial

---

[15] The Court also, of course, recognized the abundance of evidence supporting other aspects of the scheme. *See, e.g., Menendez*, 2024 WL 5103452, at *14 ("The government presented ample evidence for the jury to conclude that Uribe, with assistance from Hana, paid for a new Mercedes-Benz for Nadine in exchange for Menendez's official acts (or promises to take official acts) to "stop and kill" the NJAG's prosecution of Parra and investigation into Peguero."); *id.* at *20 ("This series of events—supported by ample record evidence—supports the jury's finding of a corrupt quid pro quo [with respect to attempt to interfere with Daibes's federal prosecution]."); *id.* at *29 ("Although Menendez urges that the government has not adduced sufficient evidence that he had a corrupt intent to obstruct a judicial or grand jury proceeding, in fact, the government adduced substantial evidence to establish his corrupt intent.").

Honorable Sidney H. Stein
December 16, 2024
Page 16

motions (Dkt. 648 at 47-55), they could not have caused prejudice because of (a) their confusing and cumulative nature and (b) the truly abundant properly admitted evidence of guilt.[16]

For the reasons set forth above, the Chat Exhibits do not require any action.

Respectfully submitted,

DANIEL M. GITNER
Attorney for the United States
Acting Under Authority Conferred by
28 U.S.C. § 515

By:  s/ Paul M. Monteleoni
Eli J. Mark
Daniel C. Richenthal
Paul M. Monteleoni
Lara Pomerantz
Catherine E. Ghosh
Assistant United States Attorneys
(212) 637-2431/2109/2219/2343/1114
Christina A. Clark
Special Assistant United States Attorney
(202) 307-5191

cc:   (by ECF)

Counsel of Record

---

[16] The Chat Exhibits also do not support Menendez's alternative motion for discovery, which would not assist in deciding the supplemental post-trial motions. Indeed—just as the Government argued in response to the supplemental post-trial motions (Dkt. 648 at 60)—errors such as this were discoverable at any time based on the exhibit lists, trial transcript, and exhibit sets, and the Government's identification and prompt reporting of this issue further refutes Menendez's and Hana's unfounded and inflammatory accusations of intentional misconduct. (*Cf.* Dkt. 645 at 32 (Menendez arguing for discovery to probe theory that inadvertent inclusion of exhibits on the jury laptop was not "simply an innocent mistake"); Dkt. 652 at 9, 11, 12 (Hana accusing Government of bad faith).)