

Lawrence S. Lustberg

Gibbons P.C.
One Gateway Center
Newark, NJ 07102-5310
Direct: 973-596-4731 Fax: +1 973-639-6285
llustberg@gibbonslaw.com

December 20, 2024

**_VIA ECF_**

The Honorable Sidney H. Stein
United States District Judge
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007

      **Re:**    *United States v. Robert Menendez, et al.*, **S4 23 Cr. 490 (SHS)**

Dear Judge Stein:

     As Your Honor is aware, this Firm represents defendant Wael Hana in the above-referenced matter. Please accept this letter brief in lieu of a more formal reply to the Government's latest discovery of improperly admitted evidence (ECF No. 655); we also respond, at least preliminarily, to the Government's most recent filing (ECF No. 660) of today, identifying yet another erroneous submission to the jury. For the reasons provided herein, Mr. Hana's previously filed Motion for a New Trial (ECF No. 641) should be granted.

* * *

     On the first page of its December 16, 2024 filing (ECF No. 655), the Government identifies additional errors in the information that was provided to the jury during deliberations.[1] The Government is correct that this "is separate from the inadvertent inclusion of insufficiently redacted versions of the September 2019 Messages and the January 2022 Messages" described in its previous filing, as it certainly identifies yet more exhibits containing evidence that should not have been before the jury. It is, however, of a piece with the jury laptop errors which are the subject of the motion practice (ECF No. 641) currently pending before the Court. That is, the Government submitted numerous incorrectly redacted exhibits to the jury containing evidence that the Court had specifically excluded—now more numerous exhibits than had previously been thought. Thus, it now states that it also included enormous text chains—to which Defendants objected and the Government specifically withdrew from its summary charts in updated drafts, containing page after page of communications between Mr. Hana and Nadine Menendez, Ahmed

---

[1] The Government did not inform defense counsel of its December 11, 2024 discovery until it filed its December 16, 2024 letter on the docket. Given the Court's order (ECF No. 657) that counsel file any response by Friday, December 20, 2024, this submission addresses these errors to the extent possible in the brief period during which counsel has had notice of this issue.

Helmy, and Fred Daibes. The only inference that can be drawn from this repeated discovery of improperly submitted evidence, including another discovery relayed to defense counsel on the morning of this filing, is that something was seriously wrong with the Government's control over its exhibits.

The Government, however, has tripled down, continuing to blame defense counsel for its errors, insisting that all of this erroneous evidence was simply not a big deal, and rejecting the possibility that these repeated errors tainted the trial's verdict. This posture, derived from the Government's resolve to defend its convictions at all costs, has included taking the extraordinary position that the jury could *never* have seen the improperly submitted evidence, and even though it apparently believes that discovery into whether the jury reviewed the evidence would in fact be proper, has completely failed to address the circumstances under which the Government prevented just that inquiry by unilaterally destroying the evidence that could be analyzed to determine whether that is true; indeed, even after the issue has been repeatedly raised, the Government still fails, as recently as earlier this week and yet again this morning, to explain how and when it wiped the jury laptop in its custody. Meanwhile, it also continues to downplay the significance of evidence it believed was critical enough to warrant its only mid-trial motion for reconsideration. But the Government, which has now filed 91 pages of briefing to demonstrate the erroneous evidence's supposed insignificance, ignores the simple reality of the situation: this evidence was important to the Government's case, was received by the jury, and is presumptively prejudicial, and the Government cannot show that the guilty verdicts in this trial were "surely unattributable to the error." *Sullivan v. Louisiana*, 508 U.S. 275, 297 (1993). Under Second Circuit precedent, this set of circumstances requires a new trial.

