**PAUL**
**HASTINGS**

December 20, 2024

*VIA ECF*

The Honorable Sidney H. Stein
United States District Judge
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007

**Re:**   *United States v. Robert Menendez, et al.,* **S4 23 Cr. 490 (SHS)**

Dear Judge Stein:

In light of the government's most recent letter (ECF No. 655) confessing to *yet more* government errors that put core Court-excluded Speech or Debate Clause materials in front of the jury in unredacted form, it is simply no longer tenable to defend the verdicts. This episode has crossed the line from tragedy to farce. And our justice system cannot afford to become a farce. The Court must order a new trial.

The government's dense, 16-page, single-spaced letter tries to bury the lede—obfuscating, beating around the bush, and relegating incredible facts to footnotes. This situation calls for directness. In last month's disclosure, the government admitted that it had erroneously provided the jury with exhibits that only *partially* redacted material that this Court excluded under the Speech or Debate Clause. *See* ECF No. 630. While undeniably violative of this Court's order regarding redactions, the government argued that no relief was needed because, in light of the partial redactions, the exhibits "did not allow the jurors to infer that Menendez did or did not take any legislative act," and that "the jury would have lacked sufficient information to understand" the exhibits given those redactions. ECF No. 648 at 33, 45. It was only the *fully unredacted* messages, the government said just two weeks ago, that "would have been **highly probative and compelling**." *Id.* at 34 (emphasis added).

The government now admits, however, that it also gave the jury those messages *without implementing any of the redactions*—messages that therefore "contained direct mention of what the Court determined were legislative acts of Menendez," and were "highly probative of the corrupt scheme." *Id.* at 2-3; *see* ECF No. 655 at 14. These include the "Bob had to sign off on this" text from Nadine (referring to U.S. arms sales to Egypt), and *multiple copies* of the Helmy Message purporting to describe the Senator placing a hold on "a billion $ of usaid to Egypt." ECF No. 655 at 4. Those were the only documents that squarely showed the Senator having approved (or withheld) aid to Egypt. They were the two most central messages the Court excluded under the Speech or Debate Clause. Yet the government failed to redact them from its exhibits as required by the Court's order. It gave them to the jury in completely unredacted form, and cited

those exhibits on the Egypt summary chart that compiled the government's core case. That squarely violated the Speech or Debate Clause—no ifs, ands, or buts. There is no going back from such a consequential set of errors. These verdicts are now irretrievably tainted.

No longer able to deny the significance of its errors, the government again leads by trying to blame its own sloppiness on the defense—calling the defense's failure, in the fog of war, to catch the government's redaction errors on the final exhibits given to the jury a "waiver" of the Senator's constitutional rights. *Id.* at 8. That argument is outrageous as a matter of both law and fact.

As to the law, the government now presses a new argument that *it* waived by omitting it from the response to Defendants' supplemental new trial motions. It says the Supreme Court's statement in *United States v. Helstoski* that any waiver of Speech or Debate Clause rights "can be found only after explicit and unequivocal renunciation of the protection," 442 U.S. 477, 491 (1979), was really only a commentary on potential *subject-matter* waiver. ECF No. 655 at 9-10. That is an invention and distortion of clear, binding precedent. The words "subject matter" appear nowhere in the decision. And the government in that case was *not* seeking a subject-matter waiver; it was seeking to admit specific "evidence" that the legislator had "[v]olunteered" in grand jury testimony. *Helstoski*, 442 U.S. at 486. The government cites no case that has construed *Helstoski*'s heightened waiver standard as limited to subject-matter waivers. This Court, moreover, has already held that *Helstoski*'s "explicit and unequivocal" test applies to waiver arguments exactly like the one the government presses here. *United States v. Menendez*, 2024 WL 3014205, at *2 n.1 (S.D.N.Y. June 14, 2024). Given Senator Menendez's successful objection to admission of the "Bob had to sign off on this" message and the Helmy Message, it goes without saying that he did not explicitly and unequivocally renounce his constitutional protections by not catching the government's failures to adhere to this Court's exclusion order. *See, e.g.*, *Rangel v. Boehner*, 20 F. Supp. 3d 148, 182 (D.D.C. 2013) ("No court has ever held that a Representative or Senator waived their absolute immunity from suit under the Speech or Debate Clause. Given the case law, if waiver is at all possible in this context, it must be pellucidly clear.").[1]

As to the facts, the government's account is grossly misframed. The government produced these exhibits to the defense on April 19, 2024 (ECF No. 655 at 2)—*before* this Court's rulings excluding the Speech or Debate Clause material (on May 24) and then denying reconsideration (on May 29).