I.      **The Chat Exhibits Only Bolster the Case for a New Trial**

For the reasons Mr. Hana has previously raised, the Government's inclusion of extra-record material on its jury laptop already warranted a new trial. ECF Nos. 641, 652. Mr. Hana has already explained in detail the process by which his team reviewed the exhibits to be submitted to the jury (ECF No. 641 at 4-5), and demonstrated that the Government's waiver caselaw (which it cites again) is inapposite (ECF No. 652 at 4). The only new point the Government raises regarding waiver is that defense counsel had about six weeks after the Chat Exhibits' admission at trial to "notice the issue and seek appropriate redactions." ECF No. 655 at 8. But defense counsel "is not required to inspect every exhibit at trial to ensure that documents that appear to conform to the copies provided by the Government are in fact identical." *United States v. Lee*, 573 F.3d 155, 161 (3d Cir. 2009). And defense counsel, of course, had no reason to assume that the Government had failed to comply with the Court's Order, and was instead busy preparing for the rest of the trial— a trial for which it had significantly less time to prepare than the Government did.

The Government again argues that it was "exceedingly unlikely" that the jury reviewed the Chat Exhibits. ECF No. 655 at 11. But for the reasons set forth in Mr. Hana's previous filing, such a contention is irrelevant. *See* ECF No. 652 at 4-6. Extraneous information's entrance into the jury room is presumed prejudicial, *see United States v. Wiley*, 846 F.2d 150, 157 (2d Cir. 1988) ("[E]xtra-record information that comes to the attention of a juror is presumptively prejudicial."),

and its import is analyzed under an objective test, assessing "the likelihood that the influence would affect a typical juror," *Bibbins v. Dalsheim*, 21 F.3d 13, 17 (2d Cir. 1994) (per curiam). In discussing this issue, the Government lashes out at the defense, contending that the undersigned counsel for Mr. Hana "badly mangles the law on this point …" ECF No. 655 at 13 n.12. But Mr. Hana understands and has consistently applied the applicable law. Under that law, a juror may, under Federal Rule of Evidence 606(b), testify about whether extraneous prejudicial information was "improperly brought to the jury's attention," but may not testify about jury deliberations, including "incident[s]" that occurred during deliberations, or jurors' "mental processes." But we already know that extraneous prejudicial information *was brought* to the jury's attention: the Government loaded it onto a laptop and gave it to them, and the jury asked for a display port cable so that they could review it. Tr. 7171:4-5 The Government's musings about whether the jury actually *considered* the evidence, however, improperly fall on the latter side of the equation by speculating about what really occurred during the jury deliberations.[2] If the Government truly thought it was permissible to inquire into whether the jurors looked at the improper material—again, an inappropriate inquiry into the jury's deliberations—it would presumably request such an inquiry to confirm its belief that there was "no indication that the jurors actually considered the evidence," or no "reasonable possibility," to use the standard set forth by the Government. *See* ECF No. 655 at 12 (quoting *United States v. Hansen*, 369 F. App'x 215, 216 (2d Cir. 2010); *United States v. Jeffrys*, No. 20-3631, 2022 WL 9627085, at *3 (2d Cir. Oct. 17, 2022). After all, the burden is on the Government to rebut the presumption of prejudice and show harmless error beyond a reasonable doubt. *Sullivan*, 508 U.S. at 279; *Wiley*, 845 F.2d at 157; *United States v. Greer*, 285 F.3d 158, 173 (2d Cir. 2002). It has not done so.

In any event, even if the Government's conjecture about whether the jury reviewed the material were appropriate, the newly discovered material only increases the case for a new trial. Obviously, the higher the number of improperly included exhibits on the jury laptop, the higher the likelihood that those exhibits were reviewed by the jury; the fact that the erroneous evidence (particularly the Helmy Message, discussed at length in Mr. Hana's prior submission) appeared in multiple iterations increases the chances that the jury saw the message in some form. And the more improper material, the greater that material's potential impact. Having declined to seek juror testimony regarding whether the jury reviewed the material, and having destroyed the only way of technologically ascertaining whether they did, the Government has, in essence, eschewed the opportunity to bear the burden that the law imposes on it in circumstances like this. *See* ECF No. 652 at 9-12.