---

[1] The government's supposed concern about "sandbagging" (ECF No. 655 at 10) is unpersuasive, because a defendant has every incentive to catch and object to admission of prejudicial evidence—and the government does not deny that the defense did its best to do so here. In all events, certain defects—like lack of subject-matter jurisdiction—simply cannot be excused even if the defendant fails to raise them in timely fashion. Notably, some courts have compared Speech or Debate Clause violations to subject-matter jurisdiction in just that regard. *See, e.g.*, *Meadows v. Pelosi*, 639 F. Supp. 3d 62, 72 n.3 (D.D.C. 2022); *see also Walker v. Jones*, 733 F.2d 923, 936 (D.C. Cir. 1984) (MacKinnon, J., concurring and dissenting in part) ("[T]he Court has held that like a pure matter of subject matter jurisdiction, Speech or Debate immunity cannot be waived by the failure of a defendant to assert it at the threshold." (citing *Helstoski*, 442 U.S. at 492)).

So the lack of redactions would not have raised suspicions at that point in time because no court order required any.  The government formally offered the exhibits on May 28, by including their exhibit numbers on an Admission List (GX 1330)—but expressly did so "subject to" the pending reconsideration motion that would govern the extent of required redactions (Tr. 1280), which was not denied until the next day.  After that denial, the defense was entitled to expect the government to implement the Court's orders by undertaking the required redactions wherever the excluded Speech or Debate material appeared in the government's exhibits, before the government later loaded the exhibits onto the jury laptop.  Between May 29 (when reconsideration was denied) and July 10 (when the defense was given roughly four hours to review the jury laptop), the defense had no opportunity—and no obligation—to double-check that the government had complied with the Court's orders.  These were Government Exhibits after all, and it is the government's obligation to comply with Court orders regarding its exhibits.  Indeed, as to one of the exhibits, the government claimed it had complied, "and circulated a revised version" with redactions—but then put the unredacted version on the jury laptop anyway.  ECF No. 655 at 5.  The government never explains how the defense could *possibly* have caught this given its limited review.

While the government now suggests that the defense essentially signed off on all admitted exhibits (without even being given the opportunity to confirm that they had been properly redacted), it fails to attach *any* of the cited correspondence or any sworn declaration to provide an evidentiary basis for the findings it seeks.  That is itself grounds to reject the waiver excuse.

Moreover, the actual documentary record tells a very different story.  When the government circulated the Admission List on May 28, Senator Menendez's counsel immediately pointed out a few errors, and then added "there may be many others that are also erroneously included."  Ex. A at 1.  Counsel made clear that "given the number of errors we've detected already, … GX 1330 should not be offered until the government has reviewed it comprehensively and corrected it."  *Id* at 2.  The government nonetheless proceeded with only slapdash corrections, and offered GX 1330 into evidence the same day.  And, again, all of this was *before* the Court rendered a final ruling on the scope of the required redactions.

More broadly, the record shows that the defense registered repeated objections to the government's practice of dumping and offering enormous volumes of exhibits without providing sufficient time for review.  *See, e.g.*, Tr. 5049 (objecting that government "want[s] to move into evidence 700 exhibits" and that defense has been "frantically trying to review" them); Tr. 5051 ("We haven't even had an opportunity to review the thousands of pages they want us to review and on 48-hours' notice agree to admissibility."); Tr. 5361 ("we haven't even had an opportunity to review all of the exhibits, it was just too voluminous"); Ex. B at 1 (email from counsel on May 29, objecting that it "may not be feasible for us to review, consider, and confer on all these adjustments and new exhibits given that you gave us notice at 652 am," and urging government to "put exhibits in seriatim (rather than all at once) given the lack of lead time").  No doubt the tightly compressed pre-trial period contributed to the problem.  But at the end of the day, these were the government's exhibits; the government was bound to comply with the Court's order by implementing the needed redactions; and the government must now bear the consequences of its own mistakes.  This cannot be characterized as a defense "waiver" in any context, let alone for Speech or Debate purposes.

The government's second argument is (again) that the jury probably did not bother to look at the actual evidence.  ECF No. 655 at 11-13.  Here too, the government misstates both the law and the facts.  Whatever the rule or presumption for "extra-record evidence" (*id.* at 12), these messages were in fact *admitted* as evidence; the government cites zero cases where a court assumed away an evidentiary error by speculating that the jury just ignored an admitted piece of evidence.  Rather, when evidence is erroneously admitted, the ordinary inquiry is whether the government can prove beyond a reasonable doubt that the error was harmless.  *See Chapman v. California*, 386 U.S. 18, 24 (1967).  Senator Menendez has already explained why that test has no application here; Speech or Debate Clause violations are structural and mandate relief without any such inquiry given the non-trial-related purposes of the Clause's protection.  But even if harmless-error review applied, courts conducting it do not speculate about the likelihood that jurors reviewed a particular exhibit.  They instead ask whether, in light of factors such as "the importance" of the evidence and whether it was "cumulative," the court "may confidently say" the error did not affect the verdict.  *Delaware v. Van Arsdall*, 475 U.S. 673, 681, 684 (1986).  That conclusion obviously cannot be drawn here— much less "confidently" drawn—given the government's concessions about how "highly probative and compelling" these messages were (ECF No. 648 at 34), and the total absence from the record of any other evidence tying the Senator to actual, consummated aid decisions, which is indeed "highly probative" even if possible inferences about promises would be legally sufficient.[2]