---

[2] So, for example, juror inquiry was appropriate in *United States v. Schwarz* to determine what was told to jurors by another regarding the defendant's prior conviction. 283 F.3d 76, 88-89, 98 (2d Cir. 2002). And it was appropriate in *United States v. Ianniello* to determine "whether the judge or marshal made ex parte statements to the jury" and "what each said," because the "government respond[ed] by raising doubts as to whether the judge's and jurors' alleged statements were made at all." 866 F.2d 540, 542, 544 (2d Cir. 1989). There are no such doubts here—we know precisely what was given to the jury.

As previously demonstrated, the improper material submitted to the jury was an important part of the Government's case against the Defendants, as the Government itself had repeatedly insisted when seeking to admit that evidence at trial. ECF No. 652 at 12-15. In a stark about-face, the Government now says that the evidence, far from being "highly relevant," "the gravamen of the corruption offense," and "very critical evidence in our case," *see id.*, would not "remotely" have had a "powerful effect" because the Government was not able to "present it in context and in a comprehensible fashion, and to make arguments based on it." ECF No. 655 at 14 n.14. But the statements in the Chat Exhibits were so closely related to the evidence highlighted by the Government at summation that it would undoubtedly have invited the jury to look at it, consider it, and discuss it. Indeed, as Mr. Hana has shown, the Government repeatedly referenced the issue of military sales and funding throughout its closing, including specifically highlighting the Helmy Message contained in GX C207 and GX D207. ECF No. 652 at 13; ECF No. 641 at 10-11. The Government cannot have it both ways, describing the jury as attentive and careful when defending its verdict and then implying that it would have been lost without the Government's careful guidance, guidance which, in any event, was argument and not evidence, as this Court charged. Tr. at 7047. Certainly, under these circumstances, the Government cannot bear its burden to show that the verdict was "surely unattributable to the error." *Sullivan*, 508 U.S. at 297. That is the appropriate standard to be employed to assure that justice was done in the face of such an error. The Government has failed to even address it here, let alone satisfy it, as the law demands.

The Government, however, argues that "the Court's recent denial of the defendants' first post-trial motions strongly shows" that the erroneous exhibits were cumulative. ECF No. 655 at 15. This is a non sequitur. In a Rule 29 motion, the "heavy burden" is on the defendant to show that "no rational trier of fact could have found all of the elements of the crime beyond a reasonable doubt." *United States v. Mensah*, 515 F. App'x 59, 61 (2d Cir. 2013). And a court must "review all of the evidence presented at trial in the light most favorable to the government, crediting every inference that the jury might have drawn in favor of the government." *United States v. Walker*, 191 F.3d 326, 333 (2d Cir. 1999). The Court set forth and applied those standards in its decision. ECF No. 654 at 4-5. But the standard on this application is flipped: prejudice is presumed, and it is the Government that not only bears the burden, but must demonstrate that error was harmless beyond a reasonable doubt. *Sullivan*, 508 U.S. at 279; *Wiley*, 845 F.2d at 157; *United States v. Greer*, 285 F.3d 158, 173 (2d Cir. 2002). Thus viewed, the Government cannot satisfy its burden now by simply arguing that the Defendants failed to satisfy their burden under an entirely different standard, one obviously much more favorable to the Government.

## II.     The Chat Exhibits Were Objected to in Their Entirety

The Government's most recent letters (ECF Nos. 655, 660) are colored by its implication that Defendants acceded to the admission of the Chat Exhibits. This is an unfair argument and the Government knows it.

In fact, when the Government transmitted its drafts of GX 1302, Defendants objected to the admission of voluminous exhibits cited within, including GX C207. Certification of Lawrence S. Lustberg ("Lustberg Cert."), Exhibit ("Ex.") A. (May 25, 2024 Email from A. Weitzman).

Defendants requested that only the excerpted versions of the Chat Exhibits (*e.g.*, GX C207-1) be included on the chart and admitted into evidence. The Government apparently agreed by replacing two references to GX C207 with citation to excerpts (GX C207-1 and GX C207-4) in a version it produced following this objection. *See* GX 1302 lines 439 and 596. Indeed, no reference to GX C207 as a standalone exhibit appeared in the final version of GX 1302. Nevertheless, on May 28, 2024, the lengthy exhibits were erroneously admitted into evidence. Because Defendants had previously objected to the admission of the voluminous exhibits, and because those exhibits were no longer incorporated into GX 1302, this admission was, apparently, a scrivener's error.

Additionally, in its letter filed this morning, the Government makes the newfound claim that it "believes that Government Exhibit D207 is more akin to Government Exhibit C603 . . . than to Government Exhibits B207 or C207." ECF No. 660 at 2. This assertion is belied by the sequence of events leading up to admission of the summary chart at trial. The Government's original version of GX 1302 included six citations to GX D207 as a standalone exhibit. Lustberg Cert, Ex. D (April 28, 2024 Email from P. Monteleoni). However, in the admitted version of GX 1302, the Government removed or replaced with sub-exhibits almost all references to GX D207, except for a single reference within the 97-page summary chart that the Government admits it did not realize appeared within the chart until it performed a search yesterday. ECF No. 660 at 1 n.2. Similarly, the original version of GX 1302 contained references to GX B207 and GX C207 which did not ultimately appear in the admitted version. *See* Lustberg Cert., Ex. D. Of course, nothing like that occurred with respect to GX C603. In any event, defense counsel objected to the inclusion of numerous lengthy text chains, *see* Lustberg Cert., Ex. A, and the Government's letter only further confirms that admission of any of these exhibits, including GX D207, was a scrivener's error.

Indeed, all parties operated under the assumption and apparent belief that the lengthy Chat Exhibits were not in evidence at all. For example, when the trial turned to the Jose Uribe-related conduct and the Government sought to introduce GX 1303, Defense counsel again objected to the inclusion of numerous lengthy text chains. Lustberg Cert, Ex. B (May 27, 2024 Email from L. Lustberg). And when Mr. Hana sought to include excerpts from the voluminous messages (excerpts that were not included in GX 1302) in the defendants' version, DX 1302, the Government objected, contending that those parts of the lengthy Chat Exhibits were not in evidence. Lustberg Cert., Ex. C (June 27, 2024 Email from C. Clark with attachment).

When it came time to review the Government's 3,000-plus exhibit list on July 11, Mr. Hana's counsel engaged in that review by cross-referencing the Government's list with the trial transcripts; appended to the end of each trial transcript is a list of the exhibits that were admitted into evidence that day. Mr. Hana's counsel also cross-checked the list against the latest version of GX 1330, which itself erroneously listed GX B207, C207, and D207 as admitted in full.[3] This review lasted the entire day. To be sure, the defense (like the Government) failed to catch that error, but that fact should not be held against Mr. Hana.

---

[3] It is clear that the inclusion of GX B207, C207, and D207 in GX 1330 is erroneous because the list also includes the sub-exhibits (B207-1; C207-1 through C207-13, C207-15, and C207-A

### III.     The Chat Exhibits Contain Clearly Prejudicial Messages.

The erroneously admitted GX C207 contains four iterations of the Helmy Message, and GX D207 contains one iteration of that message, which was excluded from evidence in its entirety pursuant to this Court's ruling.  ECF No. 420.  Unlike the previously identified improper exhibits, ECF No. 630-7 (GX C207-8); ECF No. 630-13 (GX C207-97); ECF No. 630-17 (GX D207-3), which redacted the words "that senator Menendize put an hold on," the versions of the Helmy Message that appear in GX C207 and GX D207 are entirely un-redacted and provide:  "Director office of Egyptian affairs in state department 'Kathryn Kiser' told our DCM today that senator Menendize put an hold on a billion $ of usaid to Egypt before the recess !!!!" (GX C207 at 547, 548, 561, 562; D207 at 10).  For all the reasons stated in Mr. Hana's prior briefing, ECF Nos. 641, 652, the Helmy Message is extremely prejudicial; indeed, the Helmy Message was distinct from the rest of the trial record, which showed only that Senator Menendez discussed military funding with third parties.  *See* ECF No. 593 at 62-63; ECF No. 641 at 18-20.  The improperly admitted versions of the Helmy Message that the Government initially flagged, by contrast, strongly suggest, unlike anything else in the trial record, that Senator Menendez actually *approved* billions of dollars' worth of aid to Egypt as a special favor to Egyptian officials.  And the GX C207 and D207 chat exhibits confirms that strong suggestion:  four messages contained in it make clear "that senator Menendize put an hold on a billion $ of usaid to Egypt before the recess !!!!" (GX C207 at 547, 548, 561, 562; D207 at 10).  As explained in detail in prior briefing, Mr. Hana was prejudiced by his inability to confront this extremely inculpatory message because he reasonably believed the jury would never see it.  However, due to its improper submission, the jury was exposed to the Helmy Message without any of the defense having had the opportunity to explain or contextualize it, as could have been done.  Left unrebutted, the improperly admitted Helmy Message undermined the clearly established record that U.S. military sales to Egypt are routine and repeated topics of conversation between U.S. and Egyptian officials.  *See* ECF No. 641 at 20-21 (citing Tr. 4683:22-4684; *id.* 4685:19-22; *id.* 867:12-16; *id.* 687:23-868:3; *id.* 939:19-940; *id.* 945:15-19).  In other words, the defense was deprived of the opportunity, with respect to the Helmy Message to argue from the evidence of record that U.S.-Egypt military financing was mundane and, as such, not the result of "special treatment" from Senator Menendez.

In addition to the Helmy Message, the Chat Exhibits contain additional prejudicial messages, which the Government does not address:

- GX C207 at 65-68:  In this text, Mr. Hana sent Helmy a link to Senator Menendez's committee website and wrote "–foreign relations committee –banking committee –finance committee."  At the very least, this message provides a specific example of Mr. Hana sending Helmy information about Senator Menendez and the areas over which the Senator could provide helpful influence.  But it had not been introduced; nonetheless, it went to the jury.

---

through C207-J; and D207-2, through D207-4).  There would have been no need to include the excerpts if the larger exhibits had been admitted in their entirety.

- GX C207 at 159:  In this text, Mr. Hana sent Helmy a screenshot of a headline:  "AS DEADLINE FOR ADMIN'S KHASHOGGI INVESTIGATION NEARS, MENENDEZ, YOUNG, REED, GRAHAM, SHAHEEN, COLLINS, MURPHY INTRODUCE SAUDI ARABIA ACCOUNTABILITY AND YEMEN BILL."  This message, too, is an example of Mr. Hana sending Helmy information about U.S. foreign relations, here with respect to Saudi Arabia and Yemen, and Senator Menendez's role with regard to those affairs; it too, was not admitted, but went to the jury.

- GX B207 at 72:  In this text, Mr. Hana sent Nadine Menendez a link to a CNN article concerning U.S. arms sales to Egypt, which was excluded from evidence pursuant to the Court's Speech or Debate Order (ECF No. 420).  As Senator Menendez explained in prior briefing (ECF No. 645 at 3-4), this exhibit was "important enough to be featured prominently in the operative indictment" (ECF No. 239 ¶ 29(g)), and the Government described this material as "very critical evidence," (Tr. 1042:1).  Though it was excluded as to all defendants, it went to the jury, again without the defense having addressed it, as it could have if it knew it was going to be provided to the jury.

- GX B207 at 89:  In this text, Mr. Hana informed Nadine that General Abbas Kamel would welcome her and Senator Menendez at the airport in Cairo.  This message thus illustrated a special relationship between Senator Menendez and Egyptian officials, as Mr. Hana explained in prior briefing.  *See* ECF No. 652 at 7.  Additionally, this message in particular implied that Mr. Hana facilitated that special treatment.  If the undersigned counsel knew that the jury would have it, it would certainly have been addressed in summation.

In sum, as explained with respect to the Helmy Message, the submission of these erroneous and highly inculpatory messages to the jury prejudiced Mr. Hana because, not knowing they would be before the jury, he did not address them.  Because he was deprived of the opportunity to do so, Mr. Hana was denied a fair trial.

### IV.    The Chat Exhibits Raise Further Questions Regarding the Government's Actions

Finally, the Government again attempts to shift the blame for an error for which it was at least partially to blame to defense counsel, writing that they "did not raise any objections to the inclusion of the [improperly submitted material] at any time between their admission into evidence and the filing of this letter."  ECF No. 655 at 6.  This is, candidly, because defense counsel was not looking; we are not preparing for the trial of Nadine Menendez next month, during the process of which the Government discovered these errors.  ECF No. 655 at 2.  Again, if we should have, and if we erred in continuing to trust the Government, that is our error; it should not be visited upon our client.  ECF No. 652 at 4-5.

The Government tries to extrapolate from this failure to identify the improper material that if defense counsel could not find the Chat Exhibits in four weeks, the jury could not do so in two days.  But again, this assumed the critical fact that the jury did not see them, a fact that cannot be ascertained given the Government's unilateral action in wiping the laptop clean, and its decision

not to seek to interview jurors—notwithstanding, it is the Government's burden to demonstrate that the conviction here was harmless because it was "surely unattributable to the error." *Sullivan*, 508 U.S. at 297. Moreover, it defies logic to proclaim that the jury would not be drawn to text messages between (1) Mr. Hana and Nadine Menendez, a central figure at the trial despite remaining unseen; (2) Mr. Hana and Ahmed Helmy, a representative of the Egyptian government who was explicitly highlighted in the Government's summation; and (3) Mr. Hana and Mr. Daibes, his fellow codefendant. This is particularly the case for the messages that were located adjacent, or near, redactions in the summary charts, which left an incomplete picture of what was being discussed. For example, GX 1302 line 1265 is a text message from Nadine Menendez to Senator Menendez stating "WOW," which appears after two redacted lines and before two additional redacted lines, an entry that would certainly prompt the jury to look for the missing entries. Indeed, having lived with this case for ten weeks without having heard from any defendant on the stand, it would seem natural that the jury would want to find out more of what the defendants said to each other when they thought no one else was listening in.

Finally, it is both frustrating and remarkable that the Government's latest letters yet again fail to explain when and why it wiped the laptop, and why it did so without fronting the issue with either the defense or the Court. Indeed, none of the Government's four filings has been accompanied by a sworn affidavit or declaration from the prosecution team explaining how that unfortunate fact came to pass—that is, when and how the only evidence of whether jurors saw the erroneous material was spoliated. One would hope that the Government, "whose interest . . . in a criminal prosecution is not that it shall win a case, but that justice shall be done," *Berger v. United States*, 295 U.S. 78, 88 (1935), would want to know. The Government writes that any allegations of "intentional misconduct" are "unfounded." ECF No. 655 at 16 n.16. Nor does the defense accuse the Government of that, though suspicions are surely raised by the combination of the continuing revelations of more and more erroneously admitted material in connection with the wiping of the laptop, all without any explanation as to timing. Indeed, on the very day this letter response was due, pursuant to this Court's Order (ECF No. 657), the Government filed its most recent submission (ECF No. 660), burying within a footnote yet another error in what was submitted to jury, this time the incorrectly translated version of GX C107-7. In fact, the Government misleadingly submitted its letter as a "Correction to Statement in December 16, 2024," when, to the contrary, today's submission identifies *additional* evidence that should not have but did go to the jury. In addition, as set forth above and in our prior submissions, extra-record evidence is presumed prejudicial and the Government has an affirmative obligation to show that it was not, but it fails to even give the Court an explanation as to what the evidence was, demonstrating that it is not even trying to satisfy its requirement under the law.

At the very least, this combination of facts provides a powerful basis for further inquiry.

\* \* \*

For the above reasons, and for the reasons explained more fully in Mr. Hana's prior briefs (ECF Nos. 641, 652), Mr. Hana's motion for a new trial should be granted.

Respectfully submitted,

*s/ Lawrence S. Lustberg*

Lawrence S. Lustberg