In all events, the government's speculation that the jury would never have noticed these messages reflects increasingly implausible wishful thinking.  As to the so-called "Uncited Chat Exhibits," the government's key premise is that they were not identified on the summary charts designed to guide deliberations, so the jury would never have thought to pull them up.  ECF No. 655 at 11.  But the premise is false, once again casting doubt on the government's diligence and credibility.  Indeed, just earlier today (ECF No. 660) the government conceded that its most recent representations to the Court were mistaken, given that at least one additional "Uncited Chat Exhibits" was, in fact, cited on the Egypt summary chart.  *See* GX 1302, No. 986 (citing GX D207).  And although the other two "Uncited Chat Exhibits" (B207 and C207) were not *directly* cited on the summary charts, the charts *did* prominently cite easily identifiable subparts of those exhibits.  *See* Tr. 2591-92 (telling jury that certain exhibits were excerpts of other, larger exhibits).  For example, the very last page of the Egypt summary chart cited GX B207-1 repeatedly, on either side of redaction bars that naturally pique the reader's curiosity.  GX 1302, Nos. 1269, 1271, 1272.

---

[2] Even when it comes to extra-record material, the government gets the law wrong—as its own citations lay bare.  The government does not cite a single example of a court disregarding extra-record evidence on the *speculation* that a jury likely would have missed it.  Sometimes, courts excuse such an error when there is a concrete "indication that the jurors" did not "consider[] the evidence"—such as when they were "polled" on whether they ever saw it.  *United States v. Jeffreys*, 2022 WL 9627085, at *3 (2d Cir. 2022).  Absent this sort of actual evidence, however, the settled course is that a court *presumes* the jury saw the material, and then (when appropriate) asks whether the government can prove that the error was harmless beyond a reasonable doubt.  *See United States v. Schwarz*, 283 F.3d 76, 99 (2d Cir. 2002).

Any diligent jury would have been interested in that exhibit, and could easily have pulled up the complete set of texts (B207) instead of the excerpt (B207-1), whether intentionally or otherwise, thereby exposing for review the critical "Bob had to sign off on this" text message.

Moreover, another exhibit containing that potent "Bob had to sign off on this" message (the so-called "Missed Call Chat Exhibit") was, by the government's own admission, cited *directly* on the Egypt summary chart. *See* ECF No. 655 at 11. The government nonetheless insists the jury would not have found the page on which that text message appeared. *Id.* at 11-12. That defies all credulity. Remember, the Missed Call Chat Exhibit was used to sandwich one of the most conspicuous parts of the Egypt summary chart—a fully redacted entry, on the chart's *very last page*:

| 1266 | January 28, 2022 | 12:35 PM | Nadine Menendez | Wael Hana | Missed WhatsApp voice call (GX C603) |
| 1268 | January 28, 2022 | 12:36 PM | Nadine Menendez | Wael Hana | Missed WhatsApp voice call (GX C603) |

There is every reason this passage, at the very end of the most important summary chart, would have captured the jury's attention; and every reason the jury would have pulled up GX C603 to see if it shed some light on the redacted line. Had the jury done so, it would not have been at sea, even without "the benefit of a pin cite." ECF No. 655 at 11-12. The exhibit was *chronological*: If the jury had simply flipped to January 28, 2022 (the date listed), the "Bob had to sign off on this" text would have been *right there*—between two "Missed Voice Call" entries (at 66-67). GX C603 is listed with no other date, so if the jury pulled up this exhibit, it would *only* have been to see these pages—where, far from buried, the message would have been *unavoidable*. Only by assuming the evidence was so voluminous that the jury probably did not look at *anything* could one reach the confident conclusion that it would not have seen the Speech or Debate Clause material. And that is hardly an assumption compatible with the reality or appearance of justice.

Finally, if the Court had any doubt about the need for discovery, the government's latest letters should put that to bed. First we were told the errors affected only nine exhibits with incomplete redactions. The defense then identified more errors in the same vein. Now the government fesses up to an entirely different set of errors, where it failed to apply any of the required redactions at all before providing the admitted exhibits to the jury. And in a *footnote*, the government casually mentions *yet another* example of Speech or Debate Clause material being provided to the jury. ECF No. 655 at 6 n.8. And, just today, the government acknowledged yet another error that was previously undisclosed, as well as a misrepresentation to the Court. ECF No. 660. Yet across all of the government's filings (ECF Nos. 630, 648, 655, 660), there is not a single sworn statement explaining what actually happened, and only the most generalized account of how these errors were found. Such a pervasive pattern of constitutionally monumental mistakes cannot, in good conscience, be given the back of the hand. It is just too much. This Court should not only order a new trial, but also authorize appropriate discovery so that the Court, the parties, and the public can understand how and why the integrity of the trial was so badly and irremediably compromised.

The defense would welcome the opportunity for a conference with the Court to discuss this matter further.

Respectfully submitted,

/s/ *Adam Fee*
Adam Fee
Avi Weitzman

*Attorneys for Defendant Robert Menendez